# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

---------------------------------------------------------x
                             :

ANNA LANGE,

              Plaintiff;

v.

HOUSTON COUNTY, GEORGIA;
HOUSTON COUNTY BOARD OF
COMMISSIONERS; Houston County
Commissioners TOMMY STALNAKER, H.
JAY WALKER III, GAIL ROBINSON,
LARRY THOMSON, TOM MCMICHAEL,
BARRY HOLLAND, and ROBBIE
DUNBAR, in their official and individual
capacities; and Houston County Director of
Personnel KENNETH CARTER, in his official
and individual capacity;

              Defendants.

---------------------------------------------------------x

Civil Action: 5:19–CV–00392

**ORAL ARGUMENT REQUESTED**

# PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN
# OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION FOR
# JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

FACTUAL BACKGROUND ....................................................................................2

ARGUMENT ............................................................................................................4

I.    THE MOTION FOR JUDGMENT ON THE PLEADINGS IS PREMATURE. ...............4

II.   THE BOARD OF COMMISSIONERS IS A PROPER PARTY TO THIS ACTION. ....................................................................................................5

III.  SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF HER CONSTITUTIONALLY GUARANTEED RIGHT TO EQUAL PROTECTION. ............6

    A.   The Exclusion Is Discriminatory. ............................................................7

    B.   Qualified Immunity Does Not Bar Sgt. Lange's Equal Protection Claims Against The Individual Defendants. ....................................11

    C.   Legislative Immunity Does Not Bar Sgt. Lange's Equal Protection Claims Against The Individual Defendants. ....................................13

    D.   Dismissal of Sgt. Lange's Equal Protection Claims Against The Individual Defendants In Their Official Capacities Is Premature. ..........................................15

    E.   Sgt. Lange Has Standing To Enforce Her Fourteenth Amendment Right To Equal Protection Against The County. ............................................16

IV.   SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF THE GEORGIA EQUAL PROTECTION GUARANTEE. ...............................................18

    A.   Sgt. Lange Has A Private Right Of Action Under The Georgia Constitution. ....................................................................................19

    B.   Neither Sovereign Immunity Nor Official Immunity Requires Dismissal Of Sgt. Lange's Georgia Equal Protection Claims. ..............................20

V.    SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF ADA TITLE I. ...........23

    A.   Houston County Is Sgt. Lange's Employer. ..........................................24

    B.   The Individual Defendants Are Subject To Suit Under The ADA In Their Official Capacities. ..........................................................26

VI.   SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF ADA TITLE II. ...........27

    A.   Sgt. Lange Has Adequately Pled That She Has A Disability. ...............27

B.   Exclusion Of Gender Dysphoria As A Disability Under The ADA Would Violate The Federal Equal Protection Clause. .......................................................30

C.   Sgt. Lange Has Adequately Pled That She Was Denied Meaningful Access To a Public Benefit Because Of Her Disability...........................................32

VII.   SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF TITLE VII. .................34

A.   Houston County Is Sgt. Lange's Employer. .........................................................34

B.   The Individual Defendants Are Subject To Suit Under Title VII In Their Official Capacities. .................................................................................................34

CONCLUSION.................................................................................................................34

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abusaid v. Hillsborough Cty. Bd. Of Cty. Comm'rs,*
405 F.3d 1298 (11th Cir. 2005) ...................................................................6

*Adams by and through Kasper v. Sch. Bd. of St. Johns Cty., Fla.,*
318 F. Supp. 3d 1293 (M.D. Fla. 2018)..................................................7, 12

*Adams v. Hazelwood,*
520 S.E.2d 896 (Ga. 1999)........................................................................23

*Adkins v. City of New York,*
143 F. Supp. 3d 134 (S.D.N.Y. 2015) .......................................................10

*Alexander v. Choate,*
469 U.S. 287 (1985).................................................................................34

*Atlanta Indep. Sch. Sys. v. S.F.,*
740 F. Supp. 2d 1335 (N.D. Ga. 2010) .....................................................22

*B.M. v. N.Y. Pub. High Sch. Athletic Ass'n,*
374 F. Supp. 3d 276 (W.D.N.Y. 2019) ......................................................15

*Badillo v. Thorpe,*
158 F. App'x 208 (11th Cir. 2005) ............................................................26

*Barnes v. City of Cincinnati,*
401 F.3d 729 (6th Cir. 2005) ...................................................................13

*Bd. of Comm'rs of Newton Cty. v. Allgood,*
214 S.E.2d 522 (Ga. 1975)..........................................................................5

*Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ.,*
208 F. Supp. 3d 850 (S.D. Ohio 2016) .....................................................10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................2, 4

*Belton v. Georgia,*
No. 1:10–CV–0583–RWS, 2012 WL 1080304 (N.D. Ga. Mar. 30, 2012) ......................32, 33

*Blasingim v. Hill,*
No. 1:08-CV-2117-JEC-JFK, 2009 WL 10664918 (N.D. Ga. Jan. 16, 2009).........................24

*Blatt v. Cabela's Retail, Inc.,*
  No. 5:14 cv-4822-JFL, 2015 WL 9872493 (E.D. Pa. Nov. 16, 2015)....................................30

*Blatt v. Cabela's Retail, Inc.,*
  No. 5:14-CV-04822-JFL, 2017 WL 2178123 (E.D. Pa. May 18, 2017) ................................29

*Bowen v. Gillard,*
  483 U.S. 587 (1987)...........................................................................................................9, 10

*Boyden v. Conlin,*
  341 F. Supp. 3d 979 (W.D. Wis. 2018) ...................................................................................9

*Boyden v. Conlin,*
  No. 17-CV-264-WMC, 2018 WL 2191733 (W.D. Wis. May 11, 2018)................................25

*Bray v. Alexandria Women's Health Clinic,*
  506 U.S. 263 (1993)................................................................................................................9

*Brown v. Gwinnett Cty. Sch. Dist.,*
  631 F. App'x 851 (11th Cir. 2015) ..........................................................................................4

*Busby v. City of Orlando,*
  931 F.2d 764 (11th Cir. 1991) ...............................................................................15, 16, 34

*Cameron v. Lang,*
  549 S.E.2d 341 (Ga. 2001)....................................................................................................23

*Carik v. United States Dep't of Health & Human Servs.,*
  4 F. Supp. 3d 41 (D.D.C. 2013) ............................................................................................17

*CENAPS Corp. v. Cmty. Of Christ,*
  371 F. Supp. 3d 1024 (M.D. Fla. 2019)..................................................................................4

*City of Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985)......................................................................................................8, 9, 31

*Comm'r of Rd. & Revenue of Houston Cty. v. Howard,*
  1 S.E.2d 222 (Ga. Ct. App. 1939) ..........................................................................................6

*Crowder v. Diaz,*
  2:17-CV-1657-TLN-DMC, 2019 WL 3892300 (E.D. Cal. Aug. 19, 2019),
  *aff'd* 217-CV-01657-TLN-DMC, 2019 WL 5566433 (E.D. Cal. Oct. 29, 2019)..................10

*Crymes v. DeKalb Cty., Ga.,*
  923 F.2d 1482 (11th Cir. 1991) ........................................................................................14, 15

*Davis v. Standifer,*
  621 S.E.2d 852 (Ga. App. 2005)...........................................................................................19

*Dean-Mitchell v. Reese,*
　837 F.3d 1107 (11th Cir. 2016) .......................................................................5

*Dixon v. Ga. Dept. Pub. Safety,*
　135 F. Supp. 3d 1362 (S.D. Ga. 2015)...........................................................19

*Doe v. Arrisi,*
　No. 3:16-cv-08640 (D.N.J. July 17, 2017), ECF No. 49 ................................30

*Doe v. Dzurenda,*
　No. 3:16-CV-1934 (D. Conn. Oct. 27, 2017), ECF No. 57 ............................30

*Doe v. Mass. Dep't of Corr.,*
　No. 1:17-cv-12255-RGS, 2018 WL 2994403 (D. Mass. June 14, 2018) .............29, 30, 31, 32

*Doe v. Mass. Dept. of Correction,*
　No. 1:17-CV-12255-RGS, 2018 WL 1156227 (D. Mass. May 30, 2018)............................32

*Dukes v. Georgia,*
　428 F. Supp. 2d 1298 (N.D. Ga. 2006) ...........................................................27

*Edmo v. Idaho Dep't of Corr.,*
　No. 17-CV-00151-BLW, 2018 WL 2745898 (D. Idaho June 7, 2018) ................................28

*Epps v. Watson,*
　492 F.3d 1240 (11th Cir. 2007) .....................................................................11

*Evancho v. Pine-Richland Sch. Dist.,*
　237 F. Supp. 3d 267 (W.D. Pa. 2017)..............................................................10

*Evans v. Georgia Dep't of Behavioral Health & Developmental Disabilities,*
　CV 415-103, 2018 WL 4610630 (S.D. Ga. Sept. 25, 2018).............................12, 13

*Evans v. Georgia Reg'l Hosp.,*
　850 F.3d 1248 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 557 (2017)................8, 12

*Executive 100 v. Martin County,*
　922 F.2d. 1536 (11th Cir. 1991) .....................................................................11

*Flack v. Wis. Dep't of Health Servs.,*
　328 F. Supp. 3d 931 (W.D. Wis. 2018) .........................................................9, 10

*Flack v. Wis. Dep't of Health Servs.,*
　395 F. Supp. 3d 1001 (W.D. Wis. 2019) ...........................................................13

*Frazier v. Smith,*
　12 F. Supp. 2d 1362 (S.D. Ga. 1998)...............................................................24

*Frontiero v. Richardson,*
411 U.S. 677 (1973).................................................................................9

*Ga. Dept. of Nat. Res. v. Ctr. for a Sustainable Coast,*
755 S.E.2d 184 (Ga. 2014)...............................................................20, 21

*Garner v. Bryson,*
No. 5:16-CV-121-CAR-CHW, 2017 WL 11456630 (M.D. Ga. Apr. 13, 2017)....................26

*Geduldig v. Aiello,*
417 U.S. 484 (1974)....................................................................7, 8, 9, 10

*Gilbert v. Richardson,*
452 S.E.2d 476 (Ga. 1994)......................................................................19

*Glenn v. Brumby,*
663 F.3d 1312 (11th Cir. 2011) ..........................................................8, 9, 12

*Gonzaga Univ. v. Doe,*
536 U.S. 273 (2002)...............................................................................18

*Grant v. Hosp. Auth. of Miller Cty.,*
Case No. 1:15-CV-201, 2017 WL 3527703 (M.D. Ga. Aug. 16, 2017)................................22

*Gravel v. United States,*
408 U.S. 606 (1972)...............................................................................14

*Grimm v. Gloucester Cty. Sch. Bd.,*
302 F. Supp. 3d 730 (E.D. Va. 2018) .........................................................10

*Hackett v. Fulton Cty. Sch. Dist.,*
238 F. Supp. 2d 1330 (N.D. Ga. 2002) .......................................................21

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982)...............................................................................14

*Harry v. Glynn Cty.,*
501 S.E.2d 196 (Ga. 1998).......................................................................23

*Hennessey v. Webb,*
264 S.E.2d 878 (Ga. 1980).......................................................................23

*Hope v. Pelzer,*
536 U.S. 730 (2002)...........................................................................11, 12

*Jacobs v. Maricopa County,*
1994 WL 175424 (9th Cir. May 9, 1994) .....................................................25

*Jarrett v, Butts,*
   379 S.E.2d 583 (Ga. App. 1989)..........................................................................23

*John Doe v. Northrop Grumman Sys. Corp.,*
   No. 5:2019-cv-00991, 2019 WL 5390953 (N.D. Ala. Oct. 22, 2019)....................30

*Jones v. Jenne,*
   No. 07-60839-CIV, 2008 WL 11401788 (S.D. Fla. Mar. 31, 2008) ......................16

*Jordan v. Def. Fin. & Accounting Servs.,*
   No. 8:14-CV-958-T-33TGW, 2014 WL 3887748 (M.D. Fla. Aug. 7, 2014)...........4

*Kentucky v. Graham,*
   473 U.S. 159 (1985)............................................................................................11

*Lathrop v. Deal,*
   801 S.E.2d 867 (Ga. 2017)............................................................................20, 21

*Lonergan v. Fla. Dept. of Corr.,*
   623 F. App'x 990 (11th Cir. 2015) ......................................................................27

*Love v. Fulton Cty. Bd. of Tax Assessors,*
   821 S.E.2d 575 (Ga. App. 2018)..........................................................................21

*M.A.B. v. Bd. of Educ. of Talbot Cty.,*
   286 F. Supp. 3d 704 (D. Md. 2018) .....................................................................10

*May v. Fulton Cty.,*
   925 F. Supp. 769 (1995), *reversed in part*, 101 F.3d 709 (11th Cir. 1996)...........23

*Mazzeo v. Color Resolutions Intern., LLC,*
   746 F.3d 1264 (11th Cir. 2014) ...........................................................................23

*McCamy v. DeKalb Cty.,*
   271 S.E.2d 214 (Ga. 1980)...................................................................................5

*Merritt v. Dixon,*
   150 S.E.2d 644 (Ga. 1966)...................................................................................6

*Moore v. Treatment Ctr. of Am. Grp, LLC,*
   No. 7:12-cv-22(HL), 2013 WL 1364093 (M.D. Ga. 2013) ...................................26

*Mulhall v. UNITE HERE Local 355,*
   618 F.3d 1279 (11th Cir. 2010) ...........................................................................18

*Murphy-Taylor v. Hoffman,*
   968 F. Supp. 2d 693 (D. Md. 2013) .....................................................................24

*Nautilus Ins. Co. v. Headhunters Racetrack, LLC,*
   5:13-CV-426, 2014 WL 12712257 (M.D. Ga. June 9, 2014)...............................4, 5

*Nelson v. Jackson,*
   1:14-CV-02851-ELR-JFK, 2015 WL 13545487 (N.D. Ga. 2015) ..........................25

*Nelson v. Spalding Cty.,*
   290 S.E.2d 915 (Ga. 1982)...........................................................................21

*Olvera v. Univ. Sys. of Ga. Bd. of Regents,*
   782 S.E.2d 436 (Ga. 2016)...........................................................................21

*Parker v. Strawser Constr., Inc.,*
   307 F. Supp. 3d 744 (S.D. Ohio 2018) ...........................................................30

*Partain v. Maddox,*
   206 S.E.2d 618 (Ga. App. 1974)....................................................................23

*Pearson v. Callahan,*
   555 U.S. 223 (2009)....................................................................................11

*Polsinelli PC v. Genesis Biosciences, Inc.,*
   No. 1:14-CV-00873-ELR, 2015 WL 12850574 (N.D. Ga. May 22, 2015)................4

*Presta v. Peninsula Corridor Joint Powers Bd.,*
   16 F. Supp. 2d 1134 (N.D. Cal. 1998) .............................................................33

*Price Waterhouse v. Hopkins,*
   490 U.S. 228 (1989).....................................................................................8

*Reed v. Reed,*
   404 U.S. 71 (1971).......................................................................................9

*Renfroe v. Nationstar Mortg., LLC,*
   822 F.3d 1241 (11th Cir. 2016) ......................................................................4

*Resnick v. AvMed, Inc.,*
   693 F.3d 1317 (11th Cir. 2012) .....................................................................17

*Riverhill Cmty. Ass'n v. Cobb Cty. Bd. of Com'rs,*
   226 S.E.2d 54 (Ga. 1976)...........................................................................5, 6

*Robinson v. Smith,*
   No. 4:14-CV-149(CDL), 2015 WL 4193269 (M.D. Ga. July 10, 2015) .................26

*Romer v. Evans,*
   517 U.S. 620 (1996)....................................................................................31

*Rosa v. Park West Bank & Tr. Co.,*
  214 F.3d 213 (1st Cir. 2000) ............................................................13

*Schwenk v. Hartford,*
  204 F.3d 1187 (9th Cir. 2000) ..........................................................13

*Skrtich v. Thornton,*
  280 F.3d 1295 (11th Cir. 2002) ..........................................................5

*Smith v. City of Pleasant Grove,*
  No. 2:16-cv-00373-JEO, 2016 WL 5868510 (N.D. Ala. Oct. 7, 2016)..................12

*Speaker v. U.S. Dep't of Health and Human Servs.,*
  623 F.3d 1371 (11th Cir. 2010) .........................................................17

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC,*
  904 F.3d 1197 (11th Cir. 2018) ........................................................2, 4

*Toomey v. Arizona,*
  CV-19-00035-TUC-RM, 2019 WL 7172144 (D. Ariz. Dec. 23, 2019) ...................9

*U.S. v. Stone,*
  139 F.3d 822 (11th Cir. 1998) .......................................................30, 31

*Watson v. Cty. of Santa Clara,*
  No. C-06-04029 RMW, 2007 WL 2043852 (N.D. Cal. July 12, 2007) ...................5

*Whitaker v. Kenosha Unified Sch. Dist. No.1 Bd. of Educ.,*
  858 F.3d 1034 (7th Cir. 2017) ........................................................7, 13

*Williams v. City of Montgomery,*
  742 F.2d 586 (11th Cir. 1984) ..........................................................25

*Windsor v. United States,*
  699 F.3d 169 (2d Cir. 2012), *aff'd on other grounds*, 570 U.S. 744 (2013)..........10

*Yeldell v. Cooper Green Hosp., Inc.,*
  956 F.2d 1056 (11th Cir. 1992) .................................................13, 14, 15

*Zurich Ins. Co. v. London Market Insurers,*
  No. 97 C 1802, 1997 WL 603845 (N.D. Ill. Sept. 16, 1997)..........................5

**Statutes**

42 U.S.C. § 1983...............................................................18, 19

42 U.S.C. § 2000e(b) ............................................................24

42 U.S.C. § 12102(1), (4)(A)....................................................27

42 U.S.C. § 12111(5) ...................................................................................................24

42 U.S.C. § 12211(b)(1) ...................................................................................28, 29, 30

Americans with Disabilities Act ......................................................................... *passim*

Title VII of the Civil Rights Act ......................................................................... *passim*

O.C.G.A. § 36-11-1 ......................................................................................................20

**Other Authorities**

29 C.F.R. § 1630.2(h) ...................................................................................................29

135 Cong. Rec. S10753 .................................................................................................31

1877 Georgia Constitution, Art. IX § 1 ¶ 1 ...................................................................6

1983 Georgia Constitution .............................................................................................6

Georgia Constitution ........................................................................................... *passim*

Rule 12(b) .......................................................................................................................5

Rule 12(b)(6) ...............................................................................................................1, 2

Rule 12(c) .................................................................................................................1, 2, 4

U.S. Constitution Article III....................................................................................16, 17

Plaintiff Sergeant Anna Lange respectfully submits this omnibus memorandum of law in opposition to (i) the County's and the Individual Defendants'[1] (in their *official* capacities) motion for judgment on the pleadings under Rule 12(c) ("MJOP") and (ii) the Board's and the Individual Defendants' (in their *individual* capacities) motion to dismiss under Rule 12(b)(6) ("MTD" and, together with the MJOP, the "Motions").

## INTRODUCTION

Plaintiff Sergeant Anna Lange is a transgender woman who is being discriminated against by being denied coverage for medically necessary care under the employee health plan ("the Plan") of Houston County, Georgia (the "County"), which expressly excludes coverage of any and all treatments for Sgt. Lange's medical condition, gender dysphoria ("the Exclusion").  Sgt. Lange filed the instant action against the County, the County Board of Commissioners (the "Board"), and the Individual Defendants (members or employees of the Board) seeking a declaration that the Exclusion is unlawful, an injunction of its enforcement, and damages suffered as a result of the unlawful discrimination she has experienced.  Sgt. Lange has pled violations of (i) her equal protection rights under the U.S. and Georgia Constitutions, (ii) Titles I and II of the Americans with Disabilities Act ("ADA"), and (iii) Title VII of the Civil Rights Act ("Title VII").

The Motions advance a hodgepodge of arguments that overlap significantly, all of which should be rejected because they are legally and factually baseless, and because Sgt. Lange has met her light burden to allege sufficient facts to state a plausible claim for relief under each count of the Complaint.

---

[1] The "Individual Defendants" include Houston County Commissioners Tommy Stalnaker, H. Jay Walker III, Gail Robinson, Larry Thomson, and Tom McMichael; Houston County Director of Administration Barry Holland; Houston County Director of Operations Robbie Dunbar; and Houston County Director of Personnel Kenneth Carter.

As an initial matter, the Court need not consider any of the arguments put forward by the County and the Individual Defendants (in their *official* capacities) in the MJOP because such a motion is not ripe until *all* defendants have answered the Complaint.

Notwithstanding that fatal procedural flaw, Defendants' arguments for dismissal fail and the Motions should be denied in their entirety.  To survive either a Rule 12(b)(6) or a Rule 12(c) motion, Sgt. Lange need only allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018) ("The standards for reviewing decisions on motions to dismiss and motions for judgment on the pleadings are the same: 'whether the count stated a claim for relief.'").  The Complaint's detailed allegations more than meet that standard.  Moreover, a number of the arguments pressed by Defendants turn on factual disputes—*e.g.*, whether the County is Sgt. Lange's "employer" and whether she is "disabled" under the ADA—and are therefore misplaced in a Rule 12 motion where the court must "accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff."  *Sun Life*, 904 F.3d at 1207.  Additionally, the multiple immunity arguments raised by Defendants are not well-taken.

Because Sgt. Lange has adequately alleged violations of the Federal Equal Protection Clause, the Georgia Equal Protection Clause, Titles I and II of the ADA, and Title VII, and because Defendants' threshold arguments fail, the Motions should be denied in their entirety.

## FACTUAL BACKGROUND

Sgt. Lange, a twenty-two-year law enforcement veteran, has served as a deputy in the County Sheriff's Office since 2006.  Compl. ¶ 2.  Sgt. Lange is also transgender, meaning that although she was assigned a male sex at birth, Sgt. Lange is female.  *Id*. ¶¶ 3, 47.  In 2017, her health care provider diagnosed her with gender dysphoria and she began sustained treatment for

this condition—namely, by undergoing gender transition.  *Id.* ¶ 51.  Gender dysphoria is a rare but serious medical condition, "characterized by a marked incongruence between one's gender assigned at birth and one's internal sense or experience of gender."  *Id.* ¶ 39.  To treat her gender dysphoria, Sgt. Lange takes a physician-prescribed regimen of hormone therapy and has had surgery to feminize her chest.  *Id.* ¶¶ 52, 55.  Upon the recommendation of her doctors, Sgt. Lange has determined that bottom surgery is the next step in her treatment.  *Id.* ¶ 58.

Sgt. Lange participates in the Plan, which is provided by the County and administered by Anthem.  Compl. ¶¶ 60–61, 65.  The Plan covers "medically-necessary" health care, but its Exclusion excludes "Sex Change – Services and supplies for a sex change and/or the reversal of a sex change" and "Sex Change Drugs – Drugs for sex change surgery."  *Id.* ¶¶ 5, 66–68.  But for the Exclusion, the Plan would cover Sgt. Lange's transition-related health care needs.  *Id.*

Following her doctor's recommendation, in November 2018, Sgt. Lange began to make arrangements for her bottom surgery, including applying through her physician to Anthem for preauthorization.  *Id.* ¶¶ 78–80.  Notwithstanding the fact that Sgt. Lange met all of the clinical criteria to qualify for bottom surgery to treat her gender dysphoria, Sgt. Lange's preauthorization and repeated appeals were denied on the basis of the Exclusion.  *Id.* ¶¶ 79–81.  After receiving the denials, Sgt. Lange made repeated requests for Defendants to rescind the Exclusion and accommodate her disability, all of which Defendants ignored or denied.  *Id.* ¶¶ 78, 85–91.  Defendants instead repeatedly renewed the Exclusion, despite being advised that it is unlawful.  *Id.* ¶¶ 83–84, 86–89.

Because Sgt. Lange cannot afford the out-of-pocket costs for bottom surgery, she has been unable to obtain this medically necessary treatment.  Compl. ¶ 110.  As a result of the Defendants' blatant discrimination and violation of her civil rights, Sgt. Lange continues to experience financial

hardship and suffer distress, anguish, humiliation, stigma, threats to her safety, and a loss of dignity.  *Id.* ¶¶ 7, 57, 107, 111.

## ARGUMENT

To survive the Motions, Sgt. Lange's "complaint need only present sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016) (citing *Twombly*, 550 U.S. at 556).[2]  "Even if it is extremely unlikely that a party will recover, a pleading may nevertheless survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the pleading and not the merits of the case."  *Polsinelli PC v. Genesis Biosciences, Inc.*, No. 1:14-CV-00873-ELR, 2015 WL 12850574, at *2 (N.D. Ga. May 22, 2015) (Ross, J.) (citing *Twombly*, 550 U.S. at 556).  As shown herein, Sgt. Lange's Complaint is more than sufficient and Defendants' arguments for dismissal as a matter of law fail.

## I.      THE MOTION FOR JUDGMENT ON THE PLEADINGS IS PREMATURE.

The Court should deny the MJOP as premature because the pleadings in this action are not "closed"— *i.e.*, answers have not been filed by all parties—as Rule 12(c) requires.  *See* Fed. R. Civ. P. 12(c); *Brown v. Gwinnett Cty. Sch. Dist.*, 631 F. App'x 851, 853 (11th Cir. 2015) ("The pleadings are closed only when a complaint and answer have been filed.").  Where, as here, a complaint names multiple defendants, the pleadings have not closed until *all* defendants have answered.  *See, e.g.*, *Jordan v. Def. Fin. & Accounting Servs.*, No. 8:14-CV-958-T-33TGW, 2014 WL 3887748, at *1 (M.D. Fla. Aug. 7, 2014) ("[P]leadings are considered 'closed' when all defendants have filed answers to the complaint. . . .");  *Nautilus Ins. Co. v. Headhunters Racetrack,*

---

[2] "The standards for reviewing decisions on motions to dismiss and motions for judgment on the pleadings are the same: 'whether the count stated a claim for relief.'"  *Sun Life Assurance Co. of Canada*, 904 F.3d 1197 at 1207; *CENAPS Corp. v. Cmty. Of Christ*, 371 F. Supp. 3d 1024, 1032 (M.D. Fla. 2019).

*LLC*, 5:13-CV-426 (CAR), 2014 WL 12712257, at *4 (M.D. Ga. June 9, 2014); *see also Watson v. Cty. of Santa Clara*, No. C-06-04029 RMW, 2007 WL 2043852 (N.D. Cal. July 12, 2007) ("[W]here an action names multiple defendants, the pleadings are not closed until all defendants have answered."). Because only the County has answered Sgt. Lange's Complaint, the Court should deny the MJOP as premature. *See, e.g.*, *Zurich Ins. Co. v. London Market Insurers*, No. 97 C 1802, 1997 WL 603845, at *1 (N.D. Ill. Sept. 16, 1997) (denying motion for judgment on the pleadings as premature *with respect to all defendants* because *two defendants* had pending motions to dismiss and had not yet answered the complaint).[3]

## II.    THE BOARD OF COMMISSIONERS IS A PROPER PARTY TO THIS ACTION.

Defendants contend that Sgt. Lange's claims against the Board must be dismissed because the Board "lacks the capacity to be sued." MTD at 5. This argument, however, lacks legal support and should be rejected. As Defendants correctly recognize, the "capacity to sue or be sued . . . is determined by the law of the state where the court is located." MTD at 5 (citing Fed. R. Civ. P. 17(b)). Courts in Georgia regularly decide actions brought against county boards of commissioners, both separately from and in conjunction with the county. *See, e.g.*, *Bd. of Comm'rs of Newton Cty. v. Allgood*, 214 S.E.2d 522, 522 (Ga. 1975) (affirming judgment against Board of Commissioners and Tax Commissioner of Newton County in action seeking declaratory relief); *McCamy v. DeKalb Cty.*, 271 S.E.2d 214, 215 (Ga. 1980) (affirming summary judgment against County Board of Commissioners); *Riverhill Cmty. Ass'n v. Cobb Cty. Bd. of Com'rs*, 226 S.E.2d

---

[3] Sgt. Lange would oppose any motion by Defendants to convert the MJOP to a motion for summary judgment or a motion to dismiss. Converting the MJOP to a motion to dismiss is inappropriate because the proper time for a motion to dismiss is before an answer is filed, not after. *See Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) (stating that "because a responsive pleading—an answer—had been filed, under the plain language of Rule 12(b), a motion to dismiss would have been inappropriate."). Converting it to a summary judgment motion would also be inappropriate where, as here, there are numerous disputes as to material facts, as evidenced by the Answer, which denies almost all of the Complaint's allegations. *See Dean-Mitchell v. Reese*, 837 F.3d 1107, 1114 (11th Cir. 2016) (holding that it is error to grant summary judgment where there is a genuine dispute as to a material fact). Even if the motion were converted, it should still be denied for all the reasons discussed herein.

54, 56 (Ga. 1976) (holding that suit in equity was maintainable against county board of commissioners).

None of the cases Defendants cite support the proposition that a board of commissioners lacks the capacity to be sued. Both *Merritt v. Dixon*, 150 S.E.2d 644 (Ga. 1966), and *Comm'r of Rd. & Revenue of Houston Cty. v. Howard*, 1 S.E.2d 222 (Ga. Ct. App. 1939) rely on a former clause in the 1877 Georgia Constitution, Art. IX § 1 ¶ 1—providing that "[a]ll suits by or against a county shall be in the name thereof"—which does not appear in the current, 1983 Georgia Constitution. Furthermore, they stand only for the uncontroversial proposition that it is not possible to sue a county regarding governance functions—such as roadbuilding—by suing a subdivision of the county. MTD at 5; *see Merritt*, 150 S.E.2d at 645 (dismissing a road widening action that "only name[d] the board of commissioners" "when the suit is intended as one against the county"); *see also Howard*, 1 S.E.2d at 222 (dismissing action filed against commissioners because "all suits by or against a county must be in the name of the county") (internal quotation omitted). Those cases are silent on the issue at hand—namely, suing the Board in addition to the County when wrongdoing *by the Board itself* gives rise to the claim.

Defendants' reliance on *Abusaid v. Hillsborough Cty. Bd. Of Cty. Comm'rs*, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005) also is misplaced. *Abusaid* is an Eleventh Circuit case arising out of a *Florida* district court and applying *Florida* law. Thus, it has no bearing on whether a board of county commissioners in *Georgia* has the capacity to be sued.

## III.   SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF HER CONSTITUTIONALLY GUARANTEED RIGHT TO EQUAL PROTECTION.

Sgt. Lange has adequately pled that the facially discriminatory Exclusion—which subjects her to disparate and inferior treatment both on the basis of sex and because she is transgender— violates the Equal Protection Clause. Defendants challenge Sgt. Lange's equal protection claims

on five legally insufficient grounds: (1) the Plan is not discriminatory (MJOP at 18–19); (2) qualified immunity bars Sgt. Lange's equal protection claims against the Individual Defendants (MTD at 9–12); (3) legislative immunity bars Sgt. Lange's equal protection claims against the Individual Defendants (MTD at 12–14); (4) Sgt. Lange's equal protection claims against the Individual Defendants in their official capacities are duplicative (MJOP at 16–17); and (5) Sgt. Lange lacks standing to assert her equal protection claims against the County (MJOP at 17–18). Each of these arguments fails to provide a basis for dismissal.

### A.    The Exclusion Is Discriminatory.

Defendants contend that they are entitled to judgment as a matter of law on Sgt. Lange's equal protection claims because "the County's POS Plan does not discriminate with respect to the persons who are eligible for insurance benefits under the plan" and Sgt. Lange's claim that the Exclusion discriminates on the basis of sex and membership in a protected class "is <u>not</u> a valid [contention] under the Equal Protection Clause of the Fourteenth Amendment."  MJOP at 18–19. Defendants rely solely on the holding of *Geduldig v. Aiello*, 417 U.S. 484, 497 (1974), that a coverage exclusion for pregnancy is not a sex-based classification prohibited by the Equal Protection clause.  *Geduldig* is not controlling here for several reasons.

*First,* on its face, the Exclusion is inherently based upon sex.  It specifically prohibits coverage for "***Sex*** Change – Services and supplies for a ***sex*** change and/or the reversal of a ***sex*** change," and "***Sex*** Change Drugs – Drugs for ***sex*** change surgery," and thus, it is a sex-based classification.  *See, e.g.*, *Whitaker v. Kenosha Unified Sch. Dist. No.1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) (a "policy [that] cannot be stated without referencing sex" is "inherently based upon a sex-classification"); *Adams by and through Kasper v. Sch. Bd. of St. Johns Cty., Fla.*, 318 F. Supp. 3d 1293, 1312 (M.D. Fla. 2018) (same).

*Second*, *Geduldig* was decided before the U.S. Supreme Court decided *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989), which held that gender stereotyping constitutes illegal sex discrimination, and which formed the basis for the Eleventh Circuit's Equal Protection analysis in *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011), where it held that "[d]iscrimination against a transgender individual because of her gender-nonconformity" "must be subjected to heightened scrutiny." *Id.* at 1317, 1320.  Thus *Glenn*, not *Geduldig*, is controlling here.[4]

In *Glenn*, the plaintiff, whose birth-assigned sex was male, was fired from her government job after informing her employer that she intended to "proceed with [her] gender transition and would begin coming to work as a woman." *Id.* at 1314.  The court held that "a government agent violates the Equal Protection Clause's prohibition of sex-based discrimination when he or she fires a transgender or transsexual employee because of his or her gender non-conformity." *Id.* at 1320.  *Glenn* ruled that the only "interest" served by firing an employee for "the sheer fact of the transition" is the employer's intent to discriminate against employees not conforming to gender stereotypes; by definition this is not a permissible government interest, and accordingly the court found the firing unconstitutional.[5]  *Id.* at 1321.  Just as the employer in *Glenn* could not withhold employment simply on the basis that the employee is undergoing a gender transition, so here

---

[4] Defendants do not argue that the Exclusion survives heightened scrutiny, *i.e.*, that it is "substantially related to a sufficiently important government interest." *Glenn* at 1316 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)).  Because this is Defendants' burden, *Glenn* at 1321 (citing *Virginia*), under heightened scrutiny, their Motions are unavailing.

[5] Of note, the Eleventh Circuit has explained that, under *Glenn*, sex-based discrimination is prohibited on the basis of the *act* of transitioning because it involves gender-based stereotypes (whether applied under Title VII or Equal Protection), rather than transgender *status*.  *See Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1260 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 557 (2017) (concurring opinion of W. Pryor, C.J.).  Thus, unlike *Geduldig*, in which a policy that applied to "pregnant persons" was found not to be a classification based on the *status* of being female, the Exclusion here operates against people, like Sgt. Lange or Ms. Glenn, who undertake a certain *act*—the act of a "Sex change," in the Plan's words.

Defendants cannot withhold coverage for care that otherwise would be covered as medically necessary simply on the basis that the employee is undergoing a gender transition.

*Third*, *Geduldig* did not hold that pregnancy-based classifications *never* violate the Equal Protection Clause, instead concluding more narrowly that not every pregnancy classification is an explicit sex-based classification "like those considered in" *Reed v. Reed*, 404 U.S. 71 (1971) and *Frontiero v. Richardson*, 411 U.S. 677 (1973). *Geduldig*, 417 U.S. at 496, n.20. Subsequent Supreme Court decisions make clear that "[s]ome activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993).[6] Here, the Exclusion applies exclusively to a "Sex change"— the "very acts that define transgender people." *Glenn* at 1316; Compl. ¶¶ 68–70; *see also Boyden*, 341 F. Supp. 3d at 1000 (rejecting arguments based on *Geduldig*). Under *Bray*'s reasoning, "an intent to disfavor" transgender employees "can readily be presumed" by the Exclusion's plain language. *Bray*, 506 U.S. at 270.

*Fourth*, *Geduldig* is inapplicable for the independent reason that the Exclusion, by definition, applies only to, and thus discriminates against, transgender people as a class. Courts often apply heightened scrutiny where government action differentially treats a class that (1) has been historically "subjected to discrimination," *Bowen v. Gillard*, 483 U.S. 587, 602 (1987); (2) has a defining characteristic that "frequently bears no relation to ability to perform or contribute to society," *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440–41 (1985); (3) has "obvious, immutable, or distinguishing characteristics that define them as a discrete group,"

---

[6] Thus, courts have had no trouble identifying the sex-based classification explicit in refusals of coverage for gender-confirming care. *See, e.g.*, *Boyden v. Conlin*, 341 F. Supp. 3d 979, 995 (W.D. Wis. 2018); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 948 (W.D. Wis. 2018). *See also Toomey v. Arizona*, CV-19-00035-TUC-RM (LAB), 2019 WL 7172144, at *6 (D. Ariz. Dec. 23, 2019) (declining to dismiss).

*Bowen*, 483 U.S. at 602; and (4) is "a minority or politically powerless." *Id.*[7]  Numerous courts have held that:

> transgender people as a class have historically been subject to discrimination or differentiation; [] they have a defining characteristic that frequently bears no relation to an ability to perform or contribute to society; [] as a class they exhibit immutable or distinguishing characteristics that define them as a discrete group; and [] as a class, they are a minority with relatively little political power.

*Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017).  *Accord, e.g.*, *Crowder v. Diaz*, 2:17-CV-1657-TLN-DMC, 2019 WL 3892300, at \*12 (E.D. Cal. Aug. 19, 2019), *aff'd* 217-CV-01657-TLN-DMC, 2019 WL 5566433 (E.D. Cal. Oct. 29, 2019) (reviewing cases); *Grimm v. Gloucester Cty. Sch. Bd.*, 302 F. Supp. 3d 730, 749–50 (E.D. Va. 2018); *Flack v. Wis. Dept. of Health Servs.*, 328 F. Supp. 3d 931, 953 (W.D. Wisc. 2018); *M.A.B. v. Bd. of Educ. of Talbot Cty.*, 286 F. Supp. 3d 704 (D. Md. 2018); *Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ.*, 208 F. Supp. 3d 850, 873 (S.D. Ohio 2016); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139–40 (S.D.N.Y. 2015).

Finally, and importantly, *Geduldig* was decided on summary judgment, as the Court found that there was no evidence in the record that the exclusion at issue "worked to discriminate against any definable group or class in terms of the aggregate risk protection derived by that group or class from the program."  *Geduldig*, 417 U.S. at 496.  In contrast, Sgt. Lange has alleged that the Exclusion discriminates on the basis of sex stereotype and targets a protected class, which is more than enough to survive the Motions.  Compl. ¶¶ 4, 5, 70, 71.

---

[7] Such a classification may be deemed "suspect" or "quasi-suspect," depending on the weight of the factors, and given strict or intermediate scrutiny, respectively.  *Windsor v. United States*, 699 F.3d 169, 185 (2d Cir. 2012), *aff'd on other grounds*, 570 U.S. 744 (2013).  Because Defendants fail to satisfy their burden of showing that the Exclusion survives even the lesser standard of review applicable to quasi-suspect classes, *see supra* n. 4, the Court need not decide whether strict scrutiny is warranted here.

**B.** **Qualified Immunity Does Not Bar Sgt. Lange's Equal Protection Claims Against The Individual Defendants.**

Defendants also argue that Sgt. Lange's equal protection claims should be dismissed because the Individual Defendants are entitled to a defense of qualified immunity.  MTD at 9.

As a preliminary matter, qualified immunity only applies to claims for damages against the Individual Defendants in their individual capacities, and does not impact Sgt. Lange's claims for prospective injunctive relief.  *See Pearson v. Callahan*, 555 U.S. 223, 243 (2009); *Executive 100 v. Martin County*, 922 F.2d. 1536 (11th Cir. 1991) (applying this principle to legislative immunity).  Similarly, qualified immunity does not bar Sgt. Lange's claims against the Individual Defendants in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (recognizing that in "an official-capacity action," the defense of qualified immunity is "unavailable").

Moreover, qualified immunity is not grounds for dismissal under Rule 12 where, as here, Sgt. Lange has plausibly alleged a violation of a "clearly established" constitutional right.  In evaluating a qualified immunity defense, a court must "look to determine (1) whether the plaintiff has factually alleged the deprivation of a constitutional right; and (2) whether that right was clearly established at the time of the violation," "construing all reasonable inferences in the light most favorable to [the plaintiff]."  *Epps v. Watson*, 492 F.3d 1240, 1243, 1245 (11th Cir. 2007).  Here, as demonstrated in Section III.A, Sgt. Lange has adequately pled facts demonstrating that the Exclusion violates her constitutionally guaranteed right to equal protection.

Nor can there be any question that Sgt. Lange's right to be free from discrimination on her transgender status is "clearly established" under Eleventh Circuit precedent.  "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . [T]he salient

question . . . is whether the state of the law [at the time of the challenged government action] gave respondents fair warning that their alleged treatment of [plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 739, 741 (2002) (citations and quotations omitted).  Here, a reasonable county official would have been aware of the illegality of the Exclusion because (i) Eleventh Circuit precedent clearly establishes that government discrimination based on gender non-conformity violates the Equal Protection Clause, and (ii) Defendants were repeatedly made aware of the illegality of the Exclusion.  *See* Compl. ¶¶ 83–90.

*Glenn*'s holding that the Equal Protection Clause prohibits government discrimination on the basis of someone's gender nonconformity is well-settled law, and courts in the Eleventh Circuit have repeatedly imposed liability for violations of it.  *See, e.g.*, *Adams by & through Kasper*, 318 F. Supp. 3d at 1312; *Evans v. Georgia Dep't of Behavioral Health & Developmental Disabilities*, CV 415-103, 2018 WL 4610630, at *8 (S.D. Ga. Sept. 25, 2018); *Smith v. City of Pleasant Grove*, No. 2:16-cv-00373-JEO, 2016 WL 5868510, at *6 (N.D. Ala. Oct. 7, 2016); *see also Evans v. Georgia Regl. Hosp.*, 850 F.3d 1248, 1254 (11th Cir. 2017) (reaffirming *Glenn*).  As the district court in *Evans* explained in rejecting the same argument Defendants are making here:

> In *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011), the Eleventh Circuit explicitly held that "discriminating against someone on the basis of his or her gender nonconformity constitutes sex-based discrimination."  *Id*. at 1316.  The court applied gender nonconformity sex discrimination to the transgender plaintiff's Section 1983 claim, but noted that "[a]ll persons, whether transgender or not, are protected from discrimination on the basis of gender stereotype."  *Id*. at 1318–19.  ***This decision on gender nonconformity sex discrimination "can be read as having clearly established a constitutional principle" in the Eleventh Circuit.***

2018 WL 4610630, at *8 (emphasis added).  Authority outside the Eleventh Circuit also supports the specific proposition that discrimination on the basis of one's gender non-conformity constitutes sex-based discrimination under the Equal Protection Clause.[8]

Additionally, the Complaint alleges that the Defendants were informed on multiple occasions by Sgt. Lange, her attorney, and the County's third-party administrator, Anthem, that the exclusion was unlawful.  Compl. ¶¶ 83, 86–89.  Under these circumstances, Defendants cannot credibly claim that they were unaware that the Exclusion violated Sgt. Lange's constitutional right.

### C. Legislative Immunity Does Not Bar Sgt. Lange's Equal Protection Claims Against The Individual Defendants.

The Individual Defendants baldly assert that they are entitled to "absolute legislative immunity" from liability on Sgt. Lange's Equal Protection claims against them in their personal capacities because "the adoption and maintenance of a county health plan—including its coverage exclusions—is unquestionably a legislative act."  MTD at 13.  Yet, legislative immunity applies only to "legislative officials" engaged in "legislative acts," including (i) "speech or debate" in the legislative body itself or (ii) acts that are "an integral part of the deliberative and communicative processes by which [legislators] participate in [legislative] proceedings with respect to the consideration and passage or rejection of proposed legislation. . . ." *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1061–62 (11th Cir. 1992) (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)).  Such acts, "necessary to preserve the integrity of the legislative process," include "voting," "speechmaking on the floor of the legislative assembly," "preparing committee reports,"

---

[8] See *Rosa v. Park West Bank & Tr. Co.*, 214 F.3d 213, 215 (1st Cir. 2000); *Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005); *Whitaker*, 858 F.3d at 1051–52; *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000). *See, e.g.*, *Flack v. Wis. Dep't of Health Servs.*, 395 F. Supp. 3d 1001, 1022 (W.D. Wis. 2019) (granting summary judgment to plaintiffs because state Medicaid exclusion of transition-related care constituted, *inter alia*, sex discrimination under Equal Protection Clause).

and "participating in committee investigations and proceedings." *Id.* at 1062 (reviewing cases) (citations omitted).

Sgt. Lange is not seeking relief from the Defendants' debate or deliberation; she is seeking relief from the discriminatory effects of the Exclusion, a policy they adopted. *See* Compl. ¶¶ 4–10. Defendants do not cite to a single case where a court held that "adoption and maintenance of a county health plan" was a legislative act. Nor could they. Adopting and maintaining an employee health plan is not "necessary to preserve the integrity of the legislative process." Defendants cannot meet their burden, particularly at this stage where the pleadings must be accepted as true, to demonstrate that the adoption and maintenance of the Exclusion bear the hallmarks of legislative activity set out in *Gravel*. *See Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982) ("The burden of justifying absolute immunity rests on the official asserting the claim.").

The Individual Defendants' reliance on the Georgia Constitution's "home rule" does not advance their argument. Article IX, Section II, Paragraph I(a) of the Georgia Constitution, merely grants "the governing authority of each county . . . legislative power to adopt clearly reasonable ordinances, resolutions, or regulations relating to its property, affairs, and local government . . . ." Paragraph I(f) of the same article gives the Board the authority "to fix the salary, compensation, and expenses of those employed by [the County]." It does not provide that a fringe-benefit decision ratified by a county Board of Commissioners—let alone the enforcement of such a decision by unelected administrative employees—is absolutely shielded from constitutional review. The Individual Defendants' argument here is tantamount to claiming that the approval and maintenance of the Exclusion is a legislative act merely because it was made by the Board. But the Individual Defendants ignore the well-settled law that "it is the official *function* that determines the degree of immunity required, not the *status* of the acting officer." *Crymes v.*

*DeKalb Cty., Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991) (citation omitted).  Indeed, administrative acts, such as the types of personnel-related acts at issue here, are not entitled to absolute legislative immunity.  *Yeldell*, 956 F.2d at 1062–63 ("[P]ersonnel decisions . . . to hire, fire, and demote certain individuals . . . are clearly not 'an integral part of the deliberative and communicative processes' by which legislators pass laws.").  Moreover, because the decision to adopt the Exclusion "impacts specific individuals," *i.e.*, County employees, "rather than the general population," it is therefore "more apt to be administrative in nature."  *Crymes*, 923 F.2d at 1485.

Finally, the Individual Defendants' argument that legislative immunity applies to its decision to adopt and renew the Exclusion ignores the allegations in the Complaint that they refused to engage in the interactive process with Sgt. Lange to determine if a reasonable accommodation could be made to the Exclusion.  Compl. ¶¶ 90–93; 130–33.  At a minimum, the Individual Defendants' decision to ignore Sgt. Lange's requests for a reasonable accommodation under the ADA can only be characterized as administrative, not legislative, and therefore, are not subject to absolute immunity.  *See B.M. v. N.Y. Pub. High Sch. Athletic Ass'n*, 374 F. Supp. 3d 276, 292–95 (W.D.N.Y. 2019) (education commissioner's failure to act on student's request for ADA accommodation was administrative, not legislative).

### D.    Dismissal of Sgt. Lange's Equal Protection Claims Against The Individual Defendants In Their Official Capacities Is Premature.

Defendants also contend that the claims against the Individual Defendants in their official capacities should be dismissed because they are redundant of the claims asserted against the County.  MJOP at 16–17.  This argument does not provide a legal basis for dismissal at this early stage of litigation.

Plaintiff's argument relies entirely on the Eleventh Circuit's decision in *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).  But the Eleventh Circuit in *Busby* did not dismiss

claims against individual officers of a municipality on a Rule 12 motion. *Busby* merely affirmed a *directed verdict* against officers in their official capacity because to "keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury." *Id.* at 776. But official capacity claims are not redundant of claims against a county where, as here, Plaintiff has alleged that the "county had a custom or policy that caused constitutional violations." *Jones v. Jenne*, No. 07-60839-CIV, 2008 WL 11401788, at *2 (S.D. Fla. Mar. 31, 2008). Moreover, *Busby* does not require dismissal of claims against the Individual Defendants in their official capacities at this stage, where Defendants make a patchwork of immunity arguments for each of the parties in their individual and official capacities. For example, Defendants argue that Sgt. Lange's Equal Protection claim against the County should also be dismissed on standing grounds, MJOP at 17–18; although Plaintiffs strongly contest this argument, *see* Section III.E, its pendency shows that dismissal of other Defendants as redundant with the County would be premature. Moreover, the Individual Defendants will not be prejudiced by not being dismissed in their official capacities, where they would remain in the case in their individual capacities; whereas Sgt. Lange does risk being prejudiced by their dismissal as redundant with other parties that Defendants are also attempting to dismiss.

### E. Sgt. Lange Has Standing To Enforce Her Fourteenth Amendment Right To Equal Protection Against The County.

Defendants' argument that Sgt. Lange lacks standing to enforce her Equal Protection rights against the County because it is not her employer is factually and legally baseless. This argument makes no sense given that Sgt. Lange's claim is based on the Plan's discriminatory terms, and the County concedes that the County sets those terms and that Sgt. Lange "in fact does" participate in the Plan. Compl. ¶¶ 4–6, 62–63; MTD at 3.

Inexplicably, the County makes a standing argument without reference to the standing requirements of Article III of the U.S. Constitution.  To establish standing, a plaintiff must show (i) that she suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (ii) that injury is "fairly traceable to the challenged action of the defendant"; and (iii) it must be "likely . . . that the injury will be redressed by a favorable decision."  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (internal citation omitted).  Here, Sgt. Lange has met her burden.

*First*, Sgt. Lange has alleged extensive injuries, including significant emotional distress, humiliation, anxiety, depression, and a loss of dignity, as well as an undertreated medical condition, as a result of the discriminatory Exclusion.  Compl. ¶¶ 7, 50, 110.  Emotional distress is indisputably an "injury in fact" that satisfies the first prong of the analysis.  *Speaker v. U.S. Dep't of Health and Human Servs.*, 623 F.3d 1371, 1382–83 (11th Cir. 2010) (alleged "grave mental anguish and emotional distress" injury sufficient to satisfy Article III standing).  So too is an untreated medical condition.  *Carik v. United States Dep't of Health & Human Servs.*, 4 F. Supp. 3d 41, 51 (D.D.C. 2013) (Plaintiff "identified a sufficiently concrete, particularized, and actual or imminent injury as a result of the inability to obtain her medication").

*Second*, Sgt. Lange's injuries are "fairly traceable" to the County's discriminatory conduct.  The traceability prong "requires less than a showing of proximate cause."  *Resnick*, 693 F.3d at 1324 (citation and quotation marks omitted).  "Even a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement."  *Id.*  Here, there is no dispute Sgt. Lange is eligible to and does participate in the Plan.  MTD at 3.  Additionally, Sgt. Lange has alleged that the Plan contains a discriminatory Exclusion and that she has been harmed by the County's adoption, maintenance, and enforcement of that

Exclusion.  Compl. ¶¶ 5–6, 55, 68, 70, 71.  Such allegations are sufficient to establish the causal nexus necessary to establish the second element of standing.

*Finally*, the County has the power to change the Plan or choose not to enforce the Exclusion, Compl. ¶¶ 62–63; therefore, Sgt. Lange meets the redressability prong of the standing analysis.  "Redressability is established . . . when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered."  *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (citation and quotation mark omitted).

Contrary to Defendants' arguments, Sgt. Lange's Equal Protection claim is not an employment or contract claim, and so it is irrelevant for this claim who her employer is or whether she is the third-party beneficiary of a contract.  Thus, Defendants' reliance on *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), is misplaced, as that case considered whether FERPA conferred a right for which a remedy exists under § 1983.  Here, there can be no dispute that Sgt. Lange seeks relief from Defendants' express violation of her constitutional right to equal protection, Compl. ¶¶ 112–14, and the plain text of § 1983 creates a remedy for deprivations of constitutional rights.

## IV.  SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF THE GEORGIA EQUAL PROTECTION GUARANTEE.

Defendants do not dispute that the Exclusion violates the Georgia equal protection guarantee.  Rather, they merely dispute that she is entitled to a remedy.  Defendants argue that Sgt. Lange's claims against them under the Georgia Constitution must be dismissed for two reasons: (1) no private right of action exists under the equal protection clause of the Georgia Constitution (MTD at 6–7) and (2) the claim is barred by sovereign immunity (MJOP at 14–15) and official immunity (MTD at 7–9).  Both of these arguments fail.

**A.      Sgt. Lange Has A Private Right Of Action Under The Georgia Constitution.**

The Georgia Constitution unequivocally provides Sgt. Lange a private right of action against government officials, such as the Individual Defendants, in their individual capacities. Indeed, the Georgia Constitution expressly provides that " . . . all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions."  Ga. Const. Art. I, § II, Par. IX(d).[9]  Here, Sgt. Lange has alleged sufficient facts to show that, in adopting and maintaining the Exclusion, the Individual Defendants acted negligently in the performance of their ministerial duties or, alternatively, willfully violated her equal protection rights with "actual intent to cause injury in the performance of their official functions."  Ga. Const. Art. I, § II, Par. IX(d).

Defendants' arguments that Georgia "has never enacted a statutory equivalent to 42 U.S.C. § 1983" and that "the Georgia Supreme Court has never recognized an implied right of action . . . against state and local government actors" are irrelevant and a red herring.  MTD at 6–7.  Sgt. Lange is *not* asking the Court to *imply* a private right of action.  Rather, she is pursuing a direct claim expressly afforded her by the text of the Georgia Constitution.[10]

---

[9] This extends to counties.  *See Gilbert v. Richardson*, 452 S.E.2d 476, 479 (Ga. 1994) ("[W]e hold the 1991 [constitutional] amendment's extension of sovereign immunity to 'the state and its departments and agencies' must also apply to counties.").

[10] Thus, the cases relied on by Defendants are irrelevant because they only concern the creation of a private right of action.  *See Dixon v. Ga. Dept. Pub. Safety*, 135 F. Supp. 3d 1362, 1371 (S.D. Ga. 2015) (noting that the GTCA barred any state constitutional claim and that Georgia had no equivalent to 42 U.S.C. § 1983); *Davis v. Standifer*, 621 S.E.2d 852, 858 n.2 (Ga. App. 2005) (noting that Georgia has no equivalent to 42 U.S.C. § 1983).

**B.     Neither Sovereign Immunity Nor Official Immunity Requires Dismissal Of Sgt. Lange's Georgia Equal Protection Claims.**

1.     *Sovereign Immunity*

Sgt. Lange does not assert her Georgia equal protection claim against the County, the Board, and the Individual Defendants in their official capacities, as such claims are barred by sovereign immunity. *See Lathrop v. Deal*, 801 S.E.2d 867 (Ga. 2017).[11]  Defendants do not contend that sovereign immunity otherwise prohibits Sgt. Lange's state constitutional claim. Indeed, Georgia law is clear that "the doctrine of sovereign immunity usually poses no bar to suits in which state officers are sued in their individual capacities for official acts that are alleged to be unconstitutional." *Id.* at 885; *see also id.* at 879 ("Our decision today does not mean that citizens aggrieved by the unlawful conduct of public officers are without recourse.  It means only that they must seek relief against such officers in their individual capacities." (citing *Ga. Dept. of Nat. Res. v. Ctr. for a Sustainable Coast*, 755 S.E.2d 184 (Ga. 2014))).  Thus, Sgt. Lange's state equal protection claim is not subject to dismissal on the basis of sovereign immunity; it may proceed against the Individual Defendants in their individual capacities.

2.     *Official Immunity*

Defendants also assert that official immunity bars Sgt. Lange's Georgia equal protection claim.  MTD at 9.  But official immunity does not provide a basis for dismissal where, as here, a plaintiff seeks injunctive and declaratory relief.  *See Lathrop*, 801 S.E.2d at 868 ("Article I, Section II, Paragraph IX (d)" of the Georgia Constitution "only concerns liability of public officers for monetary damages and other retrospective relief" and "does not limit the availability of prospective

---

[11] As such, the arguments made in the MJOP at 14–16 regarding sovereign immunity and non-compliance with O.C.G.A. § 36-11-1 are moot and need not be addressed.

relief.").[12]  Like the defendants in *Lathrop*, Defendants were unable to cite "a single case in which this Court, our Court of Appeals, or any other court has applied the doctrine of official immunity (or a doctrine like it) to bar a suit for injunctive or declaratory relief."  *Id.* at 891.  Thus, Sgt. Lange's claim for prospective relief under the Georgia Equal Protection Clause against the Individual Defendants in their individual capacities is not barred by official immunity.

Moreover, official immunity does not apply where a public official has either (1) acted negligently in the performance of ministerial duties or (2) willfully acted outside of their authority in discretionary matters.  *Lathrop*, 801 S.E.2d at 886.

As an initial matter, Defendants' argument that "it cannot be plausibly disputed that the acts upon which Plaintiff bases her claims (*i.e.*, the decision-making process associated with coverage exclusions under the County's health plans) were within the *discretionary* authority of the Individual Defendants," ignores that the Individual Defendants are not all similarly situated for purposes of official immunity.  While it is undisputed that the Defendant Commissioners have the discretionary authority to adopt the Plan, Compl. ¶¶ 18, 19, 82, Defendants Holland, Dunbar, and Carter are administrative officials tasked with implementing the Board's decisions.  *See* Compl. ¶ 20.[13]  "Ministerial acts . . . are acts that . . . requir[e] the execution of a specific duty."  *Hackett v. Fulton Cty. Sch. Dist.*, 238 F. Supp. 2d 1330, 1368 (N.D. Ga. 2002) (citation omitted).  *See also Nelson v. Spalding Cty.*, 290 S.E.2d 915, 919 (Ga. 1982) (replacement and maintenance of traffic signs is a ministerial act and, thus, failure to perform such ministerial duty could give rise to damage suit against government officer).  For purposes of official immunity analysis, the acts of

---

[12] *See also Love v. Fulton Cty. Bd. of Tax Assessors*, 821 S.E.2d 575, 585  (Ga. App. 2018) (holding that doctrine of official immunity did not bar suits for declaratory or injunctive relief against county officers in their individual capacities); *Ga. Dept. of Nat. Res. v. Ctr. for a Sustainable Coast*, 755 S.E.2d 184, 192 (Ga. 2014); *Olvera v. Univ. Sys. of Ga. Bd. of Regents*, 782 S.E.2d 436, 438–39 (Ga. 2016).

[13] Although the Complaint mistakenly identifies Defendants Holland and Dunbar as Commissioners, there is no dispute that they, as well as Mr.  Carter, are administrative employees of the Board.  *See* County Answer ¶¶ 19–20.

the administrative Individual Defendants, at a minimum, are properly analyzed under the negligence standard applicable to ministerial acts.

In any event, Sgt. Lange has more than adequately pled facts that plausibly demonstrate "actual malice or [] actual intent to cause injury." Ga. Const., Art I, § II, ¶ IX(d).  To pierce official immunity, "ill will must also be combined with the intent to do something wrong or illegal." *Atlanta Indep. Sch. Sys. v. S.F.*, 740 F. Supp. 2d 1335, 1359 (N.D. Ga. 2010) (quoting 520 S.E.2d 896, 897 (Ga. 1999)).  Sgt. Lange's Complaint passes that hurdle.  For example, in the teeth of an express warning of illegality from Anthem, Defendants at least twice elected to maintain the Exclusion and willingly assumed responsibility for any penalties incurred.  Compl. ¶¶ 83–84, 87, 93.  Defendants also refused to even respond to Sgt. Lange's express requests for a reasonable accommodation.  *Id.* ¶¶ 85–88, 90, 93.  *See Grant v. Hospital Authority of Miller County*, Case No. 1:15-CV-201, 2017 WL 3527703, at *6–*7 (M.D. Ga. Aug. 16, 2017) (denying summary judgment on failure to accommodate claim when defendant failed to engage in an interactive process or show undue hardship).  Remarkably, they admitted that this was because their own actions had created the risk of litigation.  Compl. ¶ 88 & n.11.

These allegations, taken in the light most favorable to Sgt. Lange, are more than sufficient to defeat Defendants' motion to dismiss.  Given the fact-intensive inquiry required to determine if conduct was malicious or willful, official immunity is rarely an appropriate basis for dismissal at the pleadings stage.  *Atlanta Indep. Sch. Sys.*, 740 F. Supp. 2d at 1360 (noting "[a] determination of whether the allegations regarding [defendants'] intent have any merit is better left for consideration on a motion for summary judgment and not at the motion to dismiss stage.").  Notably, all but one factually distinguishable case cited by Defendants were resolved

either at the summary judgment stage or after trial.[14]  The remaining case, *Hennessey v. Webb*, 264 S.E.2d 878 (Ga. 1980) actually supports Sgt. Lange's argument.  In *Hennessey*, unlike here, the plaintiffs failed to include allegations in their pleadings showing that the defendant acted "willfully, wantonly, or outside the scope of his authority."  *Id.* at 880.  Here, because Sgt. Lange has adequately pled negligence in Defendants' ministerial acts, Compl. ¶¶ 62, 84, or alternatively willfulness in their discretionary acts, Compl. ¶ 78, resolving the official immunity issue on a motion to dismiss would be improper.

## V.    SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF ADA TITLE I.

Title I of the ADA prohibits discrimination by an employer "'against a qualified individual on the basis of a disability' in any of the 'terms, conditions, [or] privileges of employment.'" *Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014) (alteration in original).  Sgt. Lange has sufficiently alleged a *prima facie* case for discrimination under Title I of the ADA because she has alleged that she (i) is a qualified individual, Compl. ¶ 56; (ii) has the disability of gender dysphoria, Compl. ¶ 3; and (iii) was subject to unlawful discrimination on the basis of that disability under theories of disparate treatment, disparate impact, and failure to accommodate, Compl. ¶¶ 120–39.  *See Mazzeo*, 746 F.3d 1268 (stating elements of a *prima facie* ADA discrimination claim).

Defendants do not contest that Sgt. Lange has adequately pled that (i) she is a qualified individual or that (ii) the Exclusion was based on her disability.  Defendants argue that Sgt. Lange is not disabled as a matter of law, which is wrong for the reasons described in Section VI.A and

---

[14] *See Cameron v. Lang*, 549 S.E.2d 341 (Ga. 2001) (summary judgment); *Harry v. Glynn Cty.*, 501 S.E.2d 196 (Ga. 1998) (summary judgment);  *Partain v. Maddox*, 206 S.E.2d 618 (Ga. App. 1974) (post-trial briefing); *Jarrett v. Butts*, 379 S.E.2d 583 (Ga. App. 1989) (summary judgment); *Adams v. Hazelwood*, 520 S.E.2d 896 (Ga. 1999) (summary judgment); *May v. Fulton Cty.*, 925 F. Supp. 769 (1995), *reversed in part*, 101 F.3d 709 (11th Cir. 1996) (summary judgment).

VI.B.  Additionally, Defendants argue two threshold issues—first, they assert that the County is not Sgt. Lange's "employer" and thus cannot be liable under Title I, and second, they argue that the Title I claims against the Individual Defendants should be dismissed because there is no individual liability under the ADA.  Both arguments are wrong as a matter of fact and law.

### A.  Houston County Is Sgt. Lange's Employer.

The question of whether the County is Sgt. Lange's employer under the ADA is a fact issue not fit for resolution on a Rule 12 motion.  *See Frazier v. Smith*, 12 F. Supp. 2d 1362, 1368 (S.D. Ga. 1998) (county board of commissioners' "fiscal responsibility" for paying sheriff's employee's salary creates material fact issue as to whether "employer" was sheriff or board); *Blasingim v. Hill*, No. 1:08-CV-2117-JEC-JFK, 2009 WL 10664918, at *13 (N.D. Ga. Jan. 16, 2009) (denying county's motion to dismiss because "[t]he court cannot determine at this pre-discovery stage in litigation whether there is no set of facts which Plaintiff could allege to support an agency or joint employer theory for Title VII liability"); *Murphy-Taylor v. Hoffman*, 968 F. Supp. 2d 693, 727 (D. Md. 2013) (denying motion to dismiss Title VII claim because "the precise contours of an employment relationship can only be established by a careful factual inquiry").

The County claims that the Houston County Sheriff's Office is Sgt. Lange's one and only employer for purposes of the ADA because the "sheriff's office [i]s a separate constitutional entity, independent from the county in which it serves" and the Sheriff's Office and not the County has "exclusive control over the fundamental aspects of Plaintiff's employment."  MJOP at 8. However, even if true, this argument is unavailing because the County can fit the ADA's definition of "employer" under an agency theory or a joint employer theory.

The "agency" theory is embedded in the language of the ADA—"[t]he term 'employer' means a person . . . who has fifteen or more employees . . . and any *agent* of such a person."  42 U.S.C. § 12111(5) (emphasis added).  Indeed, the Eleventh Circuit has explained that, "[w]here

[an] employer has delegated control of some of the employer's traditional rights, such as hiring or firing, to a third party, the third party has been found to be an 'employer' by virtue of the agency relationship." *Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984) (citation omitted).[15] Defendants have conceded that the Sheriff's Office has delegated some of its employer functions to the County. MJOP at 3–4 (acknowledging that the County processes the Sheriff's payroll and provides a health plan "to the employees of the Sherriff's Office through an informal, long-term intergovernmental arrangement between the two independent entities"). Additionally, the County is responsible for adding to (and removing from) the Plan each employee that the Sheriff's Office directs it to, and it operates the Plan for the benefit of the Sheriff's participating employees such as Sgt. Lange. Compl. ¶¶ 61, 62. These allegations are more than sufficient to survive a motion to dismiss Sgt. Lange's ADA claim on the grounds that the County is her employer under an agency theory. *See, e.g., Boyden v. Conlin*, No. 17-CV-264-WMC, 2018 WL 2191733, at *8 (W.D. Wis. May 11, 2018) (finding agency relationship between plaintiffs' employers and entities administering their health benefits); *Jacobs v. Maricopa County*, 1994 WL 175424, at *3 (9th Cir. May 9, 1994) (reversing dismissal of Title VII claims against Maricopa County as agent of Maricopa County judiciary where plaintiff alleged County exercised control over court personnel through involvement with Judicial Merit System).

Sgt. Lange has also alleged facts sufficient to support a joint employer theory. Under the "joint employer" test, "where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of

---

[15] The *Williams* analysis was in the context of a Title VII claim, however, "[t]he ADA's definition [of employer] mirrors the definition of employer under Title VII of the Civil Rights Act, see 42 U.S.C. § 2000e(b); accordingly, '[t]he ADA adopts in large part the Title VII case precedent[,]' and 'courts have used the Title VII cases as a guide for determining employer liability under the ADA.'" *Nelson v. Jackson*, 1:14-CV-02851-ELR-JFK, 2015 WL 13545487 (N.D. Ga. 2015) (citing *Huck v. Mega Nursing Servs., Inc.*, 989 F. Supp. 1462, 1463 (S.D. Fla. 1997)).

the other company's employees, we may treat the entities as joint employers." *Moore v. Treatment Ctr. of Am. Grp, LLC*, No. 7:12-cv-22(HL), 2013 WL 1364093, at *3 (M.D. Ga. 2013) (internal quotation marks omitted). Sgt. Lange has alleged, and the Defendants do not dispute, that Defendants, not the Sheriff's Office, control the plan, repeatedly adopted the Exclusion, and refused to discuss a reasonable accommodation. Compl. ¶¶ 62, 63, 82–84, 86–89. The Sheriff's Office participates in the Plan by mutual agreement with the Defendants and the Defendants, not the Sheriff's Office, exercise control over the Plan's terms. *Id.* ¶¶ 59–64. Through the agreement between the County and the Sheriff's Office, the County is the entity with "sufficient control over the terms and conditions" of the Sheriff's Office employees' health care coverage. *Moore*, 2013 WL 1364093, at *3. Therefore, the County must be regarded as a joint employer of Sgt. Lange.

### B. The Individual Defendants Are Subject To Suit Under The ADA In Their Official Capacities.

In their motion to dismiss, the Individual Defendants assert that Sgt. Lange's ADA claims (both under Title I and Title II) should be dismissed because there is no individual liability under the statute. MTD at 5. However, this argument does not provide a basis for dismissal of Sgt. Lange's ADA claims against the Individual Defendants, who she has also sued in their *official capacities*. *See Garner v. Bryson*, No. 5:16-CV-121-CAR-CHW, 2017 WL 11456630, at *2 (M.D. Ga. Apr. 13, 2017) (finding sufficient facts to allow ADA claims to proceed against Governor of Georgia, Commissioner of Georgia Department of Corrections, and others in their official capacities); *Robinson v. Smith*, No. 4:14-CV-149(CDL), 2015 WL 4193269, at *3, *5 (M.D. Ga. July 10, 2015) (allowing ADA claims to proceed against school officials and employees in their official capacities, deeming them to be claims against the county school district). None of the cases relied on by Defendants holds otherwise. *See, e.g., Badillo v. Thorpe*, 158 F. App'x 208,

211 (11th Cir. 2005) ("[T]here is no *individual capacity* liability under Title II of the ADA.") (emphasis added); *Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1322 n.5 (N.D. Ga. 2006) (same).

## VI.   SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF ADA TITLE II.

Sgt. Lange has sufficiently alleged a violation of Title II of the ADA.  *See Lonergan v. Fla. Dept. of Corr.*, 623 F. App'x 990, 992 (11th Cir. 2015) (unpublished) ("To establish a prima facie case under the ADA, the plaintiff must show:  (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of his disability."); *see also id.* ("An ADA claim may proceed on the theory that the Defendant failed to reasonably accommodate the Plaintiff's disability.").  Defendants do not contest that Sgt. Lange is a qualified individual, but they argue that Sgt. Lange is not disabled as a matter of law.  And while Sgt. Lange alleges ADA violations based on disparate impact, disparate treatment, and a failure to accommodate her disability, Defendants conflate these three distinct claims and instead argue broadly that Sgt. Lange was not excluded from or denied any public benefit.  MJOP at 10.[16]  These arguments fail for the reasons set forth below.

### A.   Sgt. Lange Has Adequately Pled That She Has A Disability.

The County argues that Sgt. Lange is foreclosed from pursuing a claim under the ADA based on gender dysphoria because the definition of disability under the ADA expressly excludes "gender identity disorders not resulting from physical impairments" (the "GIDs Exclusion").  *See* MJOP at 10.  This is categorically wrong.

---

[16] Defendants' assertion that Sgt. Lange's ADA claims against the Individual Defendants must be dismissed because there is no individual liability under the statute is addressed in Section V.B.

As an initial matter, "disability" is defined broadly under the ADA as a "physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1), (4)(A).  Sgt. Lange has adequately alleged facts to state that she has a disability under any of these definitions.  Sgt. Lange has alleged that she experiences "stress, anxiety, depression, and distress" that "has continued to limit her ability to function socially and professionally" and that "[h]er reproductive, neurological and endocrine functions remain impaired."  Compl. ¶ 56.  She also alleges that in 2017 her health care provider diagnosed her with gender dysphoria, and she began sustained treatment, including social transition, hormone replacement therapy, and feminizing chest surgery.  *Id.* ¶¶ 51, 52, 55.  Sgt. Lange also alleged that she is "regarded as having" a disability in that she has experienced adverse treatment based on her gender dysphoria.  *Id.* ¶¶ 56, 107–09.

Furthermore, the fact that the County attempts to make a medical argument that gender dysphoria is not a disability by citing to a medical treatise, MJOP at 10, underscores that the question of whether Sgt. Lange has a "disability" is at minimum a fact issue not fit for resolution on the pleadings.  *See Edmo v. Idaho Dep't of Corr.*, No. 17-CV-00151-BLW, 2018 WL 2745898, at *8 (D. Idaho June 7, 2018) (declining to dismiss Title II claim because whether plaintiff's gender dysphoria "diagnosis falls under a specific exclusion of the ADA presents a genuine dispute of material fact in this case").

Defendants' argument also fails on the merits because gender dysphoria is not excluded from the ADA.  First, gender dysphoria is not excluded under the ADA's plain language.  The ADA clearly excludes "gender identity disorders not resulting from physical impairments," however, nowhere in its text does it exclude "gender dysphoria."  *See* 42 U.S.C. § 12211(b)(1).  Gender dysphoria is not excluded under the ADA because it is *not* a "gender identity disorder" at

all—it is a new and distinct diagnosis.  *See* 42 U.S.C. § 12211(b)(1); *see also Doe v. Mass. Dep't of Corr.*, No. 1:17-cv-12255-RGS, 2018 WL 2994403, at *7 (D. Mass. June 14, 2018) (concluding that gender dysphoria is not excluded by the ADA, in part, because it "is not merely another term for 'gender identity disorder'").  Therefore, even if the GIDs Exclusion could be interpreted to exclude all persons with *gender identity disorders*, it does not apply to Sgt. Lange, who has *gender dysphoria*.[17]  Compl. ¶¶ 3, 41 ("[U]nlike the outdated diagnosis of 'gender identity disorder,' the hallmark or presenting feature of gender dysphoria is not a person's gender identity per se, but rather the clinically diagnosable distress they experience as a consequence of the incongruence of their assigned and experienced genders").

Second, even if the Court equates the term "gender identity disorders" to encompass gender dysphoria, the ADA exclusion would still not apply to Sgt. Lange because the exclusion only applies to "gender identity disorder[s]" "not resulting from physical impairments."  42 U.S.C. § 12211(b)(1).[18]  However, as Sgt. Lange alleges in her Complaint, gender dysphoria *is the result of a physical impairment*.  *See* Compl. ¶ 39.[19]  The U.S. Department of Justice has likewise concluded:

> While no clear scientific consensus appears to exist regarding the *specific* origins of gender dysphoria (*i.e.*, whether it can be traced to neurological, genetic, or hormonal sources), the current research increasingly indicates that gender dysphoria has physiological or biological roots. . . . In light of the evolving scientific evidence suggesting that gender dysphoria may have a physical basis, . . . the [ADA's exclusion of gender identity disorders not resulting from physical

---

[17] Recently faced with the same argument presented in Defendants' Motion for Judgment on the Pleadings, the U.S. District Court for the Eastern District of Pennsylvania held that gender dysphoria is not excluded for a separate reason: the ADA's exclusion of "gender identity disorders" refers simply to transgender identity (i.e., "the condition of identifying with a different gender")—not to medical conditions like gender dysphoria that transgender people may have.  *Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822-JFL, 2017 WL 2178123, at *4 (E.D. Pa. May 18, 2017).

[18] *See* 29 C.F.R. § 1630.2(h) (defining "physical impairment" as "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as neurological . . . and endocrine").

[19] *See also Mass. Dep't of Corr.*, 2018 WL 2994403, at *6 (noting "recent studies demonstrating that GD diagnoses have a physical etiology, namely hormonal and genetic drivers contributing to the in utero development of dysphoria" and concluding that gender dysphoria is not excluded under the ADA because it may "result from physical causes").

impairments] should be construed narrowly such that gender dysphoria falls outside
its scope.

*See* Statement of Interest of the United States at 5, *Blatt v. Cabela's Retail, Inc.*, No. 5:14 cv-4822-
JFL, 2015 WL 9872493 (E.D. Pa. Nov. 16, 2015) (emphasis added).[20] Therefore, because Sgt.
Lange's gender dysphoria "result[s] from [a] physical impairment[]," the GIDs Exclusion, by its
terms, does not apply to her.  42 U.S.C. § 12211(b)(1).

Neither of the cases on which Defendants rely, *John Doe v. Northrop Grumman Sys. Corp*.,
No. 5:2019-cv-00991, 2019 WL 5390953, at *7 (N.D. Ala. Oct. 22, 2019) and *Parker v. Strawser
Constr., Inc.*, 307 F. Supp. 3d 744, 754–55 (S.D. Ohio 2018), are to the contrary.  Each holds that
the plaintiff failed to allege that her gender dysphoria "results from a physical impairment," which
was the basis for dismissal.  *Id*.; *John Doe*, 2019 WL 5390953, at *8.  Here, Sgt. Lange's
Complaint does not suffer from that fatal flaw.  Compl. ¶ 39.  Neither *Parker* nor *Northrop* holds
that, as a matter of law, gender dysphoria that "*result[s] from physical impairments*" (emphasis
added) is excluded from the ADA, and Defendants' contrary argument ignores this second, critical
half of the statutory text.  Moreover, neither case considers the constitutional avoidance argument
raised in Section VI.B.

**B.    Exclusion Of Gender Dysphoria As A Disability Under The ADA Would
Violate The Federal Equal Protection Clause.**

The County's proposed construction of the GIDs Exclusion would give rise to "a serious
doubt of constitutionality" under the Equal Protection Clause and must therefore be avoided.  *Doe
v. Mass. Dep't of Corr.*, 2018 WL 2994403, at *5–6 (D. Mass. June 14, 2018); *see also U.S. v.
Stone*, 139 F.3d 822, 834 (11th Cir. 1998) ("The court must examine . . . at least, whether a reading
of the statute reasonably supports two interpretations, one of which is a construction avoiding the

---

[20] *Accord* Stat. of Int. of U.S. at 2–3, *Doe v. Dzurenda*, No. 3:16-CV-1934 (D. Conn. Oct. 27, 2017), ECF No. 57;
Stat. of Int. of U.S. at 2–3, *Doe v. Arrisi*, No. 3:16-cv-08640 (D.N.J. July 17, 2017), ECF No. 49.

likelihood of constitutional infirmity."). Specifically, by excluding a medical condition that is closely associated with transgender people (indeed, only transgender people have gender dysphoria, *see* Comp. ¶¶ 41, 106), the GIDs Exclusion invokes a suspect or quasi-suspect, sex-based classification that is not narrowly tailored or substantially related to the achievement of a compelling or important governmental interest and, therefore, fails heightened scrutiny. To be sure, the GIDs Exclusion, construed to apply to gender dysphoria, would fail even the most minimal level of scrutiny because it would be rooted in animus against transgender people,[21] and such "a bare [congressional] desire to harm a politically unpopular group cannot constitute a *legitimate* governmental interest." *Romer v. Evans*, 517 U.S. 620, 634–35 (1996) (quoting *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973)); *see also City of Cleburne, Tex.*, 473 U.S. at 446) ("The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."). As the District of Massachusetts has concluded, the ADA's exclusion of gender dysphoria would be "constitutionally suspect," particularly given "the pairing of gender identity disorders with conduct that is criminal or viewed by society as immoral or lewd," which would raise "a serious question as to the light in which the drafters of this exclusion viewed transgender persons." *See Doe v. Mass. Dep't of Corr.*, 2018

---

[21] The ADA's legislative history reveals that the ADA's exclusion of "gender identity disorders" was based on the moral opprobrium of three senior senators who were seeking to exclude "sexual behavior disorders" they thought undeserving of legal protection. *See, e.g.*, 135 CONG. REC. S10753, *available at* 1989 WL 183115 (daily ed. Sept. 7, 1989) ("I could not imagine the [ADA] sponsors would want to provide a protected legal status to somebody who has such [mental] disorders, particularly those [that] might have a moral content.") (statement of Sen. Armstrong); *Id.* at S10768, *available at* 1989 WL 183216 ("If this were a bill involving people in a wheelchair or those who have been injured in the war, that is one thing. But how in the world did you get to the place that you did not even [ex]clude transvestites? What I get out of all of this is here comes the U.S. Government telling the employer that he cannot set up any moral standards for his business . . . . [H]e cannot say, look I feel very strongly about people who engage in sexually deviant behavior or unlawful sexual practices.") (statement of Sen. Helms); *id.* at S10796 ("In short, we are talking about behavior that is immoral, improper, or illegal and which individuals are engaging in of their own volition, admittedly for reasons we do not fully understand.") (statement of Sen. Rudman).

WL 2994403, at *7 (D. Mass. June 14, 2018).  For this reason, Defendants' proposed construction cannot survive review.[22]

C.    **Sgt. Lange Has Adequately Pled That She Was Denied Meaningful Access To a Public Benefit Because Of Her Disability.**

Defendants' argument that Sgt. Lange cannot establish that she was "*excluded* from or *denied* any public benefit" or restricted in receiving an "'equal opportunity'" in violation of Title II of the ADA fails.  MJOP at 10.  Defendants claim that Sgt. Lange has "meaningful access to the same insurance plan as nondisabled participants." *Id.* at 11.  Yet, Defendants ignore the undisputed fact that the Exclusion is discriminatory on its face—it excludes coverage for any medical treatment that is related to "services and supplies for a sex change" and "drugs for sex change surgery" when required to treat gender dysphoria but covers the same treatments for other medical conditions.  The Court should reject Defendants' attempt to characterize Sgt. Lange's claims as a quest for "an individualized health plan," MJOP at 9, when in fact she is merely seeking equal access to the same treatments that other plan participants have, but which she cannot obtain because of her disability.

Defendants' argument also fails because it ignores the principle that "discrimination in violation of the ADA can occur even though disabled consumers are given the exact same services or benefits as those afforded to non-disabled consumers." *Belton v. Georgia*, No. 1:10–CV–0583–RWS, 2012 WL 1080304, at *9 (N.D. Ga. Mar. 30, 2012).  Indeed, "ADA regulations require public entities to make 'reasonable modifications' to their services where necessary to provide disabled persons with meaningful access to those services." *Id.* (citing 28 C.F.R. § 35.130(b)(7)).

---

[22] Notably, in over five years of litigation involving the GIDs Exclusion, no one has offered a different basis for the GIDs Exclusion.  *See* Notice by the United States of Decision not to Intervene to Defend the Constitutionality of a Federal Statute, *Doe v. Mass. Dept. of Correction*, No. 1:17-CV-12255-RGS, 2018 WL 1156227 (D. Mass. May 30, 2018) (declining to defend constitutionality of GIDs Exclusion).

In the context of disability discrimination, courts have held that a "'one size fits all'" program that does not take into account the needs of a group of consumers with a particular disability violates the ADA. *See, e.g.*, *id.* at *11 (internal citation omitted); *Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998) (ADA's language "demonstrates a recognition by Congress that discrimination against persons with disabilities differs from discrimination on the basis of . . . gender, or race . . . . [A] person with a disability may be the victim of discrimination *precisely because she did not receive disparate treatment when she needed accommodation*." (emphasis added)).

Sgt. Lange's Complaint adequately pleads that she is being denied "meaningful access" to the same insurance plan as participants who do not suffer from gender dysphoria because the Plan explicitly denies medically necessary care specifically to those seeking to treat their gender dysphoria. Compl. ¶¶ 71, 106. Thus, Sgt. Lange has adequately alleged that the Plan discriminates against her because of her gender dysphoria. *See Belton*, 2012 WL 1080304, at *12 (holding that deaf plaintiffs were discriminated against because they were denied meaningful access to state mental health services offered to the public because of their deafness).

To support its argument that Sgt. Lange has "meaningful access to the same insurance plan as nondisabled participants," the County relies primarily on the fact that the "health plan at issue includes 68 medical exclusions and 29 pharmacy exclusions." MJOP at 11. But, because the Exclusion is an *explicit* gender- and disability-based classification, the presence or absence of other exclusions, regardless of whether they are lawful, is irrelevant to determining whether the Exclusion is discriminatory. Also, Defendants have failed to show that any of the Plan's other exclusions are disability-based. Rather, most appear to be belt-and-suspenders clarifications of items that are not medically necessary. The issue is not whether the Plan has other exclusions, it

is whether *this* Exclusion—for "services and supplies for a sex change" and "drugs for sex change surgery"—violates the ADA.  Plaintiff has sufficiently pled that it does.  Compl. ¶¶ 70–74, 77.

*Alexander v. Choate*, 469 U.S. 287 (1985), is inapposite.  *Alexander* held that a limitation on the number of covered inpatient care days—that applied *to both disabled and nondisabled* Tennessee Medicaid recipients—did not violate the Rehabilitation Act.  *Id.* at 290.  It did not involve targeting a *particular* disability for the exclusion of medically necessary care, like the Exclusion.  Compl. ¶¶ 70–74, 77.

## VII.    SGT. LANGE HAS ADEQUATELY PLED VIOLATIONS OF TITLE VII.

### A.    Houston County Is Sgt. Lange's Employer.

The County's argument that it is entitled to judgment on the pleadings on Sgt. Lange's Title VII claims because it is not her employer fails for the reasons discussed in Section V.A.

### B.    The Individual Defendants Are Subject To Suit Under Title VII In Their Official Capacities.

Defendants argue that Sgt. Lange's Title VII claims against the Individual Defendants, like their ADA claims, must be dismissed because there is no individual liability under Title VII.  MTD at 5–6.  Again, this argument does not provide a basis for dismissal where, as here, Sgt. Lange has also brought her Title VII claims against the Individual Defendants in their official capacities. Indeed, Defendants' own case recognizes that claims brought against individuals in their official capacities are proper under Title VII.  *See Busby*, 931 F.2d at 772 ("We think the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.").

## CONCLUSION

Sgt. Lange has adequately pled her claims under the United States and Georgia Constitutions, under the ADA, and under Title VII.  Further, Sgt. Lange has demonstrated that the

Board of Commissioners may be sued, and that the claims against the Individual Defendants in their official capacities may be maintained.  For all these reasons discussed herein, the Motions should be denied in their entirety.

Respectfully submitted this 14th day of January, 2020.

_/s/  Kenneth E. Barton III_
Kenneth E. Barton III
Ga. State Bar No. 301171
M. Devlin Cooper
Ga. State Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
(478) 841-9007 tel.
(478) 841-9002 fax
keb@cooperbarton.com
mdc@cooperbarton.com

Wesley R. Powell (*pro hac vice*)
Mary J. Eaton (*pro hac vice*)
Sarah Matlack Wastler (*pro hac vice*)
Jill K. Grant (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 fax
wpowell@willkie.com
meaton@willkie.com
swastler@willkie.com
jgrant@willkie.com

David Brown (*pro hac vice*)
Noah E. Lewis (*pro hac vice*)
TRANSGENDER LEGAL DEFENSE
EDUCATION FUND, INC.
520 8th Ave. Ste. 2204
New York, NY 10018
(646) 862-9396 tel.
(646) 930-5654 fax
dbrown@transgenderlegal.org
nlewis@transgenderlegal.org

Kevin M. Barry (*pro hac vice*)
QUINNIPIAC UNIVERSITY SCHOOL OF
LAW LEGAL CLINIC
275 Mount Carmel Ave.
Hamden, CT 06518
(203) 582-3238 tel.
(203) 582-3237 fax
legalclinic@quinnipiac.edu

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 14, 2020, I electronically filed the foregoing with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.


*/s/  Kenneth E. Barton III*
Kenneth E. Barton III