**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

------------------------------------------------------------x
:
ANNA LANGE, :
:
        Plaintiff; :
:
v. :
:
HOUSTON COUNTY, GEORGIA; :
HOUSTON COUNTY BOARD OF :    Civil Action: 5:19–CV–00392
COMMISSIONERS; Houston County :
Commissioners TOMMY STALNAKER, H. :    **ORAL ARGUMENT REQUESTED**
JAY WALKER III, GAIL ROBINSON, :
LARRY THOMSON, TOM MCMICHAEL, :
BARRY HOLLAND, and ROBBIE :
DUNBAR, in their official and individual :
capacities; and Houston County Director of :
Personnel KENNETH CARTER, in his official :
and individual capacity; :
:
        Defendants. :
------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I.   SGT. LANGE IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF HER CLAIMS ..................................................................................................1

    **a.   The Exclusion Violates Equal Protection Guarantees, Title VII, and the ADA.**..................................................................................................................1

        i.   *The Argument About "Delegation" Misses the Mark.*................................1

        ii.  *The Plan's Alleged Other "Exclusions" Are Irrelevant.* ............................2

        iii. *Cost Cannot Justify Invidious Discrimination.* ..........................................4

II.  SGT. LANGE WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION ISN'T GRANTED ........................................................................................................7

III. THE BALANCE OF EQUITIES FAVORS SGT. LANGE.............................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                             **Page(s)**

*Arizona Governing Comm. for Tax Deferred Annuity & Deferred Compen. Plans v. Norris*,
    463 U.S. 1073 (1983) ................................................................................................. 2, 5, 7

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) ................................................................................................. 3

*Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*,
    179 F.3d 725 (9th Cir. 1999) ................................................................................................. 3

*Bayse v. Dozier*,
    No. 5:18-cv-49-TES-CHW, 2018 WL 5779606 (M.D. Ga. Oct. 11, 2018) ..................... 8, 9

*Bonidy v. U.S. Postal Serv.*,
    790 F.3d 1121 (10th Cir. 2015) ............................................................................................. 6

*Bowen v. City of New York*,
    476 U.S. 467 (1986) ............................................................................................................... 9

*Boyden v. Conlin*,
    No. 17-CV-264-WMC, 2018 WL 2191733 (W.D. Wis. May 11, 2018) ............................. 2

*Boyden v. Conlin*,
    341 F. Supp. 3d 979 (W.D. Wis. 2018) ...................................................................... 4, 6, 10

*Califano v. Goldfarb*,
    430 U.S. 199 (1977) ............................................................................................................... 6

*Califano v. Westcott*,
    443 U.S. 76 (1979) .............................................................................................................. 2, 5

*Caspar v. Snyder*,
    77 F. Supp. 3d 616 (E.D. Mich. 2015) ................................................................................. 7

*Chaudhry v. Neighborhood Health P'ship, Inc.*,
    178 F. App'x 900 (11th Cir. 2006) ...................................................................................... 2

*Choppers, Inc. v. Passaro*,
    159 F. App'x 74 (11th Cir. 2005) ........................................................................................ 1

*Collins v. Brewer*,
    727 F. Supp. 2d 797 (D. Ariz. 2010) ................................................................................... 7

*Concerned Parents to Save Dreher Park Ctr. v. City of W. Palm Beach*,
    846 F. Supp. 986 (S.D. Fla. 1994) .......................................................................8

*Diaz v. Brewer*,
    656 F.3d 1008 (9th Cir. 2011) ............................................................................5

*Doe v. Jud. Nominating Comm'n for Fifteenth Jud. Cir. of Fla.*,
    906 F. Supp. 1534 (S.D. Fla. 1995) ....................................................................8

*Fields v. Smith*,
    653 F.3d 550 (7th Cir. 2011) .........................................................................6, 10

*Flack v. Wis. Dep't of Health Servs.*,
    328 F. Supp. 3d 931 (W.D. Wis. 2018) ..............................................................6

*Frontiero v. Richardson*,
    411 U.S. 677 (1973) ...................................................................................2, 5, 6

*Glenn v. Brumby*,
    663 F.3d 1312 (11th Cir. 2011) ..........................................................................4

*Hardin v. Stynchcomb*,
    691 F.2d 1364 (11th Cir. 1982) ..........................................................................3

*Henderson v. Bodine Aluminum, Inc.*,
    70 F.3d 958 (8th Cir. 1995) ................................................................................9

*Hunt v. Cromartie*,
    526 U.S. 541 (1999) ...........................................................................................3

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson
    Controls, Inc.*,
    499 U.S. 187 (1991) ...........................................................................................3

*In re J. D. Jewell, Inc.*,
    571 F.2d 928 (5th Cir. 1978) ............................................................................10

*Jefferson v. Sewon Am., Inc.*,
    891 F.3d 911 (11th Cir. 2018) ............................................................................3

*Kelly v. Honeywell Int'l, Inc.*,
    3:16-CV-00543 (VLB), 2017 WL 2798249 (D. Conn. June 27, 2017),
    *aff'd,* 933 F.3d 173 (2d Cir. 2019) .....................................................................9

*Marcus v. Sullivan*,
    926 F.2d 604 (7th Cir. 1991) ..............................................................................9

*McDonald's Corp. v. Robertson*,
    147 F.3d 1301 (11th Cir. 1998) ..................................................................................9

*New Directions Treatment Services v. City of Reading*,
    490 F.3d 293 (3d Cir. 2007)......................................................................................3

*Olmstead v. L.C. ex rel. Zimring*,
    527 U.S. 581 (1999)..................................................................................................8

*Personnel Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979)..................................................................................................3

*Punt v. Kelley Services*,
    862 F.3d 1040 (10th Cir. 2017) .................................................................................3

*Ray v. Sch. Dist. of DeSoto County*,
    666 F. Supp. 1524 (M.D. Fla. 1987).........................................................................8

*Raytheon Co. v. Hernandez*,
    540 U.S. 44 (2003)....................................................................................................3

*Rinaldi v. Yeager*,
    384 U.S. 305 (1966)..................................................................................................5

*Rodde v. Bonta*,
    357 F.3d 988 (9th Cir. 2004) ....................................................................................9

*Sch. Bd. of Nassau County, Fla. v. Arline*,
    480 U.S. 273 (1987)..................................................................................................7

*Soneeya v. Spencer*,
    851 F. Supp. 2d 228 (D. Mass. 2012) .......................................................................6

*Stockman v. Trump*,
    No. EDCV 17–1799 JGB (KKx), 2017 WL 9732572 (C.D. Cal. Dec. 22, 2017)...............6

*Stone v. Trump*,
    280 F. Supp. 3d 747 (D. Md. 2017) ........................................................................10

*Sundstrom v. Frank*,
    No. 06-C-112, 2007 WL 3046240 (E.D. Wis. Oct. 15, 2007)..........................................10

*Tennessee v. Lane*,
    541 U.S. 509 (2004)..................................................................................................8

*Tesone v. Empire Mktg. Strategies*,
  942 F.3d 979 (10th Cir. 2019) ...................................................................................3

*Toomey v. Arizona*,
  No. CV-19-00035-TUC-RM (LAB), 2019 WL 7172144 (D. Ariz. Dec. 23, 2019)........5, 6

*Tugg v. Towey*,
  864 F. Supp. 1201 (S.D. Fla. 1994) ...........................................................................8

*W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*,
  461 U.S. 757 (1983)..................................................................................................10

*Wayte v. United States*,
  470 U.S. 598 (1985)....................................................................................................3

*Wengler v. Druggists Mut. Ins. Co.*,
  446 U.S. 142 (1980)....................................................................................................6

*Whitley v. Dr Pepper Snapple Grp., Inc.*,
  4:16-CV-00362, 2017 WL 1739917 (E.D. Tex. May 4, 2017) ..........................................2

*Williams v. City of Montgomery*,
  742 F.2d 586 (11th Cir. 1984) ....................................................................................2

Plaintiff Sgt. Anna Lange, through counsel, respectfully submits the following memorandum of law in reply to Defendants' opposition to her motion for a preliminary injunction.

## I. SGT. LANGE IS SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS OF HER CLAIMS

### a. The Exclusion Violates Equal Protection Guarantees, Title VII, and the ADA.

To obtain a preliminary injunction, Sgt. Lange need only show a substantial likelihood, not a certainty, of success on the merits, and only as to one of her claims. *See Choppers, Inc. v. Passaro*, 159 F. App'x 74, 75 (11th Cir. 2005) (unpublished). As demonstrated in her opening brief ("PI Br."), Sgt. Lange easily satisfies this standard for all her claims. The Exclusion is a sex-stereotype-based classification that also targets a protected class (transgender people) in violation of state and federal equal protection guarantees, as well as Title VII. *See* PI Br. at 8–12 (ECF No. 28). Likewise, it violates the ADA because it prohibits coverage for the only known effective treatment for her disability (gender dysphoria) and because Defendants failed to provide Sgt. Lange with a reasonable accommodation. *See id.*

Beyond cursorily referencing certain arguments made in their Rule 12 briefs—which fail to show that she is unlikely to succeed on the merits, for the reasons set forth in Sgt. Lange's Omnibus Opposition filed concurrently herewith—Defendants' opposition ("PI Opp.") argues that Sgt. Lange cannot demonstrate the requisite chance of success only because the Exclusion is not discriminatory. *See* PI Opp. at 6–10 (ECF No. 36). They offer three reasons: (i) the Sheriff didn't "delegate" responsibility to the County; (ii) the Plan excludes other things in addition to the Exclusion; and (iii) the Exclusion is a cost-saving measure. *Id.* None of these is availing.

#### i. *The Argument About "Delegation" Misses the Mark.*

Defendants do not explain how Sgt. Lange's purported failure to prove "delegation," *see* PI Opp. at 7, undermines her chance of success on the merits as to any of her claims. Sgt. Lange's

1

claims do not depend on any duty by the Sheriff to provide benefits or to participate in the Plan, nor the County to allow the same. *Contra id.* There is no dispute that: (1) the Defendants, not the Sheriff's Office, set the Plan's terms (in which capacity they have adopted the Exclusion and refused to discuss a reasonable accommodation);[1] (2) the Sheriff's Office cannot set the terms of Sgt. Lange's health benefits;[2] and (3) the Sheriff's Office (along with all other officers in the County) participates in the Plan, by mutual agreement with the Defendants.[3] Thus, the Sheriff's Office has delegated control over an employer's "traditional right" (setting the terms of benefits) to the County. *See Williams v. City of Montgomery*, 742 F.2d 586, 589 (11th Cir. 1984); *Boyden v. Conlin*, No. 17-CV-264-WMC, 2018 WL 2191733, at *4–*7 (W.D. Wis. May 11, 2018).

ii. *The Plan's Alleged Other "Exclusions" Are Irrelevant.*

Sex stereotyping in the provision of benefits has, for decades, been held to violate both the equal protection guarantee, *see, e.g., Califano v. Westcott*, 443 U.S. 76, 83–89 (1979); *Frontiero v. Richardson*, 411 U.S. 677, 688–90 (1973); and Title VII, *see, e.g., Arizona Governing Comm. for Tax Deferred Annuity & Deferred Compen. Plans v. Norris*, 463 U.S. 1073, 1083–85 (1983). Likewise, excluding a specified disability from the scope of benefits violates the ADA. *See Chaudhry v. Neighborhood Health P'ship, Inc.*, 178 F. App'x 900, 903 (11th Cir. 2006) (unpublished); *Whitley v. Dr Pepper Snapple Grp., Inc.*, 4:16-CV-00362, 2017 WL 1739917, at *3–*4 (E.D. Tex. May 4, 2017) ("A term or provision in a health insurance plan may violate the ADA if it singles out a particular disability."); PI Br. at 15 & n.11.

Defendants nevertheless argue that the fact that the Plan contains numerous other

---

[1] *See* Carter Decl. at ¶¶ 2, 7 (ECF No. 36-1); Lewis Decl. Exh. A at 1 (Defendant Carter checking "no" next to option that "the [E]xclusion . . . will be removed"); Exh. B ("Houston County has chosen to decline the 2017 Mandate for Nondiscrimination . . . .") (ECF No. 28-4); Lange Decl. ¶¶ 26-28 (ECF No. 28-2).
[2] *See* Carter Decl. ¶ 7.
[3] *Id.*

2

"exclusions" demonstrates that they did not "*intentional*[*ly*]" discriminate. PI Opp. at 7–9. But because the Exclusion is an *explicit* gender- and disability-based classification, Defendants' subjective motivation is irrelevant. "A showing of discriminatory intent is not necessary when [an] equal protection claim is based on an overtly discriminatory classification." *Wayte v. United States*, 470 U.S. 598, 608 n.10 (1985); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979) (plaintiff must show discriminatory impact only where statutory classification is not overtly gender-based); *see also Hunt v. Cromartie*, 526 U.S. 541, 546 (1999) ("When racial classifications are explicit, no inquiry into legislative purpose is necessary."). Likewise, under Title VII, "[w]hether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991). Similarly, the ADA does not require a showing of subjective intent in the case of "an employer's adoption of a facially discriminatory policy." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019); *accord Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (en banc).[4]

In other words, this is the rare case of "overt discrimination" in which a plaintiff need not rely on circumstantial evidence to establish an inference of discriminatory intent. *See Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982) (distinguishing the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 922 (11th Cir. 2018). The Exclusion here is explicitly based on "the sheer

---

[4] Analogously, "facially discriminatory laws present per se violations of [Title II]." *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 735 (9th Cir. 1999); *accord New Directions Treatment Services v. City of Reading*, 490 F.3d 293, 303 (3d Cir. 2007). Additionally, subjective intent is, by definition, not an element of a disparate impact claim, *see Raytheon Co. v. Hernandez*, 540 U.S. 44, 52–53 (2003); nor a failure-to-accommodate claim, *Punt v. Kelley Services*, 862 F.3d 1040, 1048 (10th Cir. 2017) (reviewing cases). Sgt. Lange makes both here. *See* PI Br. at 15–17.

3

fact of the transition." *See Glenn v. Brumby*, 663 F.3d 1312, 1321 (11th Cir. 2011). It applies only to transgender employees seeking coverage for a "Sex Change," Carter Decl. Attach. E at 71, 73 (ECF No. 36-1), which is also the only effective treatment for gender dysphoria, Schechter Decl. ¶ 28. Absent the Exclusion, this care would be covered. *See* Lange Decl. Exh. B at 1 (ECF No. 28-2 at 131) (listing clinical indications making such procedures "medically necessary"). Thus, the Exclusion facially excludes employees, solely on the basis of sex stereotype, membership in a protected class, and disability, from a benefit they would otherwise receive. *See also* PI Br. at 8–17.

Whether the Plan has other exclusions (lawful or not) is irrelevant to the above analysis. As a matter of logic, it does not answer the question of whether *this* exclusion is discriminatory. Sgt. Lange need not demonstrate that all the other "exclusions" Defendants refer to are not discriminatory;[5] rather it is enough for her to show that *this* medically necessary treatment would be covered but for the discriminatory Exclusion.

### iii. *Cost Cannot Justify Invidious Discrimination.*

Cost is Defendants' only proffered justification for the Exclusion, PI Opp. at 9–10, and it fails for at least two reasons. First, to survive heightened scrutiny, Defendants must support the Exclusion with a "'genuine' justification, not one that is 'hypothesized or invented *post hoc* in response to litigation.'" *Glenn*, 663 F.3d at 1316, 1320 (citing *United States v. Virginia*, 518 U.S. at 533). Here, Defendants' justification is the definition of post hoc. *See Glenn*, 663 F.3d at 1321; *Boyden v. Conlin*, 341 F. Supp. 3d 979, 1001 (W.D. Wis. 2018). Defendants admit that they first

---

[5] However, Defendants have failed to show that any of the other exclusions are disability- or class-based. Most appear to be belt-and-suspenders clarifications of items that are not medically necessary, e.g., "Routine foot care unless Medically Necessary," Carter Decl. Attach. E at 68, or are otherwise not discriminatorily targeted at any group of people, let alone a group defined by disability, sex-stereotype, or membership in a suspect class, *e.g.,* "Cosmetic Services," *id*. at 67. The purported exclusion for "Hearing Aids" actually states that they are covered. *Id*. at 69.

4

considered the cost of the Exclusion in the fall of 2019, "in light of this lawsuit," Carter Decl. ¶ 4; well after Defendants first adopted and then repeatedly reelected the Exclusion, *id.*, *see also* Lewis Decl. Exhs. A, B (ECF No. 28-4); Lange Decl. ¶ 24.[6]

Second, although cost saving can be a legitimate purpose for government action, the government may not arbitrarily impose a disproportionate share of the cost-savings burden on a disfavored class. *See Norris*, 463 U.S. at 1083–85; *Califano v. Westcott*, 443 U.S. at 88–89; *Frontiero*, 411 U.S. at 688–90; *Toomey v. Arizona*, No. CV-19-00035-TUC-RM (LAB), 2019 WL 7172144, at *8 (D. Ariz. Dec. 23, 2019). Even under the most deferential standard of review, there must be some rational relationship between cost-saving efforts and the class chosen to bear that burden. *See Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966); *see also Diaz v. Brewer*, 656 F.3d 1008, 1014 (9th Cir. 2011) (cost savings could not justify denying family health coverage to same-sex domestic partners under rational basis review).

Yet here, the Exclusion unlawfully singles out people seeking a "Sex Change" and imposes a unique cost burden on them for the purpose of subsidizing the care of non-stigmatized plan members. The evidence shows that gender dysphoria treatments are not disproportionately high cost. Over each of the past three years, between thirty and forty-two of the Plan's nearly 1,500 members have been "high cost claimants," defined as incurring annual expenses of over $50,000. Carter Decl. Attach. A, first page (ECF No. 36-1 at 7).[7] Yet Defendants argue that, even while covering those members' claims, they cannot cover comparable or lesser amounts for gender

---

[6] This is also reflected in Sgt. Lange's open records request to the County for records regarding why the Exclusion had been adopted, explicitly including cost analyses. Because there were no such documents considering costs, the County's response did not include any. *See* Lewis Decl. ¶¶ 2, 7.

[7] The sum of the "total paid" amount for high cost claims over each of the three years is $10,185,064. The total number of claimants was 107. The mean is therefore $95,187.51.

5

dysphoria care,[8] because they need to save money.  PI Opp. at 8–9, 15–16.  This is not cost savings; it is discrimination.  *See* PI Br. at 8–17.  Defendants have shown that they know how to implement non-discriminatory cost-saving measures by applying them to all Plan members regardless of gender stereotype, disability, or protected class membership.  *See* Carter Decl. ¶ 5 & Attach. C.

Defendants' argument that cost can justify invidious discrimination where a plaintiff is not dependent on the State, Def's Br. at 10, is simply wrong.  None of the cited cases hold this, and there are numerous examples from other contexts.  *E.g., Frontiero*, 411 U.S. at 689 (government may not rely on sex stereotypes in awarding military spousal benefits on the grounds that it is "cheaper and easier"); *see also Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 151 (1980) (non-means-tested worker's compensation survivor's benefits); *Califano v. Goldfarb*, 430 U.S. 199, 204–05 (1977) (non-means-tested social security survivor's benefits).[9]

Notably, Defendants have failed to point to a single case in which a court agreed that gender dysphoria treatment could lawfully be excluded from healthcare coverage due to cost; apparently, every court to consider this argument has rejected it.  *See, e.g., Fields v. Smith*, 653 F.3d 550, 555 (7th Cir. 2011); *Toomey*, 2019 WL 7172144, at *6–*9; *Boyden*, 341 F. Supp. 3d at 1000–03; *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 954–55 (W.D. Wis. 2018); *Stockman v. Trump*, No. EDCV 17–1799 JGB (KKx), 2017 WL 9732572, at *15 (C.D. Cal. Dec. 22, 2017); *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 243 (D. Mass. 2012).

Nor have Defendants shown that correcting the Plan's discrimination would be "substantially more impactful" for them than for a State.  *Contra* PI Opp. at 10.  Defendants do

---

[8] Defendants' estimate for such care is $93,050–$186,100 in surgical costs, but over a lifetime, not a year, PI Opp. at 15; the surgery Sgt. Lange seeks here, which Defendants estimate to cost about $25,600, Carter Decl. Attach. B, second page (ECF No. 36-1 at 21), would not even make her a "high cost claimant."

[9] Defendants are also wrong to imply that *Bonidy v. Conklin* upheld a statute under heightened scrutiny due to cost savings.  The "important [government] interests" that satisfied heightened scrutiny there were "employee and customer safety." *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1127 (10th Cir. 2015).

not argue that it would be *proportionally* more costly, let alone that it would jeopardize the Plan's solvency or make them unable to continue to offer it. *Contra, e.g., Norris*, 463 U.S. at 1106 (majority opinion of Powell, J.) (limiting scope of remedy in Title VII sex discrimination case to prospective relief where retrospective relief "would have devastating results"); *Sch. Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287 n.17 (1987) ("Accommodation [for a disability] is not reasonable if it either imposes 'undue financial and administrative burdens' . . . or requires 'a fundamental alteration in the nature of the program.'") (citation omitted). Even accepting *arguendo* that the cost of transition-related procedures for a plan member *over their lifetime* would be $93,050–$186,100, PI Opp. at 15; *see also* Carter Decl. ¶¶ 3, 6 & Attach. B, this is only about 1–2% of the Plan's $11.6 million *annual* expenditure. This limited expense would be offset by reduction in costs associated with untreated gender dysphoria. *See* Schecter Decl. ¶ 41.[10]

## II.  SGT. LANGE WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION ISN'T GRANTED

Sgt. Lange has adequately shown irreparable harm resulting from her untreated medical condition and the stigma and social isolation resulting from the Exclusion. *See* PI Br. at 17–18. This injury isn't speculative, it's ongoing. *See* Lange Decl. at ¶ 14 ("*I still experience* stress, anxiety, depression, and distress") (emphasis added); *see also id.* at ¶¶ 19–21, 29–31 (describing ongoing undertreated gender dysphoria, stress, safety threats, caution about appearing in public, and stigma). Defendants are incorrect that harms from discrimination and undertreated illness must be life-threatening for a preliminary injunction to issue. *See* PI Br. at 18; *see also Caspar v. Snyder*, 77 F. Supp. 3d 616, 640 (E.D. Mich. 2015) (reviewing cases holding that distress and suffering due to discrimination constitute irreparable harm); *Collins v. Brewer*, 727 F. Supp. 2d

---

[10] Further, Defendants maintain stop-loss insurance that covers individual claims over $175,000 and caps aggregate claims at $13.9 million annually. Carter Decl. Attach. A, ninth page (ECF No. 36-1 at 15).

7

797, 813 (D. Ariz. 2010) ("the stigma of discriminatory treatment and the harm of receiving unequal compensation for equal work" are irreparable harms from discriminatory denial of benefits).[11]

This is paradigmatically true for claims arising under the ADA (and its antecessor, the Rehabilitation Act). The statute is intended to "guarante[e] a baseline of equal citizenship by protecting against stigma and systematic exclusion from public and private opportunities, and [to] protec[t] society against the loss of valuable talents." *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 599–601 (1999). State-imposed stigma, barriers to social integration, and psychological and emotional suffering are all irreparable harms justifying preliminary injunctive relief under the ADA. *See, e.g., Doe v. Jud. Nominating Comm'n for Fifteenth Jud. Cir. of Fla.*, 906 F. Supp. 1534, 1545 (S.D. Fla. 1995) ("Discrimination on the basis of disability is the type of harm that warrants injunctive relief."); *Concerned Parents to Save Dreher Park Ctr. v. City of W. Palm Beach*, 846 F. Supp. 986, 992 (S.D. Fla. 1994) ("injunctive relief is appropriately granted" regarding injuries to ADA claimants' "sense of emotional and psychological well-being"); *Ray v. Sch. Dist. of DeSoto County*, 666 F. Supp. 1524, 1535 (M.D. Fla. 1987) ("Denial of the opportunity to lead as normal an educational and social life as possible" is irreparable harm under the Rehabilitation Act). *See also Tugg v. Towey*, 864 F. Supp. 1201, 1209 (S.D. Fla. 1994) (reviewing cases). Thus, preliminary relief is justified here. *See* Lange Decl. at ¶¶ 14, 19–21, 29–31 (describing her present

---

[11] Defendants misleadingly state that *Bayse v. Dozier*, No. 5:18-cv-49-TES-CHW, 2018 WL 5779606 at *6 (M.D. Ga. Oct. 11, 2018) held that "severe anxiety and depression" don't constitute irreparable harm. PI Opp. at 11 n.4. *Bayse* simply held that such allegations, *unsupported by evidence*, don't show irreparable harm: "Plaintiff has presented no evidence, other than her own statements, that SRS is medically necessary. Nor has she shown that her current treatment of hormone therapy is inadequate." 2018 WL 5779606, at *4. Sgt. Lange, by contrast, has presented two unrebutted expert witness declarations establishing that bottom surgery is medically necessary, and hormone therapy (which, in any event, Defendants also refuse to cover) is inadequate to treat her medical condition. Bluebond-Langner Decl. ¶¶ 28–36; Schechter Decl. ¶ 31.

suffering, barriers to social integration, and stigma); Shechter Decl. at ¶¶ 21, 41, 43 (discussing symptoms and co-morbidities of gender dysphoria, which can be alleviated by treatment).

Defendants' proposal that Sgt. Lange buy a plan on the marketplace is unduly speculative, inadequate to redress her injuries, and inequitable. *See* PI Opp. at 12. Plaintiffs who have demonstrated a likelihood of success on a claim of unlawful denial of healthcare coverage, and irreparable harm from the resulting loss of care, need not also show the impossibility of obtaining care in any other way.[12] Courts have widely rejected this argument. *E.g., Bowen v. City of New York*, 476 U.S. 467, 476, 484–85 (1986) (affirming interim reinstatement of disability benefits during pendency of appeal process, citing the delays and ongoing health harms exhaustion of appeals would entail); *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 961 (8th Cir. 1995) ("requiring [plaintiff] to make . . . a showing" that "she could not secure . . . an equally effective alternative[ cancer treatment] from another source" would be "too speculative"); *see also Rodde v. Bonta*, 357 F.3d 988, 990, 999 (9th Cir. 2004) (affirming preliminary injunction against closing special hospital for disabled patients, although not all patients were indigent and thus could theoretically go elsewhere); *Kelly v. Honeywell Int'l, Inc.*, 3:16-CV-00543 (VLB), 2017 WL 2798249, at *2 (D. Conn. June 27, 2017), *aff'd,* 933 F.3d 173 (2d Cir. 2019) (retirees seeking a preliminary injunction against loss of healthcare benefits were not required to seek Medicare or marketplace coverage); *cf. Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir. 1991) ("A delayed receipt of disability benefits . . . cannot suffice to make the claimant whole."). Additionally,

---

[12] Defendants argue that this proposal is justifiable under a heightened standard for "mandatory" injunctions. PI Opp. at 12–13. But "[a] mandatory injunction requires a defendant to do some positive act, as opposed to a standard preliminary injunction where a defendant is ordered to stop doing something or not to do something." *Bayse* 2018 WL 5779606, at *2 (quoting *Dantzler, Inc. v. Hubert Moore Lumber Co.*, No. 7:13-CV-56 HL, 2013 WL 2452697, at *1 (M.D. Ga. June 5, 2013)); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 n.2 (11th Cir. 1998). Here, Sgt. Lange asks Defendants to *cease* enforcing the Exclusion, not take an affirmative act. *See* PI Br. at 15–18.

Defendant's proposed self-help option would not remedy the stigma of discrimination experienced by Sgt. Lange. *See* Lange Decl. at ¶ 31.[13]

### III. THE BALANCE OF EQUITIES FAVORS SGT. LANGE

Defendants have also failed to establish that a preliminary injunction would impose an unreasonable financial burden. According to Defendants, Sgt. Lange's bottom surgery would cost about $25,600[14] or approximately 0.2% of the Plan's annual expenditure. *See* Carter Decl. Attach. B, second page (ECF No. 36-1 at 21).[15] This is the same percentage that was found "actuarially immaterial" by the court in *Boyden*. *See* 341 F. Supp. 3d at 1000. Defendants do not argue that they cannot cover this amount, or that it would impose an undue hardship, such as threatening the Plan's solvency or altering its fundamental nature. *Supra* note 7.

Defendants' threat of garnishing Sgt. Lange's wages if they ultimately win on the merits, Defs' Br. at 15, is unlawful and specious. A bond is a defendant's source of compensation for damages from a preliminary injunction that is subsequently invalidated. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 770 n.14 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."); *In re J. D. Jewell, Inc.*, 571 F.2d 928, 934 (5th Cir. 1978). Yet Defendants have not opposed Sgt. Lange's request for a waiver of bond. *See* PI Br. at 20. Garnishing Sgt. Lange's salary would be wage theft.

---

[13] Defendants' argument that preliminary injunctions have only been awarded to transgender prisoners and Medicaid members, PI Opp. at 13–14, is also wrong. *Contra, e.g., Stone v. Trump*, 280 F. Supp. 3d 747, 765-69 (D. Md. 2017) (members of the military).

[14] This is consistent with other courts' findings. *E.g., Fields*, 653 F.3d at 555 (about $20,000); *Sundstrom v. Frank*, No. 06-C-112, 2007 WL 3046240, at *9 n.29 (E.D. Wis. Oct. 15, 2007) (same).

[15] She has already had top surgery, Lange Decl. ¶ 13, and she seeks no other procedures, *id.* ¶ 29 (bottom surgery would "complete my transition"). Her non-surgical expenses—medications and lab work—are small. *Cf.* Carter Decl. Attach. B. (estimating $20–$200/month for estrogen).

10

Respectfully submitted this 14th day of January, 2020.

| | |
|---|---|
| */s/ Kenneth E. Barton III* | David Brown (*pro hac vice*) |
| Kenneth E. Barton III | Noah E. Lewis (*pro hac vice*) |
| Ga. State Bar No. 301171 | TRANSGENDER LEGAL DEFENSE |
| M. Devlin Cooper | EDUCATION FUND, INC. |
| Ga. State Bar No. 142447 | 520 8th Ave. Ste. 2204 |
| COOPER, BARTON & COOPER | New York, NY 10018 |
| 170 College Street | (646) 862-9396 tel. |
| Macon, GA 31201 | (646) 930-5654 fax |
| (478) 841-9007 tel. | dbrown@transgenderlegal.org |
| (478) 841-9002 fax | nlewis@transgenderlegal.org |
| keb@cooperbarton.com | |
| mdc@cooperbarton.com | |
| | |
| Wesley Powell (*pro hac vice*) | Kevin M. Barry (*pro hac vice*) |
| Mary Eaton (*pro hac vice*) | QUINNIPIAC UNIVERSITY SCHOOL OF |
| Jill K. Grant (*pro hac vice*) | LAW LEGAL CLINIC |
| WILLKIE FARR & GALLAGHER LLP | 275 Mount Carmel Ave. |
| 787 Seventh Avenue | Hamden, CT 06518 |
| New York, NY 10019-6099 | (203) 582-3238 tel. |
| (212) 728-8000 tel. | (203) 582-3237 fax |
| (212) 728-8111 fax | legalclinic@quinnipiac.edu |
| wpowell@willkie.com | |
| meaton@willkie.com | |
| jgrant@willkie.com | |

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on January 14, 2020, I electronically filed the foregoing with the Clerk of this Court by using the CM/ECF system, which will accomplish service through the Notice of Electronic Filing for parties and attorneys who are Filing Users.

 */s/  Kenneth E. Barton III*
Kenneth E. Barton III
