IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
|     Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| v. | ) | |
| | ) | |
| HOUSTON COUNTY, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

**REPLY IN SUPPORT OF
DEFENDANT HOUSTON COUNTY'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

COMES NOW Defendant Houston County (including the Individual Defendants in their official capacities) and, in accordance with Local Rule 7.3, M.D. Ga., submits the following Reply in Support of its Motion for Judgment on the Pleadings.

In its principal brief, the County established it is not Plaintiff's employer for her Title VII or ADA Title I claims, she had no ADA Title II injury, she could not proceed on her state equal protection claim, the County is entitled to several immunities, and Plaintiff does not have standing to pursue relief under a federal equal protection theory.  In her Opposition, Plaintiff raised a host of arguments challenging specific aspects of the Motion, including asserting it was prematurely filed.  Notwithstanding the creativity and number of Plaintiff's arguments to the contrary, the County reinforces its positions on the issues in this Reply, leading to the following conclusions:

- The County is not Plaintiff's employer under a single employer, joint employer, or agency theory for Title VII or ADA Title I because she does not (and cannot) allege the County controlled the "traditional" or fundamental aspects of her employment.

- Even if Plaintiff is disabled under the ADA (which the County disputes), she has not been denied *access* to the County's health insurance plan; therefore, she has experienced no ADA Title II violation.

- Plaintiff fails to state a claim under Section 1983.[1]

Accordingly, the County's Motion for Judgment on the Pleadings should be granted in full.

## I.    The Motion for Judgment on the Pleadings is Timely and the Court has Discretion to Consider it.

The County's Motion is not premature.  Judgment on the pleadings is appropriate "[a]fter the pleadings are closed."  Fed. R. Civ. P. 12(c).  "The pleadings are closed only when a complaint and answer have been filed."  Lillian B. ex rel. Brown v. Gwinnett Cty. Sch. Dist., 631 F. App'x 851, 853 (11th Cir. 2015).  The Eleventh Circuit has explained that the purpose of Rule 12(c)'s timing mechanism is so that "'a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings.' . . . When only a single pleading [the complaint] has been filed, 'competing pleadings' do not exist, so a motion for judgment on the pleadings is not appropriate."  Perez v. Wells Fargo N.A., 774

---

[1] Plaintiff clarifies, for the first time, that she is *not* asserting her *state* equal protection claim against the County, the Board of Commissioners, or the Individual Defendants in their official capacities, acknowledging that such claims are barred by sovereign immunity. (Doc. 41, p. 20, n. 11.)  Plaintiff contends that her state equal protection claim may proceed against the Individual Defendants in their individual capacities for injunctive and declaratory relief.  (Id. at 20)  As set forth in Defendants' Reply in Support of their Motion to Dismiss, Plaintiff's claim is without merit and should be dismissed.

F.3d 1329, 1336 (11th Cir. 2014) (quoting 5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1367 (3d ed. 2004)).

Here, there are competing pleadings for all of the relevant questions raised in the County's Motion and, thus, the pleadings are closed with respect to the County.  See S.W. v. Clayton Cty. Pub. Sch., 185 F. Supp. 3d 1366, 1374 (N.D. Ga. 2016) (finding pleadings closed for motion for judgment on pleadings despite codefendant not having answered).

Plaintiff asserts that the Motion is premature because the pleadings have not closed until *all* defendants have answered.  Rule 12(c) contains no such limitation.  *See* Fed. R. Civ. P. 12(c); Whitson v. Bumbo, No. C 07-05597 MHP, 2009 WL 1515597, at *4 (N.D. Cal. Apr. 16, 2009) ("Rule 12(c) contains no such limitation").  Moreover, the unpublished district court cases from the Eleventh Circuit that Plaintiff cites in support of this argument are distinguishable from the present case.

In Jordan v. Def. Fin. & Accounting Servs., No. 8:14-CV-958-T-33TGW, 2014 WL 3887748, at *1 (M.D. Fla. Aug. 7, 2014), the Court denied a motion for judgment on the pleadings filed by the plaintiff as premature because *no* defendants had filed answers. Here, the County has filed an answer, so there are competing pleadings as between the County and Plaintiff, as required by the Eleventh Circuit.

In Nautilus Ins. Co. v. Headhunters Racetrack, LLC, No. 5:13-CV-426 (CAR), 2014 WL 12712257, at *4 (M.D. Ga. June 9, 2014), the Court found a motion for judgment on the pleadings premature where two codefendants had not yet filed answers to the complaint.  In doing so, Nautilus ultimately relied on two cases from outside this Circuit— Zurich Ins. Co. v. London Mkt. Insurers, No. 97 C 1802, 1997 WL 603845 (N.D. Ill. Sept.

16, 1997), and Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1030 (W.D. Tenn. 2003).[2]  Neither Zurich nor Signature Combs is worthy of this Court's deference as persuasive authority.

Zurich was bereft of case law and cited only Rule 12(c).  1997 WL 603845, at *5 (noting that multiple defendants had not yet appeared in case).  However, as discussed above, Rule 12(c) contains no such limitation.  Signature Combs held that a motion for judgment on the pleadings filed by a defendant was *technically* premature when *that defendant* had not filed an answer.  253 F. Supp. 2d at 1030.  Thus, the procedural situation the court addressed in Signature Combs was not the issue present before the Nautilus court and it is not the issue for this Court.  Moreover, the court in Signature Combs nonetheless decided to consider the technically premature motion and construe it as a motion to dismiss pursuant to Rule 12(b)(6).  Id.

Even if the Court were to find that the County's motion were *technically* premature, the Court should exercise its discretion to consider the Motion nonetheless, as other courts have done.  See, e.g., Alibris v. ADT LLC, No. 9:14-CV-81616, 2015 WL 5084231, at *4, n.7 (S.D. Fla. Aug. 28, 2015) (explaining that "because Defendant has

---

[2] Nautilus cited Estate of Jackson v. Sandnes, No. 8:13-CV-1133T-33-MAP, 2014 WL 408489, *1 (M.D. Fla. Feb. 3, 2014).  In turn, Estate of Jackson relied on two cases— Gelsomino v. Horizon Unlimited, Inc., No. 07-80697-CIV-MARRA, 2008 WL 4194842, at *2 (S.D. Fla. Sept. 10, 2008), and Zurich Ins. Co. v. London Mkt. Insurers, No. 97 C 1802, 1997 WL 603845 (N.D. Ill. Sept. 16, 1997)—to determine that a motion for judgment on the pleadings was premature because two motions to dismiss remained pending.  Gelsomino cited Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1030 (W.D. Tenn. 2003), in finding that all defendants must have filed answers to the complaint for pleadings to be considered closed.

not answered Plaintiff's [second amended complaint], the pleadings are not technically closed in the instant case," but noting that "[i]t is not unprecedented to consider the pleadings closed, despite a defendant's technical failure to answer an amended complaint, for purposes of construing a defendant's motion as one for judgment on the pleadings."); Paskenta Band of Nomlaki Indians v. Crosby, No. 2:15-cv-00538-MCE-CMK, 2016 WL 6094468, at *3 (E.D. Cal. Oct. 19, 2016) (holding that "[a]ll parties have been served, and APC and Umpqua Defendants have simply opted to make motions to dismiss instead of file answers.  However, it makes little sense to require Moore to wait until APC and the Umpqua Defendants file their answers before considering its dismissal request under Rule 12(c)."); Bumbo, No. C 07-05597 MHP, 2009 WL 1515597, at *4 (N.D. Cal. Apr. 16, 2009) ("In this case, Target did file an answer before filing its Rule 12(c) motion.  It makes no sense to require Target to wait for co-defendant Bumbo–Pty's answer before allowing Target to file a Rule 12(c) motion . . . ."); Jung v. Ass'n of Am. Med. Colleges, 339 F. Supp. 2d 26, 35–36 (D.D.C. 2004), aff'd, 184 F. App'x 9 (D.C. Cir. 2006) ("[T]he Court concludes that it is appropriate for it to proceed with consideration of defendants' motion under Rule 12(c) for those defendants that have answered the complaint and under Rule 12(b)(6) for those defendants that have not.  The motion is not premature as to any defendant.")  Thus, the County's motion – raising dispositive issues – should be considered at this time, along with (or even after) consideration of the other Defendants' Motion to Dismiss.

II.    <u>**The County is not Plaintiff's Employer**</u>.

There are three possible ways Plaintiff could attempt to show the County should be regarded as her employer:  (1) that the County and the Sheriff's Office really amount to one entity, making them a "single employer;" (2) that the County and the Sheriff's Office – while separate entities – each control a fundamental aspect of Plaintiff's employment as a "joint employer;" or (3) that the County is an agent of the Sheriff's Office as to fundamental aspects of Plaintiff's employment.  <u>Lyes v. City of Riviera Beach</u>, 166 F.3d 1332, 1341 (11th Cir. 1999).  Plaintiff's allegations fail to make a plausible claim under any of these options.

A.    **The County and the Sheriff's Office are not a single employer.**

The County showed in its principal brief that the Eleventh Circuit recognizes a presumption that governmental bodies established as separate under state law will be treated as separate under Title VII and the ADA.  (Doc. 31-1, p. 7, citing <u>Lyes</u>.)  In fact, <u>Lyes</u> dealt with a very close relationship between a city and the city's Community Redevelopment Agency (CRA).  <u>Lyes</u>, 166 F.3d at 1335.  There was some crossover of personnel (including the city manager functioning as the executive director of the CRA for eighteen months) and there were indicia of oversight of the CRA by the city (including identical membership of the city council and the CRA board).  <u>Id.</u>, at 1347; <u>Lyes</u>, 166 F.3d at 1359 (Kravitch, J, concurring).  Despite these connections, the Eleventh Circuit concluded the presumption of separateness under state law had not been "clearly outweighed" by factors showing common employment.  <u>Id.</u>, at 1346.  That conclusion is instructive here:

> To summarize, we hold that when assessing whether multiple governmental entities are a single "employer" under Title VII, we begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII. That presumption may be rebutted by evidence establishing that a governmental entity was structured with the purpose of evading the reach of federal employment discrimination law.  Absent an evasive purpose, the presumption against aggregating separate public entities will control the inquiry, unless it is *clearly outweighed* by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship that they should be counted together under Title VII.

Id., at 1345 (emphasis added).  Here, the distinction between the County and the Sheriff's Office is not merely a matter of state *law* – it is in the state *constitution*.  Ga. Const. Art. IX, § 2, ¶ 1(c)(1).  It cannot plausibly be suggested that this constitutional design was intended to skirt Title VII or the ADA.  Nor do the pleadings allege factors clearly outweighing the presumption.  Rather, as addressed further below, the Complaint and the Answer show a separateness consistent with the Lyes presumption.  Plaintiff's arguments to the contrary are not persuasive.

Plaintiff's pleadings clearly demonstrate who her employer is.  She is a Deputy Sheriff *in the Sheriff's Office*.  (Complaint, ¶¶ 2, 16; Answer, ¶¶ 2, 16.)  *The Sheriff's Office* hired her and promoted her twice.  (Complaint, ¶ 26; Answer, ¶ 26.)  With the *Sheriff's* support, she told her colleagues of her transition plans.  (Complaint, ¶ 29.)  She receives health care benefits administered by the County.  (Complaint, ¶ 32; Answer, ¶ 32.)  The Sheriff's Office has "delegated" to the County the provision of health benefits.  (Complaint, ¶ 61.)  The County adds and removes employees from the health plan *as directed by the Sheriff's Office*.  (Complaint, ¶ 62; Answer, ¶ 62.)  These allegations support only that the

County administers benefits, a ministerial function which has uniformly been held *not* to make a county an employer for Title VII or ADA purposes.  Lyes, 166 F. 3d at 1343 (sharing of resources between government agencies does not equate to control over day-to-day employment); Massengale v. Hill, No. 1:05-CV-189-TWT, 2005 WL 8155075, at *6 (N.D. Ga. July 25, 2005) (providing insurance and pension benefits does not amount to control over employment relationship).[3]

Thus, since the Complaint lacks allegations that *clearly outweigh* the presumption that the County and the Sheriff's Office are constitutionally independent, the County's motion for judgment on the pleadings should be granted as to Plaintiff's ADA and Title VII claims because the County is not Plaintiff's employer.  Nelson v. Jackson, No. 1:14–CV–02851–ELR–JFK, 2015 WL 13545487, at *5-7 (N.D. Ga. March 31, 2015) (dismissing deputy sheriff's ADA claim against county on Rule 12 motion); Massengale, 2005 WL 8155075, at *6 (dismissing county under Rule 12 motion as to Title VII and ADEA claims).  Plaintiff's assertions of joint employment or agency status fare no better.

**B.      The County and the Sheriff's Office are not joint employers.**

In advocating for joint employer status, Plaintiff cites but one case – Moore v. Treatment Ctr. Of Am. Grp., LLC, No. 7:12-cv-22(HL), 2013 WL 1364093 (M.D. Ga.

---

[3] Plaintiff cites Frazier v. Smith, 12 F. Supp. 2d 1362 (S.D. Ga. 1998), for the proposition that merely paying a sheriff's office employee's salary can create an issue of fact regarding employer status.  Doc. 41, p. 35.  This conclusion was reached after noting two facts:  (1) only the sheriff could hire or fire the plaintiff, but (2) the county was responsible for paying her salary.  Id., at 1368.  It does not appear the defendants in that case raised the issues being raised by the County here, and it is clear the court did not address them.  As shown above, more recent cases like Lyes and Massengale take a more nuanced approach to the issue.

2013).  However, the <u>Moore</u> court explicitly did not reach the joint employer issue (<u>Id.</u>, at

*4, n. 3), instead finding a dispute of fact as to the single employer status of two medical

entities which shared upper management and had common ownership; the plaintiff, who

was ostensibly employed by a corporate subsidiary, was given an employee handbook

declaring her the employee of the corporate parent; and her termination from the subsidiary

was effectuated by the parent entity.  <u>Id.</u>, at *4.  <u>Moore</u> is inapposite because it uses a

corporate test for single employer status disavowed in <u>Lyes</u> for public entities; it does not

speak to joint employer status; and it presents a wildly different set of facts than this case.[4]

Cases more analogous to this one conclude that a county's administering payroll

and benefits do not make the county a joint employer with a constitutional officer.  <u>Lyes</u>,

166 F. 3d at 1343 (sharing of resources between government agencies does not equate to

control over day-to-day employment); <u>Massengale v. Hill</u>, No. 1:05-CV-189-TWT, 2005

WL 8155075, at *6 (N.D. Ga. July 25, 2005) (providing insurance and pension benefits

does not amount to control over employment relationship).

---

[4] In another part of her Response, Plaintiff cites <u>Blasingim v. Hill</u>, 2009 WL 10664918,
at *13 (N.D. Ga. Jan. 16, 2009), where the court concluded it could not determine the joint
employer issue on a Rule 12 motion.  However, the critical relationship was not the one
between the sheriff and the county, but rather the one between the employee and the county.
<u>Id.</u>, at *11.  Blasingim was the Clayton County Sheriff's Office (CCSO) Accounts
Coordinator, who had to follow both CCSO and Clayton County standards for her
accounting and treasury functions.  <u>Id.</u>, at *13.  Thus, the court was not in a position to rule
out that the county's control over significant aspects of her employment position gave it
some measure of control over her employment.  <u>Id.</u>  In contrast, Plaintiff is a sergeant
whose law enforcement duties are firmly within the control of only the Sheriff's Office and
not the County.  (Complaint, ¶ 16; Answer, ¶ 16.)

**C.     The County is not the agent of the Sheriff's Office.**

As Plaintiff recognizes, an agency can arise when one employer delegates to another entity "the employer's traditional rights, such as hiring or firing."  (Doc. 41, pp. 35-36, citing <u>Williams v. City of Montgomery</u>, 742 F. 2d 586, 589 (11th Cir. 1984).)  <u>Williams</u> involved a formal delegation by the City to its Personnel Board of the "power to exercise duties traditionally reserved to the employer: establishing a pay plan, formulating minimum standards for jobs, evaluating employees, and transferring, promoting, or demoting employees." <u>Id.</u>  As shown by the facts of that case, the Board also had the authority to overturn (or not overturn) a termination decision by the City.  <u>Id.</u>, at 587-88. No such delegation of the Sheriff's Office's/employer's "traditional rights" is alleged here. To the contrary, as shown above, the Sheriff's Office hired Plaintiff, promoted her twice, and instructs the County which employees to add to and remove from the POS plan. (Complaint, ¶¶ 16, 62.)  Thus, the County is not an agent of the Sheriff's Office as to its traditional rights or the fundamental aspects of employment, so it cannot be sued as an employer under Title VII or ADA Title I.

**III.    <u>Plaintiff's ADA Title II Claim Fails</u>.**

Title II of the ADA is designed to ensure meaningful access for disabled individuals to government services and programs.  42 U.S.C. § 12132.  The County showed Plaintiff's ADA Title II claim is subject to dismissal if either (1) she is not disabled; or (2) she has not experienced a denial of meaningful access to the County's health plan.  (Doc. 31-1, pp. 9-13.)  The County contends both criteria are met, but the claim should be dismissed if only one is established.

-10-

### A.      Plaintiff is not disabled under the ADA.

As Defendants established in their Rule 12(c) motion, "gender dysphoria" is a replacement diagnosis for "gender identity disorder," which is excluded from the ADA's coverage.  (Doc. 31-1, p. 10.)  Plaintiff argues that gender dysphoria is not excluded from the ADA by the Act's plain language because the Act's exclusionary language references "gender identity disorders" rather than "gender dysphoria."  (Doc. 41, p 39.)  Although there are cases on both sides of this debate – compare Parker v. Strawser Constr., Inc., 307 F. Supp. 3d 744, 753-54 (S.D. Ohio 2018) (finding gender dysphoria not resulting from physical impairment excluded from ADA coverage), and Michaels v. Akal Sec., Inc., No. 09-CV-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. June 24, 2010) (holding same), and Doe v. Northrop Grumman Sys. Corp., No. 5:19-CV-00991-CLS, 2019 WL 5390953, at *7 (N.D. Ala. Oct. 22, 2019) (holding same), with Blatt v. Cabela's Retail, Inc., No. 5:14-CV-04822, 2017 WL 2178123, at *3 (E.D. Pa. May 18, 2017) (finding gender dysphoria not excluded from ADA coverage), and Doe v. Massachusetts Dep't of Corr., No. CV 17-12255-RGS, 2018 WL 2994403, at *6 (D. Mass. June 14, 2018) (finding same) – the one court in the Eleventh Circuit to have considered the issue followed the Parker v. Strawser line of cases and concluded that gender dysphoria is legally synonymous with gender identity disorder, and therefore excluded from coverage under the ADA. Northrop Grumman, 2019 WL 5390953, at *7.

Plaintiff alternatively argues that even if gender dysphoria is legally synonymous with gender identity disorder, her claims should not be dismissed because she has adequately pled that she suffers from gender dysphoria resulting from a physical

impairment, thereby saving her claims from the same fate as the plaintiffs in <u>Parker</u> and <u>Northrop Grumman</u>.  (Doc. 41, p. 40, Complaint, ¶ 39).  Yet, Plaintiff's cited allegations are merely a recitation of the diagnostic criteria for the disease under the DSM-V and medical literature opining as to the neurological origins of the disease.  (Doc. 41, pp. 40-41.)  None of the allegations cited are particularized to Plaintiff herself.  Rather, they simply state how gender dysphoria operates generally.  These non-individualized contentions are not sufficient to bring Plaintiff's condition within the "physical impairment" exception, so Plaintiff has not shown she is disabled.[5]

**B.     Plaintiff cannot show she was denied access to a public benefit because of a disability.**

Even if Plaintiff could establish that she is disabled under the ADA, which she has not, she cannot show she was denied access to a public benefit or service because of her disability.  The County established in its principal brief that Title II of the ADA prohibits the denial of access to or participation in government programs, citing four cases showing that the ADA does not guarantee having a certain level of healthcare.  (Doc. 31-1, pp. 10-13.)  In her Response, Plaintiff cites two cases she contends establish that public entities must make reasonable accommodations to provide meaningful access.  (Doc. 41, pp. 43-

---

[5] Plaintiff also argues the exclusionary language of the ADA violates the Equal Protection Clause and, therefore, under the canon of constitutional avoidance, Defendants' proposed interpretation must be avoided.  However, the canon of constitutional avoidance is only applicable when the plain language of the statute is ambiguous, <u>Nielsen v. Preap</u>, 139 S. Ct. 954, 972 (2019), and Plaintiff makes no argument that such ambiguity exists within the Act's plain language.  Therefore, use of the canon of constitutional avoidance is inappropriate, as it is not intended as an alternative route to directly challenging the constitutionality of a statute.  <u>See</u> <u>Clark v. Martinez</u>, 543 U.S. 371, 381 (2005).

44.)  However, these cases deal directly with *access* to the public service or benefit, which Plaintiff already has.  Thus, she has not demonstrated a Title II violation.

In Belton v. Georgia, deaf individuals did not have meaningful *access* to mental health services when those services were offered without fluent American Sign Language interpreters.  2012 WL 1080304, at *11 (N.D. Ga. Mar. 30, 2012).  In Presta v. Peninsula Corridor Joint Powers Bd., 16 F. Supp. 2d 1134, 1135 (N.D. Cal. 1998), a passenger with a pain disorder (thoracic outlet syndrome) was not given sufficient time to board and disembark Amtrak trains.  Both of these cases present disability-based impediments to meaningful *access* to the public benefit or service.[6]  However, Plaintiff does not allege she was denied access to health insurance because of the absence of an interpreter, or because she was given inadequate time to review materials (the logical analogues of the situations in Belton and Presta).  Rather, she has, and has had, complete access to and participates in the County's health plan.  (Complaint, ¶ 60; Answer, ¶ 60.)  Further, neither of the cases Plaintiff cites stand for the proposition that the offered service itself needs to change – Amtrak was not asked to build a new track to Presta's home; the state was not asked to provide different mental health services.  Indeed, the Belton court noted that the case involved the State's obligation to ensure "the mental health services it provides to the general public are *equally available* to persons who are deaf."  2012 WL 1080304, at *14

---

[6] In fact, in commenting on the ADA, the Presta court noted, "This provision guards against both intentional discrimination and simple *exclusion* from services …"  16 F. Supp. 2d at 1136 (emphasis added).

(emphasis added).  Plaintiff had access to the POS Plan and participates in it according to its terms.

Nor can Plaintiff show she was denied a reasonable modification to enable her to gain meaningful access to a benefit or service.  As an initial matter, Plaintiff cannot point to any language in the Plan that denies transgender persons or persons suffering from gender dysphoria access to participate in the plan.  And, as Plaintiff tangentially states in her Complaint, not all transgender people experience gender dysphoria.  (Complaint, ¶ 39.)  Nor do all transgender individuals undergo all available treatments.  (Complaint, ¶¶ 45-46.)

Plaintiff states, with scant support, that Alexander v. Choate is inapposite because it did not "involve targeting a particular disability for the exclusion of medically necessary care."  (Doc. 41, p. 45 (emphasis omitted).)  However, as Defendant established above, the Exclusion is not targeted at particular *conditions*; it is targeted at particular *treatments*.  Further, Plaintiff has made no showing that her proposed modification (being allowed an exemption from the Exclusion) is *reasonable*.  See Alexander v. Choate, 469 U.S. 287, 300 (1985) (holding that the state can be required to make reasonable modifications to accommodate disabled persons but not "fundamental" or "substantial" modifications).  Plaintiff proposes she be granted an exception under the POS Plan to allow her to obtain treatment important to *her*.  If that challenge were accepted, the County would be subject to other requests for individualized healthcare providing treatment important to other plan participants.  This approach has been roundly rejected by courts considering Title II

-14-

challenges.  (Doc. 31-1, p. 12.)  Accordingly, the County is entitled to judgment on the pleadings as to Plaintiff's ADA Title II claim.

## IV.   **Plaintiff's Georgia Equal Protection Claim Fails**.

Even if Georgia law authorized a cause of action under the State Constitution – which it does not (see Section III.A. of Defendants' Reply in Support of its Motion to Dismiss) – the County asserted its entitlement to dismissal of Plaintiff's state law equal protection claim on the alternative grounds of sovereign immunity.  In response, Plaintiff conceded that sovereign immunity barred such a claim, but added that she did "not assert her Georgia equal protection claim against the County, the Board, and the Individual Defendants in their official capacities."  (Doc. 41, p. 31.)  In so doing, Plaintiff has tacitly admitted that her Complaint constitutes an impermissible "shotgun pleading," as a review of Count II of the Complaint reveals that – like every other Count – the relevant claim is simply asserted against "Defendants" collectively.  In the Eleventh Circuit, the assertion of multiple claims against multiple defendants without specifying which defendants are responsible for which acts or which defendant each claim is brought against constitutes a violation of Fed. R. Civ. P. 10(b) and is otherwise impermissible.  See Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged …."). See also Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 164 (11th Cir. 1997).  Plaintiff is not free to plead her claims in this fashion and then unilaterally determine which ones are asserted against which Defendants as it suits her.  Accordingly, the County (including the Board and the Individual Defendants in their

official capacities) are entitled to judgment as a matter of law on Plaintiff's equal protection claim under the Georgia Constitution on the grounds of sovereign immunity as well.

**V.** **Plaintiff's Federal Equal Protection Claim Fails.**

    **A.** **Plaintiff's Section 1983 Claims Against Defendants Stalnaker, Walker, Robinson, Thomson, McMichael, Holland, Dunbar, and Carter in Their Official Capacities Are Duplicative and Redundant**.

As an initial matter, the Individual Defendants in their Official Capacities have asserted their entitlement to dismissal of Plaintiff's Section 1983 claim against them on the well-established grounds that claims asserted against public officers and employees in their official capacities under Section 1983 are the functional equivalent of claims brought directly against the public entity itself – here, the County – and, as such, are duplicative and not independently maintainable. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) (citing Kentucky v. Graham, 473 U.S. 165, 165-6 (1985)). Plaintiff seeks to avoid application of this basic principle by arguing that Busby did not apply it at the Rule 12 stage of the case, from which she infers that dismissal of her duplicative and redundant official capacity claims would be premature. (Pl. Resp., p. 16.) This defense being purely legal in nature, there is no merit to Plaintiff's contention. See Riles v. Augusta-Richmond County Commission, 2017 WL 3597488, *3 (S.D.Ga. Aug. 21, 2017) (applying Busby at Rule 12 stage); Draper v. Atlanta Pub. Sch. Dist., 2008 WL 11381893, *1 (N.D.Ga. May 6, 2008) (same in context of Rehab Act claim). Accordingly, Plaintiff's official capacity claims against Defendants Stalnaker, Walker, Robinson, Thomson, McMichael, Holland, Dunbar, and Carter are due to be dismissed.

**B.    Plaintiff's Complaint Fails to State a Claim for Relief Against the County under Section 1983**.

The County asserts its entitlement to dismissal of Plaintiff's Section 1983 claim on the grounds that Plaintiff is an employee of the Houston County Sheriff's Office – not an employee of the County.  As established in the County's principal brief, under Georgia law, sheriffs are officers of the State, *not* the county in which they are situated. See Grech v. Clayton Cty., 335 F.3d 1326, 1343-44 (11th Cir. 2003) (en banc); see also Manders v. Lee, 338 F.3d 1304, 1312 (11th Cir. 2003) (en banc) ("[G]iven how Georgia's Constitution … makes the sheriff's office a constitutional office independent from the county entity itself, precludes all county control, and grants only the State control over sheriffs, this 'county officer' nomenclature necessarily reflects a geographic label defining the territory in which a sheriff is elected and mainly operates." [Citation omitted.]). As such, the County and the Sheriff's Office – Plaintiff's actual employer – are legally distinct governmental entities, and Plaintiff therefore has no entitlement to health insurance benefits from the County under the Fourteenth Amendment or federal law. See Blessing v. Freestone, 520 U.S. 329, 340 (1997) ("Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the [United States] Constitution and [federal] laws." [Emphasis added; internal quotations omitted.]).

Despite her contentions to the contrary, because Plaintiff is a participant in the County's plan only through an informal inter-governmental agreement between the County and the Sheriff's Office, she is, at best, a third-party beneficiary of that agreement. Under Section 1983, however, third-party beneficiaries only have standing to sue if the source of

the claimed benefit is a Congressional enactment "intended to create a federal right," Gonzaga University v. Doe, 536 U.S. 273, 283-4 (2002), and that right was intended to be "enforceable [by its] beneficiaries." Id. at 281. As Plaintiff's clearly is unable to meet this standard, her Section 1983 claim against the County must be dismissed.[7]

Moreover, even if Plaintiff were a County employee or otherwise had standing to pursue her Section 1983 claim against the County, dismissal would still be appropriate, as the County's Plan does not discriminate with respect to the persons who are eligible for insurance benefits thereunder.  The classification challenged in this case – transgender status – actually relates to the asserted under-inclusiveness of the medical conditions that the County has elected to insure. Although the County has adopted and maintained a plan to insure most medical conditions, it has not chosen to cover all conditions; indeed, as previously noted, it contains 67 exclusions in addition to the one at issue in this action. Plaintiff nevertheless contends that she has suffered discrimination because she requires a medical procedure or treatment which falls outside the Plan's coverage. According to Plaintiff, because this medical procedure or treatment is uniquely for the benefit of plan participants who are transgender, its exclusion therefore must constitute discrimination on the basis of her transgender status. Notwithstanding her strained efforts to avoid its application, however, the Supreme Court's decision in Geduldig v. Aiello, 417 U.S. 484, 497 (1974) is dispositive of this claim.  See Geduldig, 417 at 497 (holding that coverage

_____

[7] Plaintiff's efforts to muddy the waters by couching this "standing" argument in strict Article III terms is unavailing. (Pl. Resp., pp. 17-18.) Irrespective of the label attached to the defense, Plaintiff is unable to state a claim for relief against the County under Section 1983.

exclusion for pregnancy does not equate to sex discrimination under Equal Protection Clause). Plaintiff's Section 1983 claim against the County is due to be dismissed for this additional reason as well.

## VI.   <u>**Conclusion**</u>

Accordingly, for all of the foregoing reasons, the County (which, as a matter of law, includes Defendants Stalnaker, Walker, Robinson, Thomson, McMichael, Holland, Dunbar, and Carter in their official capacities) requests this Court to enter an order granting it judgment on the pleadings as to all of Plaintiff's claims.

Respectfully submitted this 11th day of February, 2020.

*/s/ Sharon P. Morgan*
R. Read Gignilliat
Georgia Bar No. 293390
Sharon P. Morgan
Georgia Bar No. 522955
Patrick L. Lail
Georgia Bar No. 431101

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
(404) 659-6700
(404) 222-9718 (Facsimile)
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ANNA LANGE,                          )
                                     )
          Plaintiff,                 )          CIVIL ACTION NO.
                                     )          5:19-CV-00392-MTT
v.                                   )
                                     )
HOUSTON COUNTY, et al.,              )
                                     )
          Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed a true and correct copy of the **REPLY IN
SUPPORT OF DEFENDANT HOUSTON COUNTY'S MOTION FOR JUDGMENT
ON THE PLEADINGS** with the Clerk of Court using the CM/ECF system which will
automatically send email notification of such filing, constitution service, to the following
attorneys of record:

| | |
|---|---|
| Kenneth E. Barton, III | Wesley Powell |
| M. Devlin Cooper | Mary Eaton |
| | Jill K. Grant |
| David Brown | Kevin M. Barry |
| Noah E. Lewis | |

Respectfully submitted, this the 11th day of February, 2020.

/s/ Sharon P. Morgan
Sharon P. Morgan
Georgia Bar No. 522955

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
(404) 659-6700
(404) 222-9718 (facsimile)
morgan@elarbeethompson.com

*Attorneys for Defendants*