IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANNA LANGE, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | 5:19-CV-00392-MTT |
| v. ) | |
| ) | |
| ) | |
| ) | |
| HOUSTON COUNTY, et al., ) | |
| ) | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO EXCLUDE
PLAINTIFF'S EXPERT TESTIMONY:
LOREN S. SCHECHTER, M.D.**

COME NOW Defendants Houston County, Georgia, and Houston County Sheriff, Cullen Talton in his official capacity ("Sheriff's Office"), and move this Court to exclude the testimony of Plaintiff Anna Lange's proposed expert witness, Dr. Loren S. Schechter, M.D., from consideration on any motion, response, or trial in this matter.

While Defendants do not challenge Dr. Schechter's qualifications to opine on medical issues related to gender dysphoria, his veering into insurance costs and the efficiency of covering procedures raises the following issues:

1. An expert's methodology must be reliable. Dr. Schechter's qualifications do not include either insurance underwriting or actuarial science. Yet he offers opinions about the cost effectiveness of covering transition surgery. Should those opinions be excluded as unreliable?

2. An expert's opinions should be helpful to, and not confuse, any jury. Dr. Schechter relies on dated reports about populations much larger than Houston County's plan and he made no effort to update the data or apply the

reports to Houston County's 1500-member self-funded plan. Should his testimony about the cost-effectiveness of specific procedures be excluded as irrelevant and/or confusing?

Both issues should be answered in the affirmative, meaning that Dr. Schechter's opinions on insurance and actuarial decisions are excluded.

## I. Introduction

This case has now proceeded through discovery on the following remaining claims against Houston County and the Sheriff's Office: (1) Plaintiff's discrimination claim under Title I of the Americans With Disabilities Act, 42 U.S.C. §§ 12111-12117 ("ADA"); (2) her sex discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); and (3) her gender discrimination claim under the Equal Protection Clause of the Fourteenth Amendment of the Constitution ("Equal Protection") pursuant to 42 U.S.C. § 1983. (Doc. 89, pp. 36-37.)

Each of the remaining claims is premised on the same factual contention; namely, that Plaintiff, a transgender female who has been diagnosed with gender dysphoria, is being discriminated against because the County's Health Plan, through which she receives employee healthcare benefits, and which has covered her transition-related hormone medication, endocrinologist visits, and psychological monitoring, excludes coverage for "Sex Change—Services and supplies for a sex change and/or the reversal of a sex change" and "Sex Change Drugs—Drugs for sex change surgery" (collectively, the "Exclusion"). (Doc. 56, ¶¶ 3-4.) Plaintiff contends the Exclusion was adopted, and has been subsequently

maintained, purposefully to discriminate against transgender employees.[1] (Id., ¶ 81; see also Doc. 89, pp. 23-24.)

Plaintiff's Rule 26 "Expert Witness Identification" ("Identification") states as follows regarding Dr. Schechter:

> Loren S. Schechter is a board-certified plastic surgeon specializing in performing gender confirming surgeries, and is a recognized expert in this field. *Dr. Schechter will testify as to the medical necessity of surgical treatment for gender dysphoria.*

(See Exhibit 1, Identification, p. 1 (emphasis added).)

As set forth in the "Expert Report of Loren S. Schechter, M.D." ("Report"), Plaintiff seeks to proffer the following "expert opinions" through Dr. Schechter:

- Gender-confirming surgeries performed to help alleviate the often serious and life-threatening condition of gender dysphoria are standard, medically accepted treatments that are medically necessary for many transgender individuals.

---

[1] Each claim Plaintiff asserts requires, to a greater or lesser extent, a showing of discriminatory purpose or intent. To state a Title VII claim of discrimination, she must show that her sex was a "motivating factor" in the adverse employment action at issue, see 42 U.S.C. § 2000e-2(m), although even if she does, the employer can still avoid liability by showing it "would have taken the same action in the absence of th[at] impermissible motivating factor," id. at § 2000-e(5)(g); see also Univ. of Tx. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 348-49 (2013) (explaining burden-shifting framework applicable to Title VII discrimination claims). To state a claim of discrimination under Title I of the ADA, Plaintiff must show her alleged disability was a "but-for" cause of the adverse action. McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1077 (11th Cir. 1996); Jones v. Ga. Dep't of Comm. Health, Civil Action File No. 1:20-CV-03225, 2021 WL 2593638, at *6 (N.D. Ga. May 28, 2021). And, as this Court has observed (if not expressly held), the Exclusion is a facially neutral classification (Doc. 89, pp. 23-25), and, therefore, to state a claim of discrimination under the Equal Protection Clause, Plaintiff must show "the decisionmaker … selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon [her] identifiable group." Personnel Admin. of Mass. v. Feeney, 442 U.S. 256, 279 (1979).

- Gender-confirming surgeries performed in accordance with the [World Professional Association for Transgender Health's ("WPATH")] [Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People ("SOC")] are safe; effective; involve similar procedures as other interventions unrelated to the treatment of gender dysphoria and, because they utilize the same Current Procedural Terminology ("CPT") codes, *are likely to be reimbursed at the same or similar rates; and are likely to be cost-efficient in the long term.*

(See Exhibit 2, Report, p. 3, ¶ 4 (emphasis added)[2]/.)

As discussed below, Defendants do not contest Dr. Schechter's medical qualifications in general or as a gender-confirming surgeon in particular. (See id., pp. 3-6, ¶¶ 5-16.) Furthermore, Defendants do not contest Dr. Schechter's opinion that gender-conforming surgery is a medically-accepted treatment for gender dysphoria and is "medically necessary" for Plaintiff (as well as at least some other transgender individuals). (Id., p. 8, ¶ 22 ("Not every transgender person wants, requires, or qualifies for every available surgical procedure. … [t]he number and sequence of surgical procedures may vary from patient to patient, according to their clinic needs.") (internal quotation marks and citation omitted). Indeed, Dr. Schechter's Report helpfully distinguishes between "medically necessary" surgeries and those that are "cosmetic in nature." (Id. p. 7, ¶ 20; see also id., p. 9, ¶ 26 ("No particular procedure is inherently cosmetic or inherently medically

---

[2]/ Defendants understand "interventions," as used here to mean actions undertaken to treat or cure a medical condition.

-4-

necessary; rather, the underlying diagnosis determines whether the procedure is considered cosmetic or medically necessary.").[3]

Defendants, however, do object to any testimony by Dr. Schechter that gender-confirming surgeries "are likely to be reimbursed at the same or similar rates" as "similar procedures" in connection with "unrelated interventions." (See id., p. 3, ¶ 4.) As discussed further below, even if Plaintiff can establish that Dr. Schechter's opinion testimony rises to the requisite level of evidentiary reliability, that testimony would not be helpful to a factfinder because the County's plan is self-funded and, thus, is not reimbursed by an insurer at *any* rate. Furthermore, Defendants object to the Plaintiff's proffer of Dr. Schechter's opinion testimony that gender-confirming surgeries are likely to be "cost-efficient" in the long-term as the Report does not show either that the opinion testimony of Dr. Schechter—a plastic surgeon—on this matter rises to a level of evidentiary reliability or that any such testimony would be helpful to a factfinder in the context of this case.

Accordingly, Dr. Schechter's opinion testimony regarding those matters should be excluded because it is inadmissible under applicable law. FED. R. EVID. 702; Daubert v.

---

[3] Unlike in other decided cases addressing similar claims based on gender dysphoria, Defendants here do not contest either the general safety or anticipated efficacy of such surgery. See, e.g., Boyden v. Conlin, 341 F. Supp. 3d 979, 994 (W.D. Wisc. 2018) (plaintiff "Andrews actually underwent a vaginoplasty in 2015 at her own expense, which she represents was medically necessary, *although defendant challenges this characterization*") (emphasis added); Flack v. Wis. Dep't of Health Servs., 328 F. Supp. 3d 931, 945 (W.D, Wis. 2018) (wherein defendant's expert opined that "[m]edical and surgical treatments have not been demonstrated to be *safe and effective* for gender dysphoria") (emphasis added).

Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999); United States v. Frazier, 387 F.3d 1244 (11th Cir. 2004) (en banc).

## II. Argument and Citation of Authority

The admissibility of expert testimony is governed by Rule 702, which was amended in 2000 in response to the principles articulated in Daubert and Kumho Tire. Under Rule 702, expert testimony is admissible only if:

(a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. When such testimony is proffered, the district courts perform a "critical gatekeeping function," which "inherently require[s] the trial court to conduct an exacting analysis of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702." Frazier, 387 F.3d at 1260 (internal quotation marks and citation omitted) (emphasis in original).

> "[T]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

Id. (quoting Kumho Tire, 526 U.S. at 152).

"The district court's role is especially significant since the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it.'" Id. (quoting

Daubert, 509 U.S. at 595). Therefore, "in determining the admissibility of expert testimony under Rule 702," this Circuit demands "a rigorous three-part inquiry," analyzing whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in Daubert [and Kumho Tire]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine the fact in issue.

Id. (internal quotation marks and citation omitted). "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts," which the district court "must take care not to conflate." Id.

"The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." Id.  Again, Defendants do not contest that Dr. Schechter, by virtue of his education, training, and experience, is minimally qualified to testify regarding gender dysphoria and gender-conforming surgery.  However, as noted above, and discussed further below, Plaintiff cannot carry her burden under Rule 702 as to Dr. Schechter's opinion testimony regarding the anticipated reimbursement by insurance providers for such surgery or the affordability (*i.e.*, cost-efficiency) or cost-effectiveness of the same because his testimony does not rise to the requisite level of evidentiary reliability and would not be helpful to any factfinder in this case.

### 1. Dr. Schechter's Opinion Testimony Regarding the Rates of Reimbursement by Insurers for Gender-confirming Surgery Is Not Reliable and Is Not Helpful in the Context of This Case.

"'[O]ne may be considered an expert but still offer unreliable testimony.'" Frazier, 387 F.3d at 1261 (quoting Quiet Tech. DC-8, Inc. v. Hurel-Dubois Ltd., 326 F.3d 1333,

1341-42 (11th Cir. 2003) ("Quiet Tech.,")).  For example, in AMCO Ins. Co. v. TAF, Inc., the court held that although a structural engineer was qualified to testify regarding "the scope of the required repairs to the structural aspect of buildings," he was not qualified to testify about the calculation of the "depreciation" of certain components of the commercial property at issue.  See CV 617-022, 2018 WL 4624097, at **8-10 (S.D. Ga. Sept. 26, 2018)).  The court found that although the latter calculation was "part of the total estimate" of damages, it "involve[d] accounting concepts and depend[ed] upon the terms of the insurance contract" at issue, and was performed by one of the engineer's colleagues, who used a particular software to "develop an estimate regarding depreciation." See id. at **8-9.

As noted above, Plaintiff has proffered Dr. Schechter's opinion testimony that because "[g]ender-conforming surgeries performed in accordance with the WPATH SOC … involve similar procedures as other interventions unrelated to the treatment of gender dysphoria and, because they utilize the same Current Procedural Terminology ("CPT") codes, [they] are *likely to be reimbursed at the same or similar rates*." (Report, p. 3, ¶ 4 (emphasis added).)  But nowhere in the 12 paragraphs of the Report reciting Dr. Schechter's experience and qualifications is there mention of an insurance-underwriting or actuarial background.[4/]

Instead, the only elucidation offered in support of Dr. Schechter's opinion is Paragraph 36, in which Dr. Schechter states as follows:

---

[4/]  Plaintiff has proffered opinion testimony from another witness, Joan Barrett, an actuary, regarding the estimated budgetary impact of removing the Exclusion.

> These surgical procedures do not become more expensive simply because they are being performed for the purpose of treating gender dysphoria. When billing insurers for reimbursement, health care providers use CPT codes, which are developed and maintained by the American Medical Association. The same code or codes *may* apply to a particular procedure regardless of whether the procedure is performed on a transgender patient or a non-transgender patient.

(Id., p. 12, ¶ 36 (emphasis added).) Dr. Schechter similarly opines that removal of internal sex organs, chest surgeries, and genital reconstruction surgeries all "*appear to be* eligible for coverage under Houston County, Georgia self-funded health plan when they are medically necessary for reasons other than gender dysphoria." (Id., p. 13, ¶ 40 (emphasis added).)

Dr. Schechter's use of the word "may" renders his testimony speculative in this regard. Williams v. Consol. City of Jacksonville, No. 3:00-cv-469-J-32, 2006 WL 305916, at * 9 (M.D. Fla. Feb. 8, 2006). But, moreover, none of these opinions is supported by any analysis or citation to record documents. "The trial judge in *all* cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." Frazier, 387 F.3d at 1262 (quoting FED. R. EVID. 702 advisory committee's note (2000 amends.) (emphasis in Frazier). "'[T]he Rules of Evidence—especially Rule 702—…assign to the trial judge the task of ensuring that an expert's testimony rests on a reliable foundation.'" Id. at 1261 (quoting Daubert, 509 U.S. at 597)). "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Id. (quoting FED. R. EVID. 702 advisory committee's note (2000 amends)). "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert,

the reliability prong would be, for all practical purposes, subsumed by the qualification prong." Id.[5]

The reliability "condition goes primarily to relevance"; "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." Daubert, 509 U.S. at 591 (internal quotation marks and citation omitted). Daubert described this condition "as one of 'fit,'" see id., requiring "'a valid … connection to the pertinent inquiry as a precondition to admissibility.'" Kumho Tires, 526 U.S. at 149 (quoting Daubert, 509 U.S. 592) (ellipsis in Kumho Tires); see also Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (holding that the district court did not abuse its discretion in excluding opinion testimony where there was "simply too great an analytical gap between the data and the opinion proffered" by expert witness).[6]

As the Eleventh Circuit explained in America's Health Ins. Plans v. Hudgens, under a self-funded plan—in contrast to an insured plan—the employer must "pay out any claims

---

[5] In Broussard v. Maples, 535 F. App'x 825 (11th Cir. 2013), the court affirmed the exclusion of the plaintiff's expert witness even where the defendants' motion did not substantively challenge the reliability of [the expert's] methods." Id. At 827. The court held that "[t]he plaintiffs … bore the burden of establishing the reliability of its expert's report and the district court was obligated to perform the critical safekeeping function mandated by Rule 702 to ensure the reliability of [the expert's] methods. Id.

[6] Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." As such, "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Huddleston v. United States, 485 U.S. 681, 689 (1988); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.").

from its own funds" and, therefore, bears the "financial risk" associated with doing so. See 742 F.3d 1319, 1324 (11th Cir. 2014).  The County's Plan is self-funded and, thus, any opinion testimony that Plaintiff might proffer from Dr. Schechter as to the practices of insurance companies regarding reimbursement for surgery related to gender-dysphoria or other procedures is irrelevant and likely to lead to confusion on any jury.

Plaintiff has failed to show the "evidentiary reliability" of Dr. Schechter's opinion testimony, at least regarding either coverage under the County's Plan of the procedure(s) at issue, an insurer's reimbursement of such procedures, or the rates of reimbursement. Daubert, 509 U.S. at 590.  Furthermore, as shown below, Plaintiff cannot show that Dr. Schechter's opinion testimony regarding whether and at what rates an insurer might reimburse an insured will "help the trier of fact to *understand the evidence or to determine a fact in issue*." FED. R. EVID. 702(a) (emphasis added).  Accordingly, the proffered opinion testimony of Dr. Schechter on those matters should be excluded as both unreliable and unhelpful.[7]

### 2. Dr. Schechter's Opinion Testimony Regarding the Affordability (i.e., Cost-efficiency) and Cost-effectiveness of Gender-confirming Surgery Is Not Reliable and Is Not Helpful in the Context of This Case.

Again, Defendants do not contest that Dr. Schechter, as a board-certified plastic surgeon, is qualified to testify regarding gender dysphoria and gender-confirming surgery, but "'one may be considered an expert but still offer unreliable testimony.'" Frazier, 387

---

[7] Furthermore, as shown below, see pp. 14-15, *infra*, even if Plaintiff could show Dr. Schechter's opinion testimony to be both reliable and helpful, that testimony would unduly prejudice Defendants, confuse the issues, and mislead the jury, and therefore should be barred under Rule 403.

F.3d at 1261 (quoting Quiet Tech., 326 F.3d at 1341-42).  This is the case for Dr. Schechter's opinion testimony here regarding the purported affordability—or "cost-efficien[cy] in the long run"—of gender-confirming surgeries.  (See Report, p. 3, ¶ 4.)

Dr. Schechter's experience and qualifications do not indicate that he has engaged in any affordability or cost-effectiveness studies or analyses in this case or in any other.  (See id. pp. 4-5, ¶ 12.)  Instead, Dr. Schechter expressly bases his opinion on the results of a single study - "Societal Implications of Health Insurance Coverage for Medically Necessary Services in the U.S. Transgender Population:  A Cost-Effectiveness Analysis" (hereinafter, "Health Insurance Coverage Study"- conducted by other researchers and published in October 2015. (See id., p. 13, ¶ 41 nn.12, 13.)  The Health Insurance Coverage Study, however, noted that it had "several limitations," including that, "[a]lthough these results should be widely applicable to most institutions, some insurance carriers have third-party payers *or self-payers* that could change the relevance of these results"—the latter category being one into which the County's self-funded plan falls.  (See Exhibit 3, Health Insurance Coverage Study, p. 400 (emphasis added.)  Moreover, "[t]he budget impact of transgender coverage was measured relative to the total U.S. population." (See id., p. 397.)  As a result, the Health Insurance Coverage Study reported that, "*if U.S. society assumed the role of paying* an additional $10,614 for each person seeking benefit coverage, the U.S. population could absorb these costs for just cents per month." (See id., p. 398 (emphasis added).)  But Dr. Schechter's Report makes no attempt whatsoever to update, situate and examine that *5-year-old* study's analyses or results in the context of the Exclusion and the County's current self-funded plan.  (See Report, p. 13, ¶ 41.)

Dr. Schechter's reliance upon the RAND Corporation's report on "The Implications of Allowing Transgender Personnel to Serve Openly in the U.S. Military" is similarly unreliable.  (See Report, p. 14, ¶ 41 n.14; see also Exhibit 4 (RAND Study.))  Dr. Schechter opines that the RAND Study "confirms that coverage for gender-confirmation surgeries is affordable and a nominal percentage of the care offered through group health plans."  (See Report, p. 14, ¶ 41.)  However, applying fiscal year 2014 military personnel numbers, the RAND Study found that the "Military Health System costs would increase by between $2.4 million and $8.4 million per year if it were to extend this care to transgender personnel," although that would "represent[] an exceedingly small proportion of active-component health care expenditures … and overall [Department of Defense] health care expenditures." (RAND Study, pp. 3/7-4/7.)  But the *total* cost of the County's self-funded plan is $10-12 million.  (Exhibit 5, Declaration of Ken Carter, ¶ 9.)  Again, however, Dr. Schechter's Report makes no attempt to situate and examine the RAND Study's analyses or results of the U.S. military—the size of which is in no way comparable to the government of Houston County—in the context of the Exclusion and the County's current self-funded plan.

Here, again, Plaintiff cannot show the requisite evidentiary reliability of Dr. Schechter's opinion testimony regarding either the affordability (i.e., cost-efficiency) or cost-effectiveness of eliminating the Exclusion.  See AMCO Ins. Co., 2018 WL 4624097, at **8-10 (holding that structural engineer qualified to testify regarding "the scope of the required repairs to the structural aspect of buildings" was *not* qualified to testify about the calculation of the "depreciation" of certain components of the commercial property at

issue). And, as such, that proffered testimony should be excluded as both unreliable and unhelpful.

### 3. Even if Dr. Schechter's Opinion Testimony Is Reliable and Relevant, Its Probative Value is Substantially Outweighed by the Danger of Unfair Prejudice, Confusion of the Issues, and Misleading the Jury.

"Rule 403 permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Daubert, 509 U.S. at 595 (quoting FED. R. EVID. 403). As noted above, these concerns are heightened by the proffer of expert testimony, which "'can be both powerful *and quite misleading* because of the difficulty in evaluating it.'" Frazier, 387 F.3d at 1260 (quoting Daubert, 509 U.S. at 595) (emphasis added). "Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Daubert, 509 U.S. at 595 (internal quotation marks and citation omitted). "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." Frazier, 387 F.3d at 1263.

As shown above, Dr. Schechter's Report does not tie his opinions to the facts of this case. On its face, the comparison of Houston County to the United States population as a whole and to the country's military—both of which separately dwarf the County's plan in size—is far, far too loose. Therefore, even if Plaintiff could show Dr. Schechter's opinion testimony on those matters to be both reliable and helpful—which she cannot—it should be excluded because it is unduly prejudicial, would confuse the issues, and mislead the

-14-

jury. Dr. Schechter makes no attempt whatsoever to update, situate and examine the analyses and results in those two studies, both of which are based on date from five or more years ago, in the context of the Exclusion and the County's current self-funded plan.

### III. Conclusion

For each of the above reasons, Dr. Schechter's opinion testimony regarding the anticipated reimbursement by insurance providers for such surgery, or the affordability (i.e., cost-efficiency) or cost-effectiveness of the same, should be excluded from consideration on any motion, response, or trial in this matter.

Respectfully submitted this 3rd day of November, 2021.

*s/ Patrick L. Lail*
R. Read Gignilliat
Georgia Bar No. 293390
Sharon P. Morgan
Georgia Bar No. 522955
Patrick L. Lail
Georgia Bar No. 431101

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
(404) 659-6700
(404) 222-9718 (Facsimile)
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com

*Attorneys for Defendants*

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| v. | ) | |
| | ) | |
| HOUSTON COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies on this 3rd day of November, 2021, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT TESTIMONY: LOREN S. SCHECHTER, M.D.** with the Clerk of the Court using the CM/ECF system, which will serve a copy of the same on the following counsel of record:

| | |
|---|---|
| Kenneth E. Barton, III | Wesley Powell |
| M. Devlin Cooper | Jill K. Grant |
| | |
| David Brown | Kevin M. Barry |

*s/ Patrick L. Lail*
Patrick L. Lail
Georgia Bar No. 431101

-2-

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia  30303
(404) 659-6700
(404) 222-9718 (Facsimile)
lail@elarbeethompson.com

*Attorneys for Defendants*