# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| ANNA LANGE, | |
| Plaintiff, | Civil Action No.: |
| v. | |
| HOUSTON COUNTY, GEORGIA and Houston County Sheriff CULLEN TALTON, in his official capacity, | 5:19-CV-00392-MTT |
| Defendants. | |

## JOINT DESIGNATIONS FOR DR. RACHEL BLUEBOND-LANGNER

COMES NOW, Plaintiff Sgt. Anna Lange and Defendants Houston County, Georgia and Sheriff Cullen Talton, in his official capacity, and submit the entire transcript of the September 23, 2022 deposition of Dr. Rachel Bluebond-Langner, excepting certain portions of testimony as ordered by the Court. The parties are available for a conference call at the convenience of the Court. The parties respectfully state their positions below:

| Testimony | Plaintiff's Position | Defendants' Position |
|---|---|---|
| Q. Did you conclude that bottom surgery was medically necessary for her gender dysphoria? A. Yes. MR. LAIL: Objection, irrelevant. (17:16-19). *sustained. Because medical necessity is undisputed, I will instruct jury accordingly.* | This testimony should be admitted; the medical necessity of bottom surgery for Sgt. Lange is relevant to establish for the jury that she would have received this care but/for the Exclusion (as defined in the Summary Judgment Order). It is further important background information for the jury in determining emotional distress. | The purpose of this trial is to determine damages for Sgt. Lange's emotional distress; not to establish the medical necessity of surgery. Defendants do not contest the medical necessity of surgery, but drawing out that issue does not tend to make the existence or extent of emotional distress more or less likely. |

| Testimony | Plaintiff's Position | Defendants' Position |
|---|---|---|
| Q. Some of the risks and benefits discussed with Sergeant Lange are that the procedure was not a reversible procedure; is that right?<br><br>A. That's correct.<br><br>Q. And that the testicles would be removed and Sergeant Lange would be infertile going forward; is that right?<br><br>A. Correct.<br><br>Q. Are some gender change procedures reversible?<br><br>A. No.<br><br>Q. And getting back to page 2419, you discussed with Sergeant Lange that the penile and scrotal skin would be inverted to line the vagina; is that right?<br><br>A. Correct.<br><br>MR. POWELL: I'm going to object to the relevance of questions about all this detail of the procedure.<br><br>Q. And you also discussed with her that there was a risk of needing further surgery; is that correct?<br><br>A. Correct.<br><br>Q. You yourself perform certain<br><br>surgical revisions of previous gender affirming care; is that right?<br><br>MR. POWELL: I object to relevance.<br><br>A. Correct. | This testimony should be excluded. The detailed description of the procedure that Sgt. Lange was prescribed, and related aftercare, is not relevant to the amount of damages Sgt. Lange should be awarded, and it will only serve to distract the jury.<br><br>Whether gender confirming procedures can be reversed is also irrelevant, distracting and, given the nature of the procedure at issue, has the potential to be inflammatory. | Plaintiff identified Dr. Bluebond-Langner as a witness in her capacity as Sgt. Lange's treating physician. The testimony provided comes straight out of Dr. Bluebond-Langner's treatment notes of her single consult with Sgt. Lange. It is relevant in two respects.<br><br>First, it demonstrates the nature of the surgery Dr. Bluebond-Langner would provide for Sgt. Lange. Even if the details of the surgery may be stark, that is the nature of this particular procedure.<br><br>Second, there is a clear contrast between the detail of Dr. Bluebond-Langner's discussion of surgical issues in her notes as compared to the absence of detail regarding Sgt. Lange's emotional status. This goes to the weight to be accorded to Dr. Bluebond-Langner's testimony as to Sgt. Lange's emotional distress. |

| Testimony | Plaintiff's Position | Defendants' Position |
|---|---|---|
| Q. And you explained in this section as well the need for post-surgical dilation of the vagina to prevent its closure, correct?<br><br>A. Correct.<br><br>MR. POWELL: Same objection. (41:11-42:22). | sustained. | |
| Q. And a nurse once told me if it is not documented, it didn't happen. Is that an aphorism in the medical community?<br><br>MR. POWELL: Objection.<br><br>A. Not that I'm aware of.<br><br>Q. Would you agree that it is important for insurance purposes and for professional malpractice issues of patients being upset and perhaps suing the surgeon that it is important to have an accurate record of the encounter with the patient?<br><br>A. Sure.<br><br>MR. POWELL: Objection. (45:3-15). | Plaintiff waives this objection; the parties have agreed that the testimony shall be presented to the jury. | Agreed. |
| Q. And after your consult, Anthem denied coverage of the surgery; is that right?<br><br>MR. POWELL: Objection.<br><br>A. Correct. (48:2-6). | The parties have agreed that this question and response will not be shown to the jury. | Agreed. |
| Q. And based on HIPAA and other issues, would you agree that faxing medical information is something that NYU is responsible for tracking in terms of where that information goes? | The parties have agreed that this question and response will not be shown to the jury. | Agreed. |

| Testimony | Plaintiff's Position | Defendants' Position |
|---|---|---|
| A. I don't know.<br><br>MR. POWELL: Objection. (49:4-10). | | |
| MR. LAIL: I will offer P-2 into evidence.<br><br>MR. POWELL: No objection.<br><br>Q. So let's look at --<br><br>MR. POWELL: Other than relevance, I should say. We object to the relevance at least of some part of the information that's in here. (51:24-52:7).<br><br><span style="color:red">The obection to the admission of the file will be addressed at trial. Confer and redact and I will address any unresolved issues.</span> | Plaintiff objects to entering the *entire* medical file, which contains irrelevant sensitive personal and medical information, into evidence.<br><br>Though portions are redacted by agreement of the parties, the unredacted portions contain personal medical information that is not relevant to the issue of damages.<br><br>Plaintiff does not object to entering discrete, relevant portions of Sgt. Lange's medical records, as counsel for Defendants did at other points in the testimony and to which counsel for Plaintiff did not object. These portions cover the entirety of the testimony that was sought from the witness. | Defendants note the obvious – that P2 is *Plaintiff's* exhibit, which was redacted according to Plaintiff's request. It is odd that Plaintiff now objects to it.<br><br>It purports to be the complete medical file as faxed to Plaintiff's counsel on July 26, 2021, which is more than the materials Dr. Bluebond-Langner brought to the deposition (59:16-60:16). It is a compilation of various records, but it is valuable to show the record on which Dr. Bluebond-Langner concluded Sgt. Lange was a good candidate for surgery. |
| Q. Looking at what has been presented in Dr. Zhao's notes below that heading which continues from 2425 to 2426, does this look to be a complete listing of the categories of information that's gathered in the HPI/ROS form?<br><br>A. Yes.<br><br>Q. And if you look at the last part of that list on 2426, and let me just preface, these are all answers provided by the patient, right? | This testimony should be excluded. Plaintiff objects to this entire line of questioning --- which concerns treatment records from a different physician -- because the witness has no personal knowledge and is therefore not competent to testify, to the content of these records. | Plaintiff is incorrect that the questions concern notes prepared by a different physician – the questions concern answers provided by *Sgt. Lange* in preparation for the consult. Although Dr. Bluebond-Langner speculates that her own staff may have erred in entering the data, it was the information relied upon by Dr. Bluebond-Langner's practice to determine Sgt. Lange was a suitable candidate for surgery.<br><br>Dr. Zhao's notes are a |

| Testimony | Plaintiff's Position | Defendants' Position |
|---|---|---|
| A. I would assume, but they're not entered by the patient. Q. Who are they entered by? A. The medical assistant. Q. And based on what the medical records show, in the last four categories, Sergeant Lange reports no decreased concentration, no dysphoric or down mood, no nervousness or anxiety, and no sleep disturbances; is that correct? A. That is what is recorded here in the record. It is not my record. It is not my note. And as I said, it wasn't necessarily entered directly by the patient, it was entered by a medical assistant. Q. And, again, this is what your practice's medical record shows though? A. This is what Dr. Lee Zhao's record shows, not mine. MR. POWELL: I just object to the questions to the extent that they are asking her about a record that is not hers and she is not competent to testify to. (55:20-57:6). | | business record, which do not require that Dr. Bluebond-Langner have personal knowledge of it. Dr. Bluebond-Langner testified that (1) Dr. Zhao, who is a urologist, would have assisted her with Plaintiff's surgery if scheduled (36:10-13); (2) Dr. Zhao saw Plaintiff on the same date she saw Plaintiff (36:4-7), and (3) Ex. D9 (Lange 2422-2427) are Dr. Zhao's clinical notes from his consultation with Plaintiff (50:18-51:4). Dr. Zhao's notes are a reflection of the services rendered and they are kept in the normal course of business. (52: 12-22; 53:9-12) In 2018, a patient would submit HPI/ROS (History of Present Illness/Report of Symptoms) to a medical assistant, and it would be scanned in. (54:11-55:19). Dr. Bluebond-Langner was unable to locate the original form in Plaintiff's file (55:9-19). The list of symptoms recorded in Dr. Zhao's notes under the heading "Answers for HPI/ROS submitted by the patient on 11/9/2018" (Lange 2425) appear to be a complete list of symptoms on the HPI/ROS form. (55:20-56:1) Plaintiff now seeks to exclude |

| Testimony | Plaintiff's Position | Defendants' Position |
|---|---|---|
| Overruled | | her own exhibit and, more importantly, one of the few citations in the medical record which contains information related to Plaintiff's emotional status. |
| Q. After receiving the denial letter, did you reach out to Sergeant Lange's treating psychologist, Dr. Soety, about treatment options for the delay?<br><br>MR. POWELL: Objection.<br><br>A. I personally did not.<br><br>Q. Do you know if anyone from your office did?<br><br>A. I do not. (58:3-11) | Plaintiff waives this objection; the parties agree that this testimony shall be shown to the jury. | Agreed. |
| Q. Under the ICD-10 standards you coded Sergeant Lange's visit as an F64.0; is that right?<br><br>A. Correct.<br><br>Q. What does that stand for in the ICD-10 coding mechanism?<br><br>MR. POWELL: Objection, relevance.<br><br>A. Gender dysphoria. (59:7-15). | Plaintiff waives this objection; the parties agree that this testimony shall be shown to the jury. | Agreed. |
| Q. Dr. Bluebond-Langner, if you would pull up Defendants' Exhibit 8, please, and look at Bates numbered page 2419, and right in the middle of the page below the big redaction, there is the word Plan. In that paragraph it | Plaintiff waives this objection; the parties agree that this testimony shall be shown to the jury. | Agreed. |

| Testimony | Plaintiff's Position | Defendants' Position |
|---|---|---|
| says "If approved for surgery will need to return for additional consultation prior to surgery to evaluate further readiness for surgery and expectations." Based on that sentence, was it your understanding at the time of seeing Sergeant Lange that she would need to come back for additional presurgical consultation?<br><br>A. It is our --<br><br>MR. POWELL: Objection to relevance. But go ahead. Go ahead, you can answer. Sorry.<br><br>A. So it is our standard practice to bring patients back for what we call an education visit and then a preoperative visit, and it is at that point that we go over further details about aftercare that is expected, support that will be needed, supplies that will be needed, signing of the consent, the review of the procedure, the hospital stay, so standard. (61:3-62:6). | | |
| Q. How much is NYU paid for a vaginoplasty?<br><br>A. I have no idea.<br><br>MR. POWELL: Objection, relevance. (63:8-12).<br><br>Sustained | This testimony should not be shown to the jury. Plaintiff objects to this question because the cost of surgery is not relevant to issue of damages and is precluded by this Court's finding that issues of liability (including the cost defense) shall not be presented to the jury. | This question was asked to show that Dr. Bluebond-Langner is not a disinterested witness and stood to gain – directly or indirectly through her employment with NYU Langone Health (5:11-12) – from the surgery being approved. |

| Testimony | Plaintiff's Position | Defendants' Position |
|---|---|---|
| Q. You contacted the Transgender Legal Defense Fund to reach out to Sergeant Lange to provide assistance after the denial of her surgery; is that right?<br><br>A. I personally did not.<br><br>MR. POWELL: Objection, relevance.<br><br>Q. Do you believe that someone in<br><br>your office did that?<br><br>A. I don't know. (63:22-64:7). | The parties agree that this testimony shall not be shown to the jury. | Agreed. |

Respectfully submitted,


/s/ Kenneth E. Barton III
Kenneth E. Barton III
Ga. State Bar No. 301171
M. Devlin Cooper
Ga. State Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
(478) 841-9007 tel.
(478) 841-9002 fax
keb@cooperbarton.com
mdc@cooperbarton.com

David Brown*
Gabriel Arkles*
Transgender Legal Defense Education Fund, Inc.
520 8th Ave. Ste. 2204
New York, NY 10018
(646) 862-9396 tel.
(646) 993-1686 fax
dbrown@transgenderlegal.org
garkles@transgenderlegal.org

Wesley Powell*
Jill K. Grant*
Catherine E. Fata*
Amanda M. Payne*
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 fax
wpowell@willkie.com
jgrant@willkie.com
cfata@willkie.com
apayne@willkie.com

*Attorneys for Plaintiff*
*admitted pro hac vice


/s/ Patrick L. Lail
R. Read Gignilliat, Esq.
Sharon P. Morgan, Esq.
Patrick L. Lail, Esq.
Elarbee, Thompson, Sapp & Wilson, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com

*Attorneys for Defendants*