IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| HOUSTON COUNTY, GEORGIA, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR STAY PENDING APPEAL

COME NOW, Defendants Houston County, Georgia and Sheriff Cullen Talton (in his official capacity) (collectively, "Defendants") and pursuant to Rule 62(c) of the Federal Rules of Civil Procedure move this Court for a stay of the Order for Permanent Injunctive and Declaratory Relief dated October 3, 2022. [Doc. 258.]

## Background Facts

On June 2, 2022, the Court entered summary judgment for Plaintiff Anna Lange on her claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). [Doc. 205, pp. 21-28.] The case was thereafter set for a jury trial on damages beginning on September 26, 2022, and on September 27, 2022, a jury returned an award for Plaintiff of $60,000.00 in compensatory damages under Title VII. [Doc. 256.] On October 3, 2022, the Court entered an Order for Permanent Injunctive and Declaratory Relief reading, in relevant part, as follows:

1.      The Court declares that the exclusions of coverage for "[d]rugs for sex change surgery" and "[s]ervices and supplies for a sex change and/or the reversal of a sex change" (together, the "Exclusion") in the County's employee health plan (the "Health Plan") violate Title VII;

2.      The Court permanently enjoins Defendants from any further enforcement or application of the Exclusion.

[Doc. 258, p. 1.]  The Court's Order also directed Defendants to take "all necessary steps to ensure [the Health Plan's third-party administrator, Anthem Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. ("Anthem")] ceases to enforce or apply the Exclusion or to maintain it in the Health Plan" and to "direct Anthem to process any claim for Sgt. Lange's vaginoplasty … as indicated by her treating providers in accordance with the terms, conditions, and limitations of the Health Plan as they stood in 2019 (except as modified [in the Court's Order]). [Id. at p. 2.]

Defendants intend to appeal the entry of the Permanent Injunction shortly.

## **Argument and Citation of Authority**

In Nken v. Holder, the Supreme Court observed as follows:

It takes time to decide a case on appeal. Sometimes a little; sometimes a lot. "No court can make time stand still" while it considers an appeal, … and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review. That is why it "has always been held … that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it.

556 U.S. 418, 421, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) (internal citations omitted).

Rule 62(c) of the Federal Rules of Civil Procedure permits this Court to stay an injunction "upon such terms as to bond or otherwise as it considers proper for the security

of the rights of the adverse party." Under the "traditional standard" for a stay pending appeal, this Court should balance four factors in assessing the request for a stay: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Nken, 556 U.S. at 426 (quoting Hilton v. Braunskill, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)); accord League of Women Voters of Fla., Inc. v. Fla. Sec'y of State, 32 F.4th 1363, 1370 (11th Cir. 2022) (same).

In League of Women Voters, the court of appeals reiterated that in some circumstances—such as "'when the balance of equities … weighs heavily in favor of granting the stay'"—the Eleventh Circuit has "relax[ed] the likely-to-succeed-on-the-merits requirement." See id. (quoting Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986)). "In that scenario, the stay may be "granted upon a lesser showing of a 'substantial case on the merits.'" Id. (quoting Garcia-Mir, 781 F.2d at 1453).

### 1.    Defendants can make a substantial case on the merits on appeal.

Defendants are, of course, acutely aware of this Court's previous rulings, including its grant of summary judgment to Plaintiff on her disparate treatment claim under Title VII, but nevertheless respectfully believe they have a substantial case on the merits on appeal regarding the same. In denying Plaintiff's motion for summary judgment on her claim under the Equal Protection Clause of the Fourteenth Amendment, which challenged the same Exclusion as sexually discriminatory thereunder, the Court found that "the facts [regarding intent were] hotly disputed." [Doc. 205, pp. 16-21.] But in entering summary

-3-

judgment against Defendants on Plaintiff's disparate treatment claim under title VII, the Court held that Defendants' "intent [was] immaterial" because the Exclusion was "facially discriminatory." [Doc. 205, p. 22.]

The Supreme Court has held that to prevail on a disparate treatment claim under Title VII "the difference in treatment based on sex must be intentional." Bostock v. Clayton Cty., Ga., ___ U.S. ___, 140 S. Ct. 1731, 1740. 207 L. Ed. 2d 218 (2020) (citing Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988)).[1]  Indeed, on remand in Bostock, and following discovery, Magistrate Judge Walter E. Johnson of the Northern District of Georgia issued a Final Report and Recommendation recommending the denial of both the plaintiff's and the defendant's motions for summary judgment, concluding that "[a] jury should resolve the disputed issues of material fact presented," including those pursuant to the plaintiff's mixed-motive theory of liability. See Bostock v. Clayton Cty., Ga., Civil Action File No. 1:16-CV-01460,

---

[1]    See also Ricci v. DeStefano, 557 U.S. 577, 578, 129 S. Ct. 2658, 174 L. Ed 2d 490 (2009) ("A disparate-treatment plaintiff [alleging race discrimination under Title VII] must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action.") (quoting Watson, 487 U.S. at 986); Young v. United Parcel Svc., Inc., 575 U.S. 206, 222, 135 S. Ct. 1338, 191 L. Ed. 2d 279 (2015) ("disparate-treatment law normally permits an employer to implement policies that are not intended to harm members of a protected class, even if their implementation sometimes harms those members, as long as the employer has a legitimate, nondiscriminatory, nonpretextual reason for doing so"); cf. Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993) ("In a disparate treatment case, liability depends on whether the protected trait (under the [Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), age) actually motivated the employer's decision.").

ECF No. 166, p. 63 (N.D. Ga. June 7, 2022); id. at p. 1 (reporting "that there are disputed issues of material fact for trial").[2]

Respectfully, and as set forth in Defendants' response in opposition to Plaintiff's motion for summary judgment [Doc. 179], holding that the sex change Exclusion—one of a total of 68 medical exclusions and 29 pharmacy exclusions contained in the Health Plan—was "facially discriminatory" because only transgender individuals logically might seek such surgery accords to Plaintiff a "most-favored-nation" status that the Supreme Court has held improper even for covered pregnant employees under Title VII as specifically amended by the Pregnancy Discrimination Act, Pub. L. 95-555, 92 Stat. 2076 ("PDA"). See Young, 575 U.S. at 221 (rejecting the PDA plaintiff's position that "because the record [] contain[ed] 'evidence that pregnant and nonpregnant workers were not treated the same,' that is the end of the matter, she must win" because, inter alia, "[i]t seem[ed] to say that the [PDA] grants pregnant workers a 'most-favored-nation' status"); EEOC v. Wal-Mart Stores East, L.P., 46 F.4th 587, 598-99 (7th Cir. 2022) (rejecting the EEOC's argument in support of its PDA claim as "difficult to reconcile with Young's rejection of the 'most-favored-nation' theory of pregnancy discrimination" and affirming the district court's grant of summary judgment for the employer against the EEOC). Accordingly, Defendants respectfully submit that they can make a "'substantial case on the merits'" on

---

[2] The district court thereafter granted in part and denied in part the parties' motion for a stay of proceedings in that case, which was then administratively closed on October 14, 2022. See Bostock v. Clayton Cty., Ga., Civil Action File No. 1:16-CV-01460, ECF No. 177 (N.D. Ga. Aug. 8, 2022), ECF No. 179 (N.D. Ga. Oct. 14, 2022)

appeal.  See League of Women Voters, 32 F.4ᵗʰ at 1370 (quoting Garcia-Mir, 781 F.2d at 1453).

### 2.    Defendants will suffer an irreparable injury.

In Garcia-Mir, the district court found that the respondent plaintiffs, "a certified class of Mariel Cuban refugees … who [were] neither mentally incompetent nor guilty of serious crimes committed in Cuba," "had presented an actionable claim of denial of a protected liberty interest in violation of the guarantee of due process of law," entitling each refugee to "a full hearing on which the [federal] government was required to provide evidence that the refugee '[was] likely to abscond, to pose a risk to the national security, or to pose a serious and significant threat to persons or property within the United States." See 781 F.2d at 1451-52.  Pursuant to that holding, the district court ordered the United States Attorney General to "furnish within thirty days for the trial court's approval a plan for providing these detention hearings" and that those hearings were to "begin no later than sixty days after the issuance of the [district court's] Order." Id. at 1452.

On appeal, the Eleventh Circuit denied "the Attorney General's motion for a stay of the district court's order to submit a plan for conducting [those] hearings," but granted "the motion of the Attorney General and STAY[ED] the order of the trial court to the extent that it require[d] implementation of such plan pending resolution of the underlying merits of the case." Id. at 1451 (all capitalization in original; underscore added); see also id. at 1457.  Regarding the implementation of the plan, the court of appeals held—as it had with regard to the submission of the plan—that there was "a substantial likelihood that on appeal this Court would determine that there was no constitutionally protected liberty interest at

stake." Id. at 1455.  Furthermore, and despite finding that the respondent refugees had "made a strong showing of substantial injury should it be determined that their liberty interests [had] been improperly denied," the court held nevertheless that the "balance of equities"—in particular, that there would be an irreparable injury to the federal government and that the public interest—"tip[ped] toward the government." Id. at 1455-56.

In particular, the court of appeals held that, in contrast with the drafting of a plan, the "actual implementation of the required plan … create[d] a likelihood of injury to the [federal] government" should the hearings ultimately be determined to be unnecessary.  Id. at 1455-56.  The court of appeals held that, inter alia, "[t]he actual process of according hearings for these people [would] result in costs, irrevocable, both of time and money," to the federal government, and it was chary of imposing on the [federal] government the not inconsiderable burden of actually conducting these hearings until such time as [the court of appeals] has passed on the merits."  Id. at 1455-56.

Of course, it is axiomatic that the County has significantly fewer financial resources to draw upon than the federal government.  And, of course the County also has considerably less ability to defer incurring the actual monetary costs associated with governing generally, not just because of its relative size and place in the hierarchy of government, but more particularly because the County is subject to a statutory cap on how much it can raise its millage rate for property taxes, and, thus, cannot simply pass on an increase in spending to its taxpayers.  Moreover, it is undisputed that the Health Plan here is self-funded and the County therefore "assume[s] the entire risk in paying out health care claims" thereunder. America's Health Ins. Plans v. Hudgens, 742 F.3d 1319, 1324 (11th Cir. 2014) ("contrasting

self-funded plans with "insured" health benefit plans, under which an "insurance company—not [the employer]—will assume the entire risk in paying out health care clams"). Although the exact cost of a vaginoplasty is apparently unknown—Dr. Rachel Bluebond-Langner testified "[she] ha[d] "no idea" how much NYU-Langone, of which she is a co-director, would be paid for a vaginoplasty—a May 10, 2022 article in the New York Times in which she and her co-director, Lee Zhao, were prominently featured, reported that "[w]ithout insurance, phalloplasty would cost the patient as much as $200,000 from start    to    finish."    See    "How    Ben    Got    His    Penis," https://www.nytimes.com/2022/05/10/magazine/phalloplasty.html (attached hereto as Exhibit A). Accordingly, Defendants submit that this, too, is a "not inconsiderable burden" that tips the equities in Defendants' favor on this factor. See Garcia-Mir, 781 F.2d at 1456.

### 3. **Defendants acknowledge that there may be a substantial injury to Plaintiff.**

It is unclear when Plaintiff may, in fact, undergo surgery but Defendants do not contest that Plaintiff, like the plaintiffs in Garcia-Mir, can make a showing of substantial injury. See 781 F.2d at 1456.[3]

### 4. **The public interest tips in favor of Defendants.**

As discussed in Section 2, infra, the Health Plan is a self-funded plan under which the County "assume[s] the entire risk in paying out health care claims." America's Health

---

[3]    Defendants nonetheless would point out that Plaintiff twice during these proceedings filed motions for a preliminary injunction [see Doc. 28, 57]—including moving for a hearing after the Supreme Court's decision in Bostock [see Doc. 91]—but each time withdrew those motions [see, e.g., Doc. 111] that might have afforded her such relief sooner than the current permanent injunction has done.

Ins. Plans, 742 F.3d at 1324.  As also discussed in that same section, although the specific monetary burden is unknown, it would seem "not inconsiderable."  Garcia-Mir, 781 F.2d at 1456.  Since the County's self-insured Health Plan draws on public funds to pay claims, Defendants submit that the balance of equites lies with them on this factor.

In further support of this position, Defendants note that, while Plaintiff is the only known transgender participant in the Health Plan, there may be others covered by the Health Plan that desire sex change surgery.  Thus, the cost impact to the Plan may not be merely for Plaintiff's surgery, but for others' surgeries as well.

In the event the Court declines to grant this motion and enter a stay, Defendants respectfully ask that Plaintiff be required to post a bond in the amount of the surgery expense (including drugs) to the Health Plan if she proceeds with surgery during the pendency of the appeal.  If a subsequent ruling by the Eleventh Circuit results in a determination that Plaintiff was not entitled to summary judgment (and, therefore, not entitled to injunctive relief), but Plaintiff has already undergone the surgery, Defendants would be entitled to restitution for the surgical expenses (including drugs) paid by the Health Plan.  See Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation, 322 F. 3d 1298, 1314 (11th Cir. 2003) (en banc) ("The Supreme Court has recognized and made a part of federal law 'the principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby.'" quoting Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co., 249 U.S. 134, 145 (1919)) (Carnes, J., concurring).

## Conclusion

Based upon the above showing, Defendants submit that the showing of a substantial case on the merits on appeal, irreparable injury to Defendants, and the balance of equities justifies the issuance of a stay of the Court's Order for Permanent Injunctive and Declaratory Relief until such time as a panel of the Eleventh Circuit can pass on the same.

Respectfully submitted this 17th day of October, 2022.

*s/ R. Read Gignilliat*
Sharon P. Morgan
Georgia Bar No. 522955
R. Read Gignilliat
Georgia Bar No. 293390
Patrick L. Lail
Georgia Bar No. 431101
William D. Deveney
Georgia Bar No. 219744

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (Facsimile)
morgan@elarbeethompson.com
gignilliat@elarbeethompson.com
lail@elarbeethompson.com
deveney@elarbeethompson.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:19-CV-00392-MTT |
| HOUSTON COUNTY, GEORGIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2022, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR STAY PENDING APPEAL** with the Clerk of Court using the CM/ECF System, which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Kenneth E. Barton, III | Wesley R. Powell |
| M. Devlin Cooper | Jill K. Grant |
| | Catherine E. Fata |
| | |
| David Brown | Kevin M. Barry |
| Gabriel Arkles | |

*s/ R. Read Gignilliat*
R. Read Gignilliat
Georgia Bar No. 293390

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (Facsimile)
gignilliat@elarbeethompson.com

*Attorneys for Defendants*