## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |  |
|---|---|---|
| ANNA LANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:19-CV-00392-MTT |
| | ) | |
| HOUSTON COUNTY, GEORGIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL

Plaintiff Sgt. Anna Lange respectfully submits this memorandum of law in opposition to Defendants' Motion For Stay Pending Appeal, ECF 260 (the "Motion"), filed by Defendant Houston County, Georgia and Defendant Sheriff Cullen Talton (in his official capacity) (collectively, "Defendants") on October 17, 2022, seeking a stay of this Court's Order for Permanent Injunctive and Declaratory Relief (the "Order").

## INTRODUCTION

Defendants' Motion For Stay Pending Appeal should be denied.  To justify a stay, the moving party generally must establish that: (i) they are likely to succeed on the merits of their appeal; (ii) they will be irreparably injured absent the grant of stay; (iii) a stay would not inflict substantial injury on the non-moving party; and (iv) the public interest would be served by a stay. *Nken v. Holder*, 556 U.S. 418, 425–26 (2009).  Each of these four factors weighs against staying the Order.  Defendants themselves recognize that they are unable to meet the first and third prongs of the standard.  *See* ECF 260-1, at 3, 8.

However, Defendants press their motion under an alternative standard: in some cases "when the balance of equities . . . weighs heavily in favor of granting the stay," the stay may be granted upon a showing of a "substantial case," rather than a likelihood of success. *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022); ECF 260-1, at 3. But because the equitable balance does not weigh heavily in favor of a stay, as discussed herein, this standard does not apply. And, even under this alternative standard, Defendants have not demonstrated that they can make a "substantial case" on appeal. They merely recycle the same erroneous arguments that this Court has previously rejected.

Moreover, Defendants fail to satisfy any of the other three prongs, let alone demonstrate that they weigh heavily in their favor. They do not allege any irreparable injury. The only injury that they claim, the cost of Plaintiff's healthcare, is monetary and therefore reparable. Defendants mischaracterize the existing, undisputed record and cite to an extra-record news article about a phalloplasty, a completely different procedure to suggest that the cost of gender-confirming healthcare is unknowable or extraordinary. Even if this were true, such speculation is not sufficient to support staying the injunction. Defendants must show actual, imminent injury that cannot be undone. As to the third factor, Defendants concede that granting a stay would inflict substantial injury on Plaintiff. Plaintiff agrees. Such injury is supported by both the record and by the recent jury finding in Sgt. Lange's favor. Finally, the public interest would not be served by permitting Defendants to continue withholding healthcare from Sgt. Lange, nor in pursuing a costly appeal at the taxpayers' expense.

## PROCEDURAL HISTORY

In its June 2, 2022 Order on Motions for Summary Judgment, this Court held that Sgt. Lange established as a matter of law that the Exclusion (as defined in the Summary Judgment

Order) in the Houston County Health Plan (the "Health Plan") is facially discriminatory in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and that Houston County (the "County") is an "agent" for purposes of Title VII.  ECF 205.  In its August 11, 2022 order, the Court set this matter for trial with respect to damages on Sgt. Lange's Title VII claim.  ECF 217.

On September 27, 2022, following a jury trial, Sgt. Lange was awarded $60,000 in compensatory damages resulting from the Exclusion in the Defendants' Health Plan.  ECF 256. The parties thereafter conferred to draft the terms of an injunction that was jointly submitted to the Court.  The Order was entered on October 3, 2022.  ECF 258.  On October 17, 2022, Defendants filed this Motion seeking a stay of the Order pending appeal.  ECF 260-1.  On October 21, 2022, Defendants filed a Notice of Appeal.  ECF 262.

## ARGUMENT

### I.        THERE IS NO BASIS TO GRANT A STAY.

A motion under Rule 62(c) seeking to stay an injunction pending appeal is "extraordinary relief for which the moving party bears a heavy burden."  *Lowe Electric Supply Co. v. Rexel, Inc.*, 5:14-cv-0035 (M.D. Ga. Sept. 22, 2014) (citing *Jaffe v. Bank of Am., N.A.*, 667 F.Supp.2d 1299, 1323 (S.D. Fla. 2009) (quoting *Winston Salem/Forsyth County Bd. of Edu. v. Scott*, 404 U.S. 1221, 1231 (1971)).  To justify a stay, the moving party must establish that: (i) they are likely to succeed on the merits of their appeal; (ii) they will be irreparably injured absent the grant of stay; (iii) a stay would not inflict substantial injury on the non-moving party; and (iv) the public interest would be served by a stay.  *Nken*, 556 U.S. at 425-26.  Because each of these four factors weighs against staying the Order, Defendants' motion should be denied.

**A. Defendants Have Not Shown That They Are Likely To Succeed On Appeal Nor That They Have A Substantial Case.**

Ordinarily, in order to prevail on a motion to stay an injunction, Defendants must make "a strong showing that [they are] likely to succeed on the merits" of their appeal.[1] *Nken*, 556 U.S. at 426. The Eleventh Circuit has stated that this factor is the most important one. *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986); *Robles Antonio v. Barrios Bello*, No. 04-12794-GG, 2004 WL 1895123, at *1 (11th Cir. 2004). Defendants have not made a showing under this standard.

Rather than establishing that they are likely to succeed on the merits on appeal, Defendants attempt to proceed under the lesser standard of showing a "substantial case" on the merits.[2] ECF 260-1, at 3–6. As discussed below, Defendants do not, and cannot, establish that the balance of the equities "weighs heavily" in favor of granting the stay, which is a necessary prerequisite for the application of the lesser standard. *See Tokyo Gwinnett, LLC*, 2022 WL 15524962, at *2 ("Although [Appellant] is correct that a stay can be granted without showing a likelihood of a successful appeal on the merits, in order to grant a stay in such circumstances, the Court must find that the remaining factors weigh heavily—and not just tipping the balance—in [Appellant's] favor.")

---

[1] Because they have not argued that they are likely to succeed on the merits of the appeal, Defendants have waived the Court's consideration of this factor. *See Tokyo Gwinnett, LLC v. Gwinnett County, Ga.*, No. 1:15-CV-2606-TWT, 2022 WL 15524962, at *2 (N.D. Ga. Oct. 27, 2022) (holding that Tokyo waived the Court's consideration of the first factor by failing to argue that it is likely to succeed on the merits of its appeal and instead arguing that it has a "substantial case").

[2] The majority of Defendants' arguments as to the merits of their appeal read more like a motion for reconsideration, in that they point out supposed errors this Court made. *See, e.g.,* ECF 260-1, at 3–4 (stating that they are "acutely aware of this Court's previous rulings" yet nonetheless arguing that this Court misapplied the law by finding that intent is irrelevant to a finding of facial discrimination); ECF 260-1, at 5 (arguing that this Court incorrectly found that the Exclusion is facially discriminatory). Such arguments are inappropriate when it comes to satisfying the first factor under *Nken*. *See Tokyo Gwinnett, LLC*, 2022 WL 15524962, at *2 (explaining that the first factor requires a showing that the party is likely to prevail on appeal, not that there is a possibility of error).

Regardless of the standard applied, Defendants' arguments as to the strength of their case fail as a matter of law.  Defendants repeat the same arguments that this Court has heard and rejected numerous times, including in their motions for dismissal, for reconsideration, for summary judgment, and for certification for interlocutory review.  Defendants argue that the Supreme Court's decision in *Bostock v. Clayton County, Ga.*, 140 S.Ct. 1731 (2020), which held that Title VII protects individuals from discrimination based on transgender status, requires Plaintiff to prove not only that an employer has created, maintained, or applied a facially discriminatory policy that treats some employees worse than others "because of . . . sex" but also that the employer had some separate, additional intent to discriminate.  This argument ignores decades of legal precedent establishing that additional evidence of intent is not required where there is a finding of facial discrimination under Title VII.  *See, e.g., Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc*., 499 U.S. 187, 199 (1991) ("Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination."); *cf. Bostock*, 140 S.Ct. at 1743 (affirming as "irrelevant" an employer's defense against a Title VII claim that it is "not guilty of animosity against women") (citing *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702 (1978)).

In *Bostock*, the Supreme Court explained that Title VII "prohibits employers from taking certain actions 'because of' sex.'" *Id.* at 1739.  The Court further explained that "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Id.* at 1741.  This Court correctly concluded, on the undisputed record, that the Exclusion applies only to transgender members of the Health Plan and it applies to Sgt.

Lange because she is transgender.  ECF 205, at 23.  Therefore, "it is undisputed that the Exclusion is facially discriminatory" and there is no "*Bostock* workaround."  *Id.* at 22, 28.

Nevertheless, Defendants assert that, under *Bostock*, Plaintiff must show that the discrimination was intentional.[3]  But as this Court has already held, post-*Bostock*, no further evidence of intent is required where an employment policy is facially discriminatory.  ECF 205, at 22 ("[T]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect.") (quoting *Johnson Controls,* 499 U.S. at 199).  *Bostock* did not disturb decades of precedent holding that intent is irrelevant where a policy is facially discriminatory.  *See e.g., Johnson Controls*, at 199; *Manhart*, 435 U.S. at 711; *Feemster v. BSA Ltd. Partn.*, 548 F.3d 1063, 1070 (D.C. Cir. 2008) ("[U]nder Title VII, when a policy is 'discriminatory on its face,' the defendant's motive is irrelevant.") (reviewing cases); *Rodriguez v. Procter & Gamble Co.*, 465 F. Supp. 3d 1301, 1320 (S.D. Fla. 2020); ("Intentional discrimination can be established by a facially discriminatory policy: one that explicitly applies less favorably to some, or all, members of a protected group.").

Defendants' reading of *Young v. United Parcel Svc., Inc.*, 575 U.S. 206 (2015), which repeats the same argument rejected by this Court in the order on Defendants' motion for certification for interlocutory review, ECF 220, fails as a matter of law.  In *Young*, the issue was "whether [the employer's] *facially neutral policy* imposed a significant burden on pregnant employees . . . which of course encompassed the question of intent."  ECF 220, at 4 (discussing *Young v. United Parcel Svs., Inc.*, 575 U.S. 206 (2015)).  Young thus has no bearing here, given that this Court has already determined that the Exclusion is facially discriminatory.  ECF 205, at 22-23 (explaining "for example, that the plan pays for mastectomies when medically necessary for

---

[3] Defendants' reliance on the proceedings on remand in one of the three companion cases resolved under *Bostock* is misplaced—unlike here, no facially discriminatory policy was at play in that case.

cancer treatment but not when mastectomies are medically necessary for sex change surgery"). Even Defendants, as this Court has noted, "do[] not argue that the Exclusion, standing alone, is facially neutral" and "admit a facially discriminatory policy violates Title VII regardless of intent." ECF 220, at 4.

Defendants have not met the first, and most important, prong of the four-factor test for a stay pending appeal, even under their proposed lower standard of a "substantial case."  For this reason alone, Defendants' motion should be rejected.

### B.  Defendants Will Not Be Irreparably Injured By An Order Enjoining The Unlawful Exclusion.

Defendants have not shown that they will be irreparably harmed absent a stay of the Order. As this Court has explained, "[t]o demonstrate irreparable harm, a movant must show that the injury cannot be undone through monetary remedies." *Redding v. Fanning*, 2015 WL 9991768, at *1 (M.D. Ga. Oct. 14, 2015) (citing *Telestrata, LLC v. NetTALK.com, Inc.*, 126 F.Supp.3d 1344, 1353 (S.D. Fla. Aug. 19, 2015)).  Defendants have made no such showing.  The only injury that Defendants point to—the cost of removing the Exclusion and covering Plaintiff's healthcare as required by the Order—is exactly the kind of injury that can be redressed by a monetary remedy. Defendants admit as much, stating that they would be entitled to the monetary remedy of restitution for any expenses incurred by the Health Plan if they were to succeed on appeal.  ECF 260-1, at 9.

Defendants' sole cited case on this issue is easily distinguishable here.  In *Garcia-Mir v. Meese*, the district court had ordered the defendant to (1) draft a plan to conduct individual detention hearings for each member of a certified class of Cuban refugees and (2) implement the plan and conduct the hearings within 60 days.  *Garcia-Mir*, 781 F.2d at 1451-52.  The Eleventh Circuit stayed the implementation of the plan pending appeal on the merits.  *Id.* at 1451.  There, the district court had ordered the defendant to undertake work that would distract and burden the

subject agency and could lead to public safety harms should refugees be admitted into the United States improperly. *Id.* at 1456. By contrast, Defendants here have been ordered to remove the Exclusion and pay the covered portion of Sgt. Lange's care. The burden imposed is monetary, as opposed to the enforcement and administrative burdens in *Garcia-Mir.* Therefore, any purported harm Defendants could suffer is inherently reparable.[4]

Although the law is clear that a monetary injury cannot constitute an irreparable injury, Defendants devote significant attention to the potential costs associated with paying for Plaintiff's healthcare. But the record shows that the cost of removing the Exclusion is unlikely to be significant. Defendants have elected a self-funded Health Plan, from which the County pays healthcare costs for employees as a matter of course. ECF 205, at 7; ECF 174, at ¶¶ 67–69, 72. The Health Plan, which has annual expenditures of approximately $10 million, covers numerous "high-cost" claims for medically necessary care, including individual procedures in excess of $100,000 and, in one instance, total annual costs reaching $1.1 million for a single employee. *Id.* at ¶¶ 244-45 (citing Grant Decl., Ex. M HC Dep. (Carter II) at 92:7-11). By contrast, the estimated cost of the surgery that Sgt. Lange seeks ($25,600 according to the County's own records) would amount to one quarter of one percent of the Health Plan's annual expenditure. ECF 174, at ¶ 224. The cost is too little even to be deemed a "high-cost" claim under the County's own definition. *Id.* at 192 (citing Grant Decl. Ex. A Carter Dep. at Ex. 17, p. 7) (categorizing "high-cost" claims as costing over $50,000).

---

[4] Notably, Defendants do not argue that Sgt. Lange is indigent or that some other circumstance would render a monetary injury somehow irreparable here. Although she does not have sufficient savings to pay the cash price for her surgery—hence, her need to oppose Defendants' motion—she has assets and a steady income. Moreover, Defendants' apparent ability to pay magnitudes more on litigating this case than the cost of Sgt. Lange's surgery, as detailed below, further emphasizes that the cost of Sgt. Lange's surgery is not an irreparable injury to the Defendants.

Defendants attempt to bolster their argument by claiming—in direct contradiction to the record—that "the exact cost of a vaginoplasty is apparently unknown."  ECF 260-1, at 8.  But Defendants *do* know the approximate cost of a vaginoplasty—$25,600—because they sought that information from their insurance broker, who obtained it directly from the Health Plan's administrator, Anthem Blue Cross Blue Shield ("Anthem") when this lawsuit was originally filed.  ECF 174, at ¶¶ 186-89, 224; ECF 205, at 7.  Ignoring the record, Defendants instead cite testimony from Dr. Rachel Bluebond-Langner, which neither contradicts what Anthem told Defendants, nor supports Defendants' assertion.[5]

Defendants seek to inflate the potential cost of Sgt. Lange's care by introducing an irrelevant extra-record *New York Times* article about a transgender *man* seeking a phalloplasty, an entirely different (and considerably more complex) surgery from the one Sgt. Lange requires.  The article states, without attribution, that a phalloplasty could cost "as much as $200,000."  ECF 260-1, at 8.  Other than the fact that the patient in that article and Sgt. Lange are both transgender and share a doctor, the article has nothing to do with this case.  Dr. Bluebond-Langner is featured as a treating physician; she says nothing about cost.  The article offers nothing relevant to this case and only highlights that Defendants' argument relies on Sgt. Lange's status as a transgender person and not any evidence in the record.

Defendants' arguments that the cost is unknown or extraordinary (either generally or to Defendants specifically) is contradicted by the record.  This factor, thus, must weigh against granting a stay.

---

[5] Defendants here misconstrue Dr. Bluebond-Langner's testimony, which is: "Q: How much is NYU paid for a vaginoplasty? A: I have no idea."  Dr. Bluebond-Langner, a salaried physician, does not bill her patients; she has no basis or need to know how much her employer NYU-Langone and various insurers have agreed to bill for a vaginoplasty.  Defendants did not seek discovery from NYU-Langone.

### C. Sgt. Lange Would Endure Significant And Undue Hardship If A Stay Is Granted.

As Defendants concede, Sgt. Lange would be substantially injured by the grant of Defendants' stay.  ECF 260-1, at 8.  Sgt. Lange has already waited four years for the surgery that she needs.  At trial, the jury recognized the significant emotional distress that this delay in receiving medically necessary care has already caused her.  *See* ECF 256; Sept. 26 and 27, 2022 Trial Tr., at 54–58.  A stay would only serve to increase Sgt. Lange's injury and prolong her suffering.  *See Belton v. Georgia*, No. 1:10-CV-0583-RWS, 2013 WL 4551307, at *2 (N.D. Ga. Aug. 27, 2013) (denying a stay of the court's injunction directing the Georgia Department of Behavioral Health and Developmental Disabilities to implement changes to bring its services in compliance with the ADA where "granting a stay would result in substantial injury to the Plaintiffs by prolonging [the plaintiffs'] exclusion from public mental health services in Georgia.").  The significant and unnecessary hardship that Sgt. Lange would endure if a stay were granted weighs heavily against Defendants' requested stay.

### D. The Public Interest Is Not Served By Permitting Defendants To Continue The Discrimination That Has Been Found To Be Unlawful.

The public interest lies in ensuring that members of the Health Plan have access to the medical care that they require.  To do so, Defendants must cease to discriminate in the provision of healthcare coverage on the basis of transgender status.  *See Flack v. Wisconsin Dept. of Health Services*, 331 F.R.D. 361, 373 (W.D. Wis. Apr. 23, 2019) (finding balance of harms tips in favor of transgender plaintiffs given health benefits of covering gender-affirming care and "nominal cost increases" in doing so); *Monroe v. Baldwin*, 424 F.Supp.3d 526, 546 (S.D. Ill. Dec. 19, 2019) ("The balance of harm substantially weighs in favor of granting injunctive relief" in the context of providing treatment for gender dysphoria.); *Mitson ex. rel. Jones v. Coler*, 670 F. Supp. 1568, 1577

(S.D. Fla. Oct. 5, 1987) (the public interest is "substantially benefitted" when people "receive essential medical care that could not otherwise be provided.").

Given that Title VII requires injunctive relief against ongoing employment discrimination, the balance of hardships and the public interest merge with the merits as to Sgt. Lange's statutory claims.  42 U.S.C. §§ 2000e-5(g)(1), 12117(a); *Intl. Broth. of Teamsters v. U.S.*, 431 U.S. 324, 364 (1977) ("[D]istrict courts have not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future."); *James v. Stockham Valves & Fittings Co*., 559 F.2d 310, 358 (5th Cir. 1977) ("[T]he Supreme Court has stressed the 'strong public interest in having injunctive actions brought under Title VII, to eradicate discriminatory employment practices.'").

As to financial considerations, Defendants' claim fails given that, as this Court has held, "[n]either Congress nor the courts have recognized a cost justification defense under Title VII." ECF 205, at n.15 (citation and some punctuation omitted).  Their argument that covering Sgt. Lange's surgery would so compromise their finances as to contravene the public interest also rings hollow given that, as a matter of public record, the County has expended well over one million dollars defending against this litigation—over 40 times the estimated cost of a vaginoplasty.[6]  *See* Exhibit A.  It is difficult to reconcile Defendants' argument that paying $25,600 one time is harmful to the public interest but paying a similar sum monthly, for years, is not.  The public interest lies in Defendants ceasing to discriminate, as required by Title VII; covering Sgt. Lange

---

[6] $1,017,593.28 as of August 31, 2022.  *See* Exhibit A, including summary statements of Defendants' Attorneys' Fees.  Notably, this figure does not include the cost of taking this matter to a jury trial in September 2022.

healthcare just as they do for non-transgender employees; and ceasing to pursue any and all possible avenues to maintain their discriminatory Exclusion at taxpayer expense.

## II.     AS THE PREVAILING PARTY, PLAINTIFF SHOULD NOT BE REQUIRED TO POST A BOND.

The Court should reject Defendants' request that Sgt. Lange be ordered to post a bond in the amount of the cost of her surgery.  Federal Rule of Civil Procedure 62(d) permits the district court to suspend a final judgment granting injunctive relief pending an appeal of that judgment, "on terms for bond or other terms that secure the ***opposing party's*** rights."  Fed. R. Civ. P. 62 (emphasis added).  *See also Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189, 1190-91 (5th Cir. 1979) ("The purpose of a supersedeas bond is to preserve the status quo while protecting the ***non-appealing party's rights pending appeal***.") (emphasis added).

As an initial matter, Defendants' request for Sgt. Lange to pay a bond should be rejected because they do not identify any legal basis for their request, nor the Court's authority to grant it. While the Federal Rules provide that plaintiffs benefitting from the issuance of a preliminary injunction may be required under Rule 65(c) to post a bond pending resolution on the merits, there is no corresponding rule for permanent injunctions pending appeal.  *See* Fed. R. Civ. P. 65 ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.); *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002) (holding that an injunction bond is required only for a temporary restraining order or a preliminary injunction, not for a permanent injunction), *cert. denied*, 537 U.S. 1110 (2003); *FDIC v. Lewis,* No. 2:10-CV-439 JCM VCF, 2014 WL 4929343, at *2 (D. Nev. Oct. 1, 2014) ("Federal Rule of Civil Procedure 65(c) explicitly refers to posting of bond only in

connection with temporary restraining orders and preliminary injunctions. The rule does not require an applicant to post bond in connection with entry of a permanent injunction.").

Moreover, even in the case of preliminary injunctions, courts within this Circuit have declined to require that a plaintiff post a bond for necessary healthcare while awaiting final resolution on the merits.  For example, in *K.G. ex rel. Garrido v. Dudek*, 839 F. Supp. 2d 1254 (S.D. Fla. 2011), the court held that the harm to the plaintiff's "physical and mental health if he did not immediately receive the treatment" ordered in the injunction "far outweighed" the fiscal harm to a defendant resulting from an issuance of a preliminary injunction requiring a state health agency to pay $33,000–$55,000 for a plaintiff's healthcare.).

Finally, posting a bond is not possible for Plaintiff and would therefore have the same impact as staying the Order.  Plaintiff, who makes $46,000 per year, does not have the financial resources to post a $25,600 bond.  Without insurance coverage, for which she pays monthly premiums, the cost of this surgery is out of her reach.  Requiring Plaintiff to post the cost of the surgery as a bond would have the same impact as keeping the unlawful Exclusion in place—she would not be able to obtain the medically necessary care for which she has waited four years, and which Title VII requires.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion.

Respectfully submitted this 11th day of November, 2022.

 /s/ Wesley R. Powell

| | |
|---|---|
| Wesley R. Powell* | David Brown* |
| Jill K. Grant* | Gabriel Arkles* |
| Catherine E. Fata* | TRANSGENDER LEGAL DEFENSE |
| Amanda M. Payne* | EDUCATION FUND, INC. |
| WILLKIE, FARR & GALLAGHER LLP | 520 8th Ave. Ste. 2204 |
| 787 Seventh Avenue | New York, NY 10018 |
| New York, NY 10019-6099 | (646) 862-9396 tel. |
| (212) 728-8000 tel. | (646) 993-1686 fax |
| (212) 728-8111 (fax) | dbrown@transgenderlegal.org |
| wpowell@willkie.com | garkles@transgenderlegal.org |
| jgrant@willkie.com | |
| cfata@willkie.com | |
| apayne@willkie.com | |
| | |
| Kenneth E. Barton III | Kevin M. Barry* |
| Ga. Bar No. 301171 | QUINNIPIAC UNIVERSITY SCHOOL OF |
| M. Devlin Cooper | LAW LEGAL CLINIC |
| Ga. Bar No. 142447 | 275 Mount Carmel Ave. |
| COOPER, BARTON & COOPER | Hamden, CT 06518 |
| 170 College Street | (203) 582-3238 tel. |
| Macon, GA 31201 | (203) 582-3237 fax |
| 478-841-9007 | legalclinic@quinnipiac.edu |
| 478-841-9002 (fax) | |
| keb@cooperbarton.com | |
| mdc@cooperbarton.com | |

*Attorneys for Plaintiff*

*Admitted pro hac vice

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL** to the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to the following counsel of record, who are CM/ECF participants:

R. Read Gignilliat, Esq.
Sharon P. Morgan, Esq.
Patrick L. Lail, Esq.
William D. Deveney
Elarbee, Thompson, Sapp & Wilson, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
gignilliat@elarbeethompson.com
morgan@elarbeethompson.com
lail@elarbeethompson.com
deveney@elarbeethompson.com

*Attorneys for Defendants*

This 11th day of November, 2022.

 /s/ Wesley R. Powell
Wesley R. Powell*
WILLKIE, FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000 tel.
(212) 728-8111 (fax)
wpowell@willkie.com


*Admitted pro hac vice

Kenneth E. Barton III
Ga. Bar No. 301171
M. Devlin Cooper
Ga. Bar No. 142447
COOPER, BARTON & COOPER
170 College Street
Macon, GA 31201
478-841-9007
478-841-9002 (fax)
keb@cooperbarton.com
mdc@cooperbarton.com