IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ANNA LANGE,

Plaintiff,

v.

HOUSTON COUNTY, GEORGIA, et al.,

Defendants.

CIVIL ACTION NO. 5:19-CV-00392-MTT

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO STAY INJUNCTIVE RELIEF PENDING APPEAL**

COME NOW, Defendants Houston County and Sheriff Cullen Talton, in his official capacity only, and pursuant to this Court's January 9, 2023 Order [Doc. 286], hereby supplement their principal and reply briefs in support of their pending Motion to Stay Injunctive Relief Pending Appeal [Doc. 260, 283].

**RELEVANT BACKGROUND**

Defendants moved to stay enforcement of this Court's Order for Permanent Injunctive and Declaratory Relief (the "Injunction") dated October 3, 2022 [Doc. 258], while they pursue their appeal of the same and the underlying part of this Court's Order dated June 2, 2022 (the "Order"), in which the Court granted summary judgment to Plaintiff Anna Lange on her disparate-treatment sex-discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). In that Order, the Court concluded that an exclusion for sex change surgery (the "Exclusion") contained in Houston County's self-funded health insurance plan (the "Health Plan"), which covers

Lange and other employees of the Sheriff's Office, was "facially discriminatory" under Title VII, relying heavily on *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). This Court's Injunction would require, if not stayed, Defendants to process Lange's insurance claim for sex reassignment surgery under the Health Plan.

On January 9, 2023, the Court directed the parties to "supplement their briefs to address the effect, if any," of the Eleventh Circuit's recent *en banc* opinion in *Adams by and through Kasper v. Sch. Bd. of St. Johns Cty.*, ___ F.4th ___, No. 18-13592, 2022 WL 18003879 (11th Cir. Dec. 30, 2022) ("*Adams*"), "on the Defendants' Motion to Stay." [Doc. 286.] As will be discussed in greater detail below, *Adams* involved a transgender student's equal protection and Title IX[1/] challenge to a county School Board's policy requiring students to use only those bathrooms corresponding to their biological sex or a sex-neutral bathroom.

As it was not an employment case, *Adams* did not involve a claim under Title VII. Nor is *Adams* otherwise factually the same as Lange's claim. As such, *Adams* cannot be said to be dispositive of either Lange's claim or Defendants' defenses thereto as a matter of binding precedent under Title VII.[2/] Nevertheless, the reasoning of the *en banc* court—in particular, its analysis of the Supreme Court's opinion in *Bostock*—does inform certain aspects of the pending Motion to Stay, as a number of Defendants' arguments find resonance in its opinion. As such, for the reasons set forth below, *Adams* constitutes

---

[1/] Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq*.

[2/] *Adams* is, of course, binding with respect to Lange's Equal Protection claim.

persuasive authority supporting Defendants' Motion to Stay based on either "a strong showing that [they are] likely to succeed on the merits," *see Nken v. Holder*, 556 U.S. 418, 421 (2009), or a showing "of a 'substantial case on the merits,'" *see League of Women Voters of Fla., Inc. v. Fla. Sec'y of State,* 32 F.4th 1363, 1370 (11th Cir. 2022) (quoting *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986)).

## DISCUSSION

### 1. Summary of *Adams v. School Board of St. Johns County*.

The high school that the plaintiff Drew Adams attended had male, female, and sex-neutral bathrooms. *See Adams*, 2022 WL 18003879, at *1. The defendant School Board of St. Johns County (the "School Board") had long maintained an "unwritten bathroom policy" requiring that male students use the male bathroom and female students use the female bathroom. *Id.* "For purposes of this policy, the School Board distinguishe[d] between boys and girls on the basis of biological sex" as indicated on various documents at the time of their enrollment. *Id.*

Adams, who apparently has since graduated, was then a transgender boy, "mean[ing] that Adams identifie[d] as male, while Adams's biological sex—sex based on chromosomal structure and anatomy at birth—is female." *Id.* Adams and other transgender students "prefer[red] not to use the bathrooms that correspond[ed] with their biological sex." *Id.* Instead, "Adams [sought] access to the male bathrooms, which correspond[ed] with the gender Adams identifies with" (*i.e.*, male). *Id.* at *6.

Adams filed suit contending that the School Board's policy of assigning bathrooms based on students' biological sex violated the Equal Protection Clause and Title IX. *Id.* at

*3; *see also id.* at *5 ("Adams argue[d] that the bathroom policy unlawfully discriminate[d] on both the basis of sex and transgender status.") After a bench trial, the district court ruled in Adams's favor under both the Equal Protection Clause and Title IX, and "enjoined the School Board from prohibiting Adams's use of the male bathrooms." *Id.* at *3.

A divided panel of the Eleventh Circuit twice affirmed the district court's order over a dissent. *Id.* at *3. The School Board, however, successfully petitioned for rehearing *en banc*, and on December 30, 2022, the *en banc* court reversed the district court's order. *Id.* at *3, 19. In so doing, the *en banc* court "disagree[d] with Adams's theory that separation of bathrooms on the basis of biological sex necessarily discriminate[d] against transgender students," and held that "separating school bathrooms based on biological sex passe[d] constitutional muster and comport[ed] with Title IX," *id.* at *1, 4. More specifically, as to Adams's equal protection claim, the *en banc* court held: "The Equal Protection Clause claim must fail because, as to the sex discrimination claim, the bathroom policy clears the hurdle of intermediate scrutiny and because the bathroom policy does not discriminate against transgender students." *Id.* at *5.[3/] In so holding, the majority opinion – in contrast to Judge Jill Pryor's dissent (joined, in part, by Judge Rosenbaum) – analyzed the sex discrimination and transgender discrimination components of Adams's equal protection claims separately. See *id.* at **6-11, 11-13; *compare id.* at **31-56 (Pryor, J., dissenting).

[3/] The *en banc* court also held that Adams' "Title IX claim must fail because Title IX allows schools to separate bathrooms by biological sex." *Id.*

**2. The *En Banc* Court Rejected Adams' Claim that the Bathroom Policy Unlawfully Discriminated on the Basis of Sex.**

Adams contended that the School Board's assignment of bathrooms based on biological sex (even while "providing accommodative sex-neutral bathrooms") discriminated based on sex in violation of the Equal Protection Clause. *Id.* at **6-7. While acknowledging the School Board's bathroom policy was a "sex-based classification," however, the *en banc* court rejected Adams's claim that the classification violated the Equal Protection Clause. *Id.* at *6-11. More specifically, the *en banc* court held that the policy both "advance[d] an important governmental objective" and was "substantially related to that objective," and thus survived the applicable "intermediate scrutiny" analysis. *Id.* at *7-11.

In finding that "the School Board has an important governmental objective in protecting students' privacy interests in school bathrooms," the *en banc* court expressly rejected, "as a false equivalence," the dissent's "equat[ing] concerns about privacy in the bathroom with unlawful complaints about racial discrimination." *Id.* at *9.

The *en banc* court also held that the district court had erred in "look[ing] to Adams's gender identity—instead of Adams's biological sex—" because "gender identity is different from biological sex." *Id.* at *10. As to that holding, the *en banc* court explained that gender identity cannot be equated to biological sex" because doing so "would refute the Supreme Court's longstanding recognition that sex 'is an immutable characteristic determined solely by the accident of birth.'" *Id.* (quoting *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality opinion)).

Applying that part of the *en banc* court's opinion in *Adams* to the case before this Court, the Exclusion at issue does not discriminate based on sex because both biological males and biological females—including those biological males and biological females who wish to pursue their otherwise covered treatment for gender dysphoria through to gender reassignment surgery—are affected equally. Accordingly, Lange would not be able to establish a sex discrimination claim under the Equal Protection Clause.[4/]

In addressing the Title IX discrimination claim, the *en banc* court likewise rejected Adams's argument that "*Bostock* equated 'sex' to 'transgender status,'" holding instead that "the Supreme Court in *Bostock* actually 'proceed[ed] on the assumption' that the term 'sex,' as used in Title VII, 'refer[ed] only to biological distinctions between male and female.'" *Id.* at *15 (quoting 140 S. Ct. at 1739). The *en banc* court observed that neither the Supreme Court's opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), nor the Eleventh Circuit's opinion in *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011), "read[] 'gender identity' into the definition of 'sex'; they discuss unlawful action by employers' reliance on impermissible stereotypes." *See Adams*, 2022 WL 18003879, at *15. Doing so, the *en banc* court further observed, "would provide more protection against

[4/] Even in addressing Adams's equal protection claim based on transgender status, the *en banc* court did not negate or diminish the actual "biological differences between males and females." *Id.* at *12. The question presented by that claim, the *en banc* court held, was "whether discrimination based on biological sex necessarily entails discrimination based on transgender status," which the court answered as follows: "It does not—a policy can lawfully classify on the basis of biological sex without unlawfully discriminating on the basis of transgender status." *Id.* at *11.

discrimination on the basis of transgender status under [Title IX] and its implementing regulations than it would against discrimination on the basis of sex.' *Id.* at *16.

**3. The *En Banc* Court Rejected Adams's claim that the Bathroom Policy Unlawfully Discriminated on the Basis of Transgender Status.**

Lange contends here that "the Exclusion applies only to transgender participants in the Health Plan and it applies to [her] because she is transgender." Therefore, according to Lange, "it is undisputed that the Exclusion is facially discriminatory" and there is no "*Bostock* workaround." [Doc. 280, p. 6 (record citations omitted).] In *Adams*, both the plaintiff and Judge Jill Pryor (in her dissent) similarly relied upon the "logic" of *Bostock* in support of their respective contentions that the School Board's policy violated the Equal Protection Clause. *See Adams*, at *11; *see also id.* at *46 (Pryor, J., dissenting). The majority opinion in *Adams* explained, however, that "*Bostock* involved employment discrimination under Title VII [], [citation omitted]" and, thus, "[did] not resolve the issue before [the *en banc* court]." *See Adams*, 2022 WL 18003879, at *11. Again, however, those "preliminary points aside," *see id.*, the *en banc* opinion's observations regarding *Bostock* sheds light on the Eleventh Circuit's view of that case.

The *en banc* opinion in *Adams* observed, "[a]s a preliminary matter," that the Supreme Court in *Bostock* had "expressly declined to address the issue of sex-separated bathrooms and locker rooms." *Id.* at *11 (quoting *Bostock*, 140 S. Ct. at 1753); *see also Bostock*, 140 S. Ct. at 1778-79 (Alito, J., dissenting) (identifying "*[B]athrooms, lockers rooms, [and other things] of [that] nature*" as one of the "potential consequences" of the Supreme Court's decision) (brackets and italics in original). Notably, also among the

potential consequences identified by Justice Alito in his dissent in *Bostock* was "*Healthcare*," as to which he (joined by Justice Thomas) observed that "[t]ransgender employees have brought suit under Title VII to challenge employer-provided health insurance plans that do not cover costly sex reassignment surgery." *Id.* at 1781 (emphasis in original); *see also id.* at 1781 n.56. And while Justice Gorsuch's majority opinion in *Bostock* did not address either healthcare or insurance expressly, it did generally address Justice Alito's identified potential consequences:

> What are these consequences anyway? …. *The only question before us* is whether an employer who *fires someone simply for being homosexual or transgender* has discharged or otherwise discriminated against the individual "because of such individual's sex." …. *Whether other policies and practices might or might not qualify as unlawful discrimination or find justifications under other provisions of Title VII are questions for future cases, not these.*

*Id.* at 1753 (emphasis added).

The *en banc* court in *Adams* also recognized the threshold nature of the question presented and answered in *Bostock*, where the Supreme Court addressed "various employers' decisions to fire employees based *solely* on their sexual orientations or gender identities." *Id.* at *11 (emphasis added); *see also Bostock*, 140 S. Ct. at 1754 ("An employer who fires an individual *merely* for being gay or transgender defies the law.") (emphasis added).[5/] Accordingly, the Eleventh Circuit's *en banc* opinion in *Adams* does not support

[5/] From its context, it is apparent that the Supreme Court's use of the word "merely" is consistent with its dictionary meaning of "nothing less than" or "nothing more than." *See* Merriam-Webster's Collegiate Dictionary, p. 777 (defining "mere"). As such, "merely" was used synonymously with the word "simply" on the preceding page of the opinion, *see Bostock*, 140 S. Ct. at 1753 ("whether an employer who fires someone simply for being homosexual or transgender"), and correctly read by the *en banc* court in *Adams*

Lange's argument that *Bostock* compels the conclusion that the Exclusion violates Title VII's prohibition on sex discrimination as a matter of law merely (or simply or solely) because the Exclusion adversely affects transgender persons and she is transgender—and thereby rendering immaterial the disputed issue of discriminatory intent.[6/]

The majority opinion in *Adams* similarly recognized that *Bostock* did not resolve the question before them in that case because there was a lack of identity between the School Board's bathroom policy and transgender status, "as the bathroom options are

---

as "solely," *see* 2022 WL 18003879, at *11 ("various employers' decisions to fire employees based solely on their sexual orientations or gender identities").

[6/] The *en banc* court's interpretation of *Bostock* is also consistent with the posture *Bostock* and its two companion cases were in at the time the Supreme Court granted certiorari. In *Bostock*, the plaintiff's case came before that Court on a *per curiam* Eleventh Circuit panel opinion holding that Title VII "[did] not prohibit employers from firing employees for being gay and so [his] suit could be dismissed as a matter of law" pursuant to Rule 12(b)(6). *See Bostock*, 140 S. Ct. at 1738 (citing *Bostock v. Clayton Cty., Ga.*, 723 F. App'x 964 (11th Cir. May 10, 2018)). The two companion cases in *Bostock* likewise came before the Supreme Court on Title VII claims of discriminatory discharge, although under Rule 56. *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 108-109, 119, 132 (2d Cir. 2018) (*en banc*) (overruling binding Second Circuit law, holding that the plaintiff, who claimed to have been discharged because he was gay, could assert a claim under Title VII for discrimination based on his sexual orientation, and vacating the grant of summary judgment for the employer under Title VII); *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 566-67, 571, 581 (6th Cir. 2018) (holding that the plaintiff, a transgender woman who was discharged after informing her employer of her intention to dress as a woman, could "pursue a claim that she was discriminated against on the basis of her transgender and transitioning status" and affirming the district court's determination on summary judgment that the plaintiff had been "fired because of her failure to conform to sex stereotypes, in violation of Title VII"). Therefore, whether based on their procedural posture (*Zarda* and *Bostock*) or the factual record (*G.R. Harris*), the Supreme Court considered it undisputed in each case before it that the employer had indeed "fire[d the plaintiffs] simply for being homosexual or transgender." *See Bostock*, 140 S. Ct. at 1753. Accordingly, the only issue before the Supreme Court was whether those presumed motivations constituted discrimination because of "sex."

'equivalent to th[ose] provided all students." *Id.* at *11 (quoting *Geduldig v. Aiello,* 417 U.S. 484, 496-97 (1974)). The insurance program in *Geduldig* had similarly "created two groups—a group that contained only females and a group that contained males and females—[and, thus,] there was a 'lack of identity' between the exclusion of those female-related disabilities from coverage and discrimination on the basis of being female since '[t]he fiscal and actuarial benefits of the program … accrue[d] to members of both sexes.'" *Id.* at *12 (quoting *Geduldig*, 417 U.S. at 496 n.20).

In the present case, there is an analogous "lack of identity" between the Exclusion and transgender status, inasmuch as the Exclusion distinguishes between only those transgender persons who do not want to follow their treatment of gender dysphoria to include surgery and those who do. As in *Geduldig,* the fiscal and actuarial benefits of the Health Plan and its various medical and pharmacy exclusions accrue to—and sometimes limit—the coverage for both transgender and cisgender participants.

The *en banc* court in *Adams* found that the district court had erred in "proclaim[ing] that the bathroom policy was 'no longer a neutral rule' because it 'applies differently to transgender students' and because the School Board became 'aware of the need to treat transgender students the same as other students.'" *Id.* at *12. To the contrary, the *en banc* court held that the "'discriminatory purpose'" required by the Supreme Court to show unlawful discrimination under the Equal Protection Clause "'implies more than intent as volition or intent as awareness of consequences" and instead "implies that the decisionmaker' … 'selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.*

(quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "At most," the *en banc* court determined that the bathroom policy had a disparate impact on transgender students, which, by itself, was not enough to support a constitutional challenge that required a showing of discriminatory purpose. It follows, therefore, that to the extent Lange can show that the Exclusion here impacts her, she cannot show the discriminatory intent necessary to sustain a disparate treatment claim.

The *Adams* court also found "no evidence that the School Board [had] enacted the bathroom policy 'because of … its adverse effects upon' transgender students," inasmuch as it "did not even have transgender students in mind when it originally established [the bathroom policy]" and "[t]he policy impact[ed] approximately 0.04 percent of the students within the school district." *Id.* at *13. The Exclusion at issue here likewise was adopted long before Lange was even hired and became a participant in the Health Plan—and even longer before she began her transition—and she is the only known transgender person to ever participate in the Health Plan. In denying Lange's summary judgment motion on her equal protection claim, this Court "could not say as a matter of law whether, under the Equal Protection Clause, the adoption and maintenance of the Exclusion was motivated by [the required] discriminatory intent," observing further that the relevant facts were indeed "hotly disputed." [Doc. 205, pp. 20-21; *see also id.* at p. 21 ("there is a genuine dispute of material fact as to whether the adoption and maintenance of the Exclusion was done with discriminatory intent").] Similarly, to prevail on a disparate treatment under Title VII, "the difference in treatment based on sex must be intentional." *Bostock*, 140 S. Ct. at 1740. Therefore, although not dispositive here on Title VII, the guidance provided regarding

*Bostock* in the *en banc* opinion in *Adams* strongly suggests that, at the very least, the same conclusion should be reached as to Lange's sex discrimination claim under Title VII.

**CONCLUSION**

Defendants submit that, in support of their Motion to Stay Pending Appeal [Doc. 260], they have made "a strong showing that [they are] likely to succeed on the merits." *See Nken*, 556 U.S. at 421. Additionally, and/or alternatively, Defendants submit that because "the balance of equities … weighs heavily in favor of the granting of the stay" – the Injunction here does not preserve the status quo, but instead requires the Health Plan to absorb a financial expense that it is unlikely to be able to recover – they have made a showing "of a 'substantial case on the merits.'" *League of Women Voters of Fla.*, 32 F.4th at 1370 (quoting *Garcia-Mir*, 781 F.2d at 1453). Therefore, for each of the reasons set forth herein, as well as in their previously submitted memoranda, Defendants submit that this Court should grant their Motion for Stay Pending Appeal until the Eleventh Circuit can decide the question presented.

Respectfully submitted this 23rd day of January, 2023.

*s/ William D. Deveney*
Sharon P. Morgan
Georgia Bar No. 522955
R. Read Gignilliat
Georgia Bar No. 293390
Patrick L. Lail
Georgia Bar No. 431101
William D. Deveney
Georgia Bar No. 219744

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
(404) 659-6700
(404) 222-9718 (Facsimile)
morgan@elarbeethompson.com
gignilliat@elarbeethompson.com
deveney@elarbeethompson.com
lail@elarbeethompson.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ANNA LANGE,<br><br>Plaintiff,<br><br>v.<br><br>HOUSTON COUNTY, GEORGIA, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>5:19-CV-00392-MTT |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2023, I electronically filed the foregoing **DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO STAY INJUNCTIVE RELIEF PENDING APPEAL** with the Clerk of Court using the CM/ECF System, which will automatically send email notification of such filing to the following attorneys of record:

Kenneth E. Barton, III
M. Devlin Cooper

Wesley R. Powell
Jill K. Grant
Catherine E. Fata

David Brown
Gabriel Arkles

Kevin M. Barry

*s/ William D. Deveney*
William D. Deveney
Georgia Bar No. 219744