IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANNA LANGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:19-cv-392 (MTT) |
| | ) |
| HOUSTON COUNTY, Georgia, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### ORDER

Defendant Sheriff Cullen Talton and Defendant Houston County, Georgia move for a stay pending appeal of the Court's order (Doc. 258) granting Plaintiff Anna Lange permanent injunctive and declaratory relief.  Doc. 260.  For the reasons that follow, the defendants' motion (Doc. 260) is **DENIED**.

### I. BACKGROUND

Lange—a transgender woman and sworn deputy with the Houston County Sheriff's Office—brought this action against her employer Sheriff Talton in his official capacity and Houston County.  Doc. 56.  The County's Health Plan, which Sheriff Talton elected to provide his employees, excludes coverage for "sex change" surgery and drugs for "sex change" surgery.  Doc. 205 at 3-4 (citations omitted).  Lange sought relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Equal Protection Clause of the United States Constitution; and Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  Doc. 56.  After discovery, Sheriff

Talton, the County, and Lange moved for summary judgment on all claims.  Docs. 136; 137; 140.

The Court granted summary judgment to the defendants on Lange's ADA claim, granted summary judgment to Lange on her Title VII claim on the issue of liability, and denied both parties' motions on the equal protection claim.  Doc. 205.  The defendants moved to certify the Court's order for interlocutory review, and that motion was denied.  Docs. 206; 220.  Lange's Title VII damages claim then proceeded to trial, and a jury awarded Lange $60,000.  Docs. 256; 261.  After trial, the Court entered an order that declared the Exclusion violative of Title VII and permanently enjoined Sheriff Talton and the County from any further enforcement or application of the Exclusion.  Doc. 258 at 1.  The Court also ordered the defendants to "direct [the Health Plan's third-party administrator] to process any claim for Sgt. Lange's vaginoplasty … as indicated by her treating providers, in accordance with the terms, conditions, and limitations of the Health Plan as they stood in 2019 (except as modified [in the Court's Order])."  *Id.* at 2.

Once the injunction was entered, the defendants filed a notice of appeal and moved for a stay pending appeal.[1]  Docs. 260; 262.  Meanwhile, the parties agreed to continue the trial of Lange's equal protection claim pending resolution of the defendants' interlocutory appeal.  Doc. 281.  The Court also extended the period for Lange to file her attorney's fees petition to "within thirty (30) days of the expiration of the time for any party to seek reconsideration or to obtain a grant of certiorari from the United States Supreme Court of the Court of Appeals' opinion on Defendants' pending appeal."  Docs. 284; 285.  Finally, after the Eleventh Circuit issued its en banc decision in *Adams by &*

---

[1] To allow the parties time to fully brief the issue, the Court stayed the injunction pending resolution of the defendants' motion for stay.  Doc. 265.

*through Kasper v. School Board of St. Johns County*, the Court directed the parties to "supplement their briefs to address what effect, if any, *Adams* has on the defendants' motion to stay injunctive relief pending appeal." Doc. 286 (citing 57 F.4th 791 (11th Cir. 2022)). With that supplemental briefing in hand, the defendants' motion is now ripe for adjudication.

## II. STANDARD

The grant of a stay pending appeal is an "exceptional response." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). To justify a stay under the traditional standard, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). But "in some circumstances—namely, 'when the balance of equities … weighs heavily in favor of granting the stay' … the stay may be 'granted upon a lesser showing of a substantial case on the merits.'" *Id.* (quoting *Garcia-Mir*, 781 F.2d at 1453) (cleaned up). In other words, if factors two through four weigh in favor of granting a stay, then the moving party is entitled to the more favorable "substantial case on the merits" standard with respect to the first factor. *See id.*

### III. DISCUSSION

Because the defendants argue the less demanding "substantial case on the merits" standard should apply, the Court first considers whether factors two through four favor the defendants. Doc. 260-1 at 3-6.

**A. The Defendants Will Not Be Irreparably Injured Absent a Stay**

"To demonstrate irreparable harm, a movant must show that the injury cannot be undone through monetary remedies." *Redding v. Fanning*, 2015 WL 9991768, at *1 (M.D. Ga. Oct. 14, 2015) (citation omitted). The defendants don't disagree with that general proposition; indeed, they note that, in the event they prevail on appeal, monetary restitution for any expenses incurred by the health plan would be appropriate. Doc. 260-1 at 9. Nonetheless, the defendants contend that *Garcia-Mir*—an immigration case involving a certified class of detained Cuban refugees—provides authority for a stay here. Doc. 260-1 at 6-8 (citing 781 F.2d at 1451-52). In *Garcia-Mir*, the district court ordered the Attorney General to craft a plan for individual detention hearings to determine whether Cuban immigrants were properly detained and to conduct those hearings within sixty days of the plan's approval by the district court. 781 F.2d at 1452. As for the district court's directive to craft a plan, the Eleventh Circuit reasoned that the "injury following from the simple preparation on paper of a plan" was a "virtually non-existent" injury. *Id.* at 1454-55. But with respect to the actual implementation of the plan, the Eleventh Circuit reasoned that the balance of equities tipped in favor of the government because those hearings would "result in costs irrevocable, both of time and of money," and carried the substantial risk of improperly admitting Cuban refugees into the United States. *Id.* at 1455-56.

The defendants contend they are in a similar predicament because "the exact cost of a vaginoplasty is apparently unknown." Doc. 260-1 at 8. To prove that the cost would be exorbitant, they attach a news article titled, "How Ben Got His Penis," covering a totally unrelated procedure that *could* cost as much as $200,000. Doc. 260-2 at 2, 5.

This argument requires an admonishment of defense counsel. Throughout this litigation, which included a jury trial, defense counsel have adhered to the highest standards of professionalism. Though they mounted an aggressive defense (and prevailed in substantial part), they have acknowledged undisputed facts and conceded legal weaknesses, and they have studiously avoided any action or argument that could exploit potentially controversial and sensitive issues. For example, they never disputed the medical necessity of Lange's proposed vaginoplasty. In short, they played it straight, and the Court has expressed its appreciation for that.

But defense counsel's statement that they do not know the cost of Lange's vaginoplasty is false. It is undisputed that "the specific procedure Lange sought—a genital vaginoplasty—was estimated only to cost $25,600." Doc. 205 at 7 (citing Docs. 179-3 ¶ 189; 195 ¶ 189). Defense counsel's injection of a news article about a phalloplasty to suggest Lange's vaginoplasty could cost $200,000 is irresponsible. There is absolutely no connection, anatomically or otherwise, between a phalloplasty, which as the article notes "remains a controversial procedure" with a "steep rate of complications," and a vaginoplasty, a routine procedure that is widely performed. Doc. 260-2 at 2.

And to the extent the defendants' motive was to suggest other transgender individuals may seek gender confirming care that far exceeds the cost of Lange's

vaginoplasty, that argument is factually wrong and legally irrelevant.  It is undisputed that the Health Plan's third-party administrator generally "concluded that utilization of gender-confirming care was low."  Doc. 205 at 7 (citing Docs. 179-3 ¶ 226; 195 ¶ 226).  In the four years this litigation has been pending, no other Health Plan members have sought gender confirmation surgery, or even identified as transgender.  *Id.* at 19 (citing Docs. 179-3 ¶ 30; 195 ¶ 30).  And even if there are other transgender members of the County's Health Plan and even if they sought gender-confirming care—mere monetary injury does not constitute an irreparable injury.[2]  *Redding*, 2015 WL 9991768, at *1.

This factor weighs strongly against a stay.

### B. Granting a Stay Will Substantially Injure Lange

The defendants concede Lange can make a showing of substantial injury, and rightfully so.  At trial, the jury awarded Lange $60,000 for her emotional pain and mental anguish stemming from the wrongful denial of her "sex change" surgery, which the Court held violates Title VII as a matter of law.  Docs. 256; 261.  Any further delay would only increase this suffering.  Accordingly, this factor also weighs strongly against a stay.

### C. The Public Interest is Not Served by Granting a Stay

The public interest is "substantially benefitted" when people "receive essential medical care that could not otherwise be provided."  *Mitson By & Through Jones v. Coler*, 670 F. Supp. 1568, 1577 (S.D. Fla. 1987).  Again, the defendants do not dispute the medical necessity of Lange's surgery.  And the defendants stop short of arguing that

---

[2] A final word on cost.  The Health Plan's third-party administrator recommended, consistent with the common practice of health insurers and health plans, that the County adopt a "nondiscrimination mandate" and remove the Exclusion at issue here.  Doc. 205 at 4 (citing Docs. 179-3 ¶ 91; 195 ¶ 91).  The County, acting within its rights, rejected that recommendation.  But Lange argues that the defendants' professed concern over cost is belied by the fact that they have spent $1,017,593.28 as of August 31, 2022 to maintain the Exclusion and avoid paying $25,600 for Lange's vaginoplasty.  Doc. 280 at 11 (citing Doc. 280-1).

it is in the public interest to maintain an unlawful Health Plan Exclusion, but instead contend that because the cost of compliance with the injunction is "not inconsiderable," a stay is warranted.  Doc. 260-1 at 8-9.  In response, Lange argues the "public interest lies in ensuring that members of the Health Plan have access to the medical care that they require," and for that to happen, the defendants "must cease to discriminate in the provision of healthcare coverage on the basis of transgender status."  Doc. 280 at 10.  Exactly.  Outside of costs, which the undisputed record shows are relatively minimal as discussed above, the defendants do not articulate why a stay serves the public interest.  Doc. 260-1 at 8-9.  As such, this factor weighs strongly against a stay.

**D. The Defendants Have Not Made a Strong Showing they are Likely to Succeed**

Because the above three factors weigh strongly against a stay, the defendants are not entitled to the more relaxed "substantial case on the merits" standard with respect to the first factor.  *League of Women Voters*, 32 F.4th at 1370.  Instead, the defendants must make a "strong showing" that they are likely to succeed on appeal.  *Id.*

To support their argument that they are likely to succeed on appeal, the defendants do not argue the injunction is overbroad.  *See* Doc. 260-1.  Rather, they argue the Court erred in holding that the Exclusion was facially discriminatory under Title VII.  *Id.* at 3-6.  These are well trodden grounds.  Docs. 205; 220.  As the Court explained in its order granting summary judgment to Lange on the issue of Title VII liability, specifically with respect to the merits of the defendants' arguments:

> The suggestion that an employer with a single health insurance plan could fill the plan with discriminatory exclusions and avoid Title VII liability because the employer offered that one "coverage package" to all employees lacks any merit.  The two cases defendants cite to support their argument make that clear.  In *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, the Supreme Court held that a health insurance plan that provided

> different pregnancy benefits to female employees than to spouses of male employees violated Title VII. 462 U.S. at 685. And in *City of Los Angeles v. Manhart*, the Supreme Court held that a pension plan requiring higher contributions from females because females live longer, violated Title VII notwithstanding the actuarial soundness of the scheme—charging women higher premiums because they are women violated Title VII. 435 U.S. at 709. Neither case remotely supports the proposition that health insurance plans run afoul of Title VII only if an employer provides "different coverage packages." As the Supreme Court said in *Manhart*, there is no "special definition of discrimination" for employee benefits plans. 435 U.S. at 710.
>
> The defendants' second argument—the Exclusion is lawful because it excludes only some treatment because of transgender status—has, if possible, even less merit. For authority, the defendants cite recent district court cases finding unlawful insurance plan exclusions for transgender healthcare but argue these cases turn on the blanket exclusion of benefits for transgender-related medical care. *See* Doc. 201 at 2-3. As Lange points out, they do no such thing. Also, this argument is simply a rearranged version of the first argument—an employer, the defendants maintain, can lawfully refuse to pay benefits because of transgender status for some conditions as long as it pays benefits to transgenders for other services. Title VII does not exempt "partial" violations. *See* 42 U.S.C. § 2000e-2(a)(1).

Doc. 205 at 26-27 (footnotes omitted). To the extent the defendants contend such a reading of Title VII affords transgender individuals a "most-favored-nation" status (Doc. 260-1 at 5), that argument was addressed in the Court's order denying the defendants' motion for interlocutory appeal:

> The defendants argue that *Young v. United Parcel Serv., Inc.*, 575 U.S. 206 (2015) shows there are substantial grounds for difference of opinion on the question of whether the Exclusion is facially discriminatory. Docs. 179 at 16-17; 218. In *Young*, a pregnant woman, under the orders of her physician to lift no more than twenty pounds, asserted UPS's policy requiring all drivers to lift up to seventy pounds violated Title VII. 575 U.S. at 211. In other words, the question there was whether UPS's *facially neutral* policy imposed a significant burden on pregnant employees, and if so, whether the policy was justified by UPS's non-discriminatory explanation, which of course encompassed the question of intent. *Id.* at 228 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Unlike *Young*, the Court here found the County's Exclusion was facially discriminatory, and thus the question of intent irrelevant. Doc. 205 at 22 (citing *Int'l Union, United Auto.,*

*Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 206 (1991)).

Doc. 220 at 3-4 (footnotes omitted).

Most notably, the defendants have simply failed to explain, or made any real effort to explain,[3] why the Exclusion, which they admit applies only to transgender individuals seeking a "sex change," (Docs. 179-3 ¶ 78; 195 ¶ 78), is not facially discriminatory in light of *Bostock*. Docs. 136-9; 137-2; 206-1; 260-1.

This factor too weighs strongly against a stay.

## IV. CONCLUSION

Because all four factors weigh strongly against granting a stay, the defendants' motion for stay of the Court's injunction pending appeal (Doc. 260) is **DENIED**.[4] With the defendants' motion for stay resolved, the Court's stay of the injunction (Doc. 265) is **LIFTED**, and the terms of the injunction (Doc. 258) are in full effect.

---

[3] In their principal summary judgment briefs, the defendants confined *Bostock* to a footnote. Doc. 205 at 25 (citing Docs. 136-9 at 16 n.10; 137-2 at 14-15 n.11). *Bostock* finally gets some mention from the defendants in their motion for stay, in which the defendants somehow find support for their position in *Bostock's* procedural history on remand. Docs. 260-1 at 4-5; 283 at 4 n.2. On remand, the Magistrate Judge concluded both Bostock's and the defendant's motions for summary judgment should be denied because "[a] jury should resolve the disputed issues of material facts presented here." *Bostock v. Clayton Cnty., Ga.*, No. 1:16-CV-01460-ELR-WEJ, Doc. 166 at 63 (N.D. Ga. June 7, 2022). But, as the Magistrate Judge noted, Bostock's employer did not say "I fired Mr. Bostock because he is gay." *Id.* at 52. In other words, *Bostock* is a run of the mill workplace discrimination case, and of course employers never admit they fire employees because of a protected characteristic or a facially discriminatory policy. Here, the defendants admittedly have a policy that denies healthcare benefits to transgender individuals because of their transgender status. Doc. 205 at 23 (citing Docs. 179-3 ¶ 78; 195 ¶ 78). That policy is facially discriminatory, and that is why the defendants' intent in the adoption and maintenance of the Exclusion is irrelevant for the purposes of Title VII. *Johnson Controls, Inc.*, 499 U.S. at 199.

[4] In the event the Court declines to grant the defendants' motion, as it has done here, the defendants request the Court require Lange "to post a bond in the amount of the surgery expense (including drugs) to the Health Plan if she proceeds with surgery during the pendency of the appeal." Doc. 260-1 at 9. While such a measure may be appropriate had the Court granted a *preliminary* injunction, no such rule exists for *permanent* injunctions pending appeal. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."). Accordingly, the defendants' request for a bond (Doc. 260-1) is **DENIED**.

**SO ORDERED**, this 1st day of March, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
